## UNITED STATES COURT OF INTERNATIONAL TRADE

### Before: The Honorable Jennifer Choe-Groves, Judge

| | |
|---|---|
| MAGNUM MAGNETICS CORPORATION, | |
| Plaintiff, | |
| v. | Case No. 1:22-cv-00254 |
| UNITED STATES, | |
| Defendant, | |
| and | |
| FASTENERS FOR RETAIL, INC. doing business as SIFFRON, | |
| Defendant-Intervenor | |

### PLAINTIFF MAGNUM MAGNETICS CORPORATION'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Plaintiff Magnum Magnetics Corporation ("Magnum" or "Plaintiff") moves for judgment on the agency record under United States Court of International Trade Rule 56.2.

Plaintiff challenges the Commerce Department's final scope determination set forth in *Antidumping Duty and Countervailing Duty Orders on Raw Flexible Magnets from the People's Republic of China: Final Ruling on Siffron Plastic Shelf Dividers* (A-570-922; C-570-923) (August 9, 2022).

For the reasons outlined in the accompanying memorandum of points and authorities, Commerce's final scope ruling is not supported by substantial evidence on the record and otherwise is not in accordance with law.

WHEREFORE, Plaintiff requests that this Court enter an Order; (1) holding Commerce's

final scope determination to be unlawful, and (2) remanding the determination with instructions

for Commerce to render a new determination consistent with the Court's opinion.

Date: February 6, 2023

Respectfully submitted,

*/s/ Jeremy W. Dutra*
Jeremy W. Dutra
jeremy.dutra@squirepb.com
Ritchie T. Thomas
ritchie.thomas@squirepb.com
Christopher D. Clark
christopher.clark@squirepb.com

SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000

*Counsel to Plaintiff*
*Magnum Magnetics Corporation*

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**Before: The Honorable Jennifer Choe-Groves, Judge**

| | |
|---|---|
| MAGNUM MAGNETICS CORPORATION,<br><br>                    Plaintiff,<br><br>   v.<br><br>UNITED STATES,<br><br>                    Defendant,<br><br>   and<br><br>FASTENERS FOR RETAIL, INC. doing business as SIFFRON,<br><br>                    Defendant-Intervenor | Case No. 1:22-cv-00254 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF MAGNUM MAGNETICS CORPORATION'S
RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Jeremy W. Dutra
jeremy.dutra@squirepb.com
Ritchie T. Thomas
ritchie.thomas@squirepb.com
Christopher D. Clark
christopher.clark@squirepb.com

SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000

*Counsel to Plaintiff
Magnum Magnetics Corporation*

February 6, 2023

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

WORD COUNT CERTIFICATE OF COMPLIANCE ................................................... iv

I.     RULE 56.2 STATEMENT ................................................................................. 1

       A.     The Administrative Determination Under Review ................................. 1

       B.     Statement of Issues Presented ................................................................. 1

II.    STATEMENT OF FACTS ................................................................................. 1

       A.     The Scope of the *Orders* ......................................................................... 1

       B.     Commerce found Siffron's magnetic shelf dividers outside the scope of
              the *Orders* based on application of unspecified, non-existent exclusions
              to the scope of the *Orders*. ..................................................................... 2

III.   STANDARD OF REVIEW ................................................................................ 5

IV.    ARGUMENT ...................................................................................................... 6

       A.     Commerce's Ruling unlawfully excludes Siffron's magnetic shelf
              dividers even though the unambiguous text of the *Orders* covers the
              product. ..................................................................................................... 6

       B.     The *Orders* neither express nor imply the exclusion or omission of
              flexible magnets bonded to rigid materials. ............................................ 8

              i.     The ITC report does not support Commerce's Ruling ................. 9

              ii     Commerce's *InterDesign* scope ruling is unpersuasive, and, in
                     any event, does not bind the Court ........................................... 10

       C.     Commerce's "substantial difference" test of a bonded magnet is yet
              another unauthorized exclusion from the scope of the *Orders*. .......... 14

       D.     In its Ruling below, Commerce improperly incorporates a single (k)(3)
              element in an analysis that purports to be conducted in accordance with
              the (k)(1) factors. ................................................................................... 17

V.     CONCLUSION .................................................................................................. 18

# TABLE OF AUTHORITIES

## Cases

*Allegheny Bradford Corp. v. United States*, 342 F. Supp. 2d 1172 (CIT 2004) ............................5

*ArcelorMittal Stainless Belgium N.V. v. United States*, 694 F.3d 82 (Fed. Cir. 2012)..................5

*Consol. Bearings Co. v. United States*, 412 F.3d 1266 (Fed. Cir. 2005) ......................................6

*Duferco Steel, Inc. v. United States*, 296 F.3d 1087 (Fed. Cir. 2002) .............................5, 8, 9, 13

*Eckstrom Indus., Inc., v. United States*, 254 F.3d 1068 (Fed. Cir. 2001) ...............................5, 14

*Ericsson GE Mobile Commc'ns. v. United States*, 60 F.3d 778 (Fed. Cir. 1995).........................5

*Mid Continent Nail Corp. v. United States*, 725 F.3d 1295 (Fed. Cir. 2013) ...........................5, 7

*OMG, Inc. v. United States*, 972 F.3d 1358 (Fed. Cir. 2020) ........................................................7

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) ..............................................................6

*Whirlpool Corp. v. United States*, 890 F.3d 1302 (Fed. Cir. 2018)...........................................5, 6

## Statutes

19 U.S.C. § 1516a(b)(1)(B) ............................................................................................................5

## Administrative Materials

*Antidumping Duty Order: Raw Flexible Magnets from the People's Republic of China*,
73 Fed. Reg. 53847 (Sept. 17, 2008) ............................................................... *passim*

*Final Ruling on Certain Retail Hook and Paper Towel Magnets* (Jan. 10, 2011) ......................11

*Final Ruling on Certain Decorative Retail Magnets* (Dec. 22, 2008)..........................................16

*Issues & Decision Memo. for Final Determination in the Countervailing Duty
Investigation of Raw Flexible Magnets from the People's Republic of China* (Jul.
2, 2008) ............................................................................................................................16

*Raw Flexible Magnets from the People's Republic of China; Scope Request from
Lakeshore Learning Materials – Final Scope Determination* (Dec. 15, 2016) ......................15

*Raw Flexible Magnets from the People's Republic of China; Scope Request from
Medical Action Industries Inc. – Final Scope Determination* (Jan. 10, 2011) ......................15

*Raw Flexible Magnets from the People's Republic of China; Scope Request from It's
Academic—Result of Inquiry—Final Scope Determination in Part* (Mar. 4, 2010)..............12

*Raw Flexible Magnets from the People's Republic of China: Countervailing Duty
Order*, 73 Fed. Reg. 53849 (Sept. 17, 2008).................................................................. *passim*

*Ruling on Certain Magnets from Jingzhou Meihou Flexible Magnet Co., Ltd. and
TyTek Indus., Inc.* (May 10, 2011) ..................................................................................10, 16

**WORD COUNT CERTIFICATE OF COMPLIANCE**

This brief has been prepared utilizing Microsoft Word with 12-point Times New Roman font. In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth in the Chambers Procedures. Specifically, excluding those exempted portions of the brief, as set forth in 2B(1) of the Chambers Procedures, undersigned certifies that this brief contains 5,532 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

Date: February 6, 2023

Respectfully submitted,

*/s/ Jeremy W. Dutra*
Jeremy W. Dutra

*Counsel to Plaintiff*
*Magnum Magnetics Corporation*

## I.    RULE 56.2 STATEMENT

### A.    The Administrative Determination Under Review

Magnum Magnetics Corporation ("Plaintiff") challenges the U.S. Department of Commerce's ("Commerce") scope ruling in *Antidumping Duty and Countervailing Duty Orders on Raw Flexible Magnets from the People's Republic of China: Final Ruling on Siffron Plastic Shelf Dividers* (A-570-922; C-570-923) (Aug. 9, 2022) ("Ruling").  (P.R. 18; C.R. 11.)  The challenged Ruling is based on Commerce's misinterpretation of the scope of the antidumping and countervailing duty orders on raw flexible magnets from China.  *Antidumping Duty Order: Raw Flexible Magnets from the People's Republic of China*, 73 Fed. Reg. 53847 (Sept. 17, 2008); *Raw Flexible Magnets from the People's Republic of China: Countervailing Duty Order*, 73 Fed. Reg. 53849 (Sept. 17, 2008) (collectively, the "*Orders*").  Commerce's determination that the Fasteners for Retail, Inc., doing business as Siffron ("Siffron") magnetic shelf dividers are outside the scope of the *Orders* unlawfully changes the *Orders'* scope and is unsupported by substantial evidence and otherwise not in accordance with law.  This Court should reverse the Ruling under 19 U.S.C. § 1516a(b)(1)(B)(i).

### B.    Statement of Issues Presented

Whether Commerce erroneously changed the scope of the *Orders* by determining, without substantial evidence on the record and contrary to the text of the *Orders*, that the Siffron magnetic shelf dividers are outside the scope of the *Orders*.

## II.   STATEMENT OF FACTS

### A.    The Scope of the *Orders*

On September 17, 2008, Commerce issued the *Orders*.  73 Fed. Reg. 53847; 73 Fed. Reg. 53849.  Commerce defined the scope of merchandise covered by the *Orders* as follows:

The products covered by this order are certain flexible magnets regardless of shape, color, or packaging.  Subject flexible magnets are bonded magnets composed (not necessarily exclusively) of (i) any one or combination of various flexible binders (such as polymers or co-polymers, or rubber) and (ii) a magnetic element, which may consist of a ferrite permanent magnet material (commonly, strontium or barium ferrite, or a combination of the two), a metal alloy (such as NdFeB or Alnico), any combination of the foregoing with each other or any other material, or any other material capable of being permanently magnetized.

Subject flexible magnets may be in either magnetized or unmagnetized (including demagnetized) condition, and may or may not be fully or partially laminated or fully or partially bonded with paper, plastic, or other material, of any composition and/or color.  Subject flexible magnets may be uncoated or may be coated with an adhesive or any other coating or combination of coatings.

Specifically excluded from the scope of this order are printed flexible magnets, defined as flexible magnets (including) individual magnets) that are laminated or bonded with paper, plastic, or other material if such paper, plastic, or other material bears printed text and/or images, including but not limited to business cards, calendars, poetry, sports event schedules, business promotions, decorative motifs, and the like.  This exclusion does not apply to such printed flexible magnets if the printing concerned consists of only the following: a trade mark or trade name; country of origin; border, stripes, or lines; any printing that is removed in the course of cutting and/or printing magnets for retail sale or other disposition from the flexible magnet; manufacturing or use instructions (*e.g.*, "print this side up," "this side up," "laminate here"); printing on adhesive backing (that is, material to be removed from the flexible magnet prior or subsequent to final printing and before use; non-permanent printing (that is, printing in a medium that facilitates easy removal, permitting the flexible magnet to be re-printed); printing on the back (magnetic) side; or any combination of the above.

All products meeting the physical description of subject merchandise that are not specifically excluded are within the scope of this order.

73 Fed. Reg. 53847; 73 Fed. Reg. 53849.

## B. Commerce found Siffron's magnetic shelf dividers outside the scope of the *Orders* based on application of unspecified, non-existent exclusions to the scope of the *Orders*.

On March 11, 2022, Siffron filed a scope inquiry with Commerce, seeking a ruling on its

magnetic shelf dividers.  (P.R. 1, Scope Ruling Application.)  Siffron described its product as

"plastic shelf dividers, generally T or L-shaped, that include a flexible magnetic [sic] on their plastic base."  (*Id.* at 2-3.)  Siffron further stated that the flexible magnet is attached to the base of the plastic divider using adhesive.  (*Id.* at 3.)  The raw flexible magnet adhered to the plastic shelf dividers allows retailers to place the dividers on metallic shelves and later easily move and restructure product displays on shelves using the same shelf dividers.  (*Id.* at 6.)

In response, Plaintiff noted that Siffron's merchandise falls squarely within the unambiguous text of the *Orders*, and thus is covered by the *Orders* under section 351.225(k)(1) of Commerce's scope inquiry procedural regulations.  (P.R. 11, Petitioner's Comments at 8-9.) Recognizing that Siffron's merchandise might be regarded as a "mixed media" product that employs a raw flexible magnet that is necessary for the product to function as intended, Plaintiff explained that Siffron's merchandise would also be within the scope of the *Orders* under Commerce's section 351.225(k)(3) analysis.  (*Id.* at 4-6.)

In its Ruling, Commerce found that "based on the plain language of the scope," Siffron's magnetic shelf divider "appears to fall within the scope of the *Orders*."  (P.R. 18; C.R. 11, Ruling at 10.)  Despite that finding, Commerce relied on several prior scope rulings (none of which have been tested before this Court) and a misreading of the U.S. International Trade Commission ("ITC") report from the investigation to identify certain purported silent exclusions, nowhere to be found in the text of the *Orders*.  (*Id.* at 10-11.)  In doing so, Commerce unlawfully changed the scope of the *Orders*.

Commerce stated that "bonding raw flexible magnets with an adhesive to a plastic blade renders the plastic shelf dividers inflexible to the extent that the plastic shelf divider cannot be manipulated without damaging the product."  (*Id.* at 11.)  Referring to the ITC's injury report, Commerce asserted that, "the ITC determined that, in general, flexible magnets are permanent

magnets that can be twisted, bet, slit, punched, coiled, or otherwise molded into any shape without losing its magnetic properties." (*Id.*) Commerce rationalized that "the ITC's description indicates that when as with the plastic shelf divider, an item incorporating an otherwise flexible magnet cannot be twisted, bent, or manipulated without that item breaking, the item can no longer be considered to be 'flexible.'" (*Id.*) Equating the detrimental effects to the appearance of Siffron's plastic blade that result from extreme flexing of the magnetic shelf divider with the ITC's observation that, generally, subject flexible magnets can be manipulated without losing their "magnetic properties," Commerce created a new basis for excluding Siffron's product from the scope of the *Orders* that finds no support in the text of the *Orders*. (*Id.*)

Extending its non-textual approach further, Commerce also looked at its prior scope rulings to create a second extra-textual exclusion. Commerce stated that "the addition of another material, *i.e.*, a plastic blade, to a raw flexible magnet has created a product that is substantially different from a flexible magnet covered by the scope of the *Orders*," and therefore lies outside the scope. (P.R. 18; C.R. 11, Ruling at 12.) Despite the *Orders* explicitly covering raw flexible magnets that are "fully or partially bonded with paper, plastic, or other material," and in the face of its own holding in the original antidumping and countervailing duty investigations that the addition of new functionality by materials bonded to a flexible magnet did not take the products concerned out of the *Orders'* coverage, Commerce, in the Ruling below, created an exclusion for goods that are "substantially different" from flexible magnets covered by the *Orders*. (*Id.* at 12.) This was yet another change to the scope of the *Orders*. Commerce outlined no criteria for determining when a product incorporating a raw flexible magnet is "substantially different" from subject merchandise.

While Siffron's magnetic shelf divider potentially is a "mixed media" product warranting analysis under 19 CFR 351.225(k)(3), except for one out-of-place (k)(3) element dropped into its (k)(1) analysis, Commerce expressly eschewed performing a (k)(3) analysis in its Ruling. Commerce determined that, in its view, the (k)(1) factors were sufficient to determine that Siffron's magnetic shelf divider is excluded from the scope of the *Orders*. (*Id.* at 10.)

## III.   STANDARD OF REVIEW

"[T]he first step in a scope ruling proceeding is to determine whether the governing language is in fact ambiguous." *ArcelorMittal Stainless Belgium N.V. v. United States*, 694 F.3d 82, 87 (Fed. Cir. 2012). If the scope language "is not ambiguous, the plain meaning of the language governs." *Id.*; *Whirlpool Corp. v. United States*, 890 F.3d 1302, 1308 (Fed. Cir. 2018). Only if the language is ambiguous, must Commerce "consider the regulatory history, as contained in the so-called '(k)(1) materials.'" *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1302 (Fed. Cir. 2013).

Although Commerce "enjoys substantial freedom to interpret and clarify" its antidumping and countervailing duty orders, "it may not change them." *Ericsson GE Mobile Commc'ns. v. United States*, 60 F.3d 778, 782 (Fed. Cir. 1995). Commerce cannot interpret an order in a manner that changes its scope, nor can it determine a scope inquiry in a manner that conflicts with an order's terms. *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1094-95 (Fed. Cir. 2002). "A scope determination is not in accordance with law if it changes the scope of an order or interprets an order in a manner contrary to the order's terms." *Allegheny Bradford Corp. v. United States*, 342 F. Supp. 2d 1172, 1183 (CIT 2004); *see also Eckstrom Indus., Inc., v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001).

The Court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19

U.S.C. § 1516a(b)(1)(B).  "Substantial evidence is more than a mere scintilla.  It means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951). When determining whether substantial evidence exists, the court "review{s} the record in its entirety, including all evidence that 'fairly detracts from the substantiality of the evidence.'" *Consol. Bearings Co. v. United States*, 412 F.3d 1266, 1269 (Fed. Cir. 2005).

## IV.   ARGUMENT

The Ruling interprets and applies the *Orders* in a manner that changes their scope contrary to their plain language and is therefore unsupported by substantial evidence.  Despite an express prohibition, Commerce relies on made-up "exclusions" from the scope, exclusions that—even if otherwise permitted, which they are not—find no support in the authorities on which Commerce purports to rely.  Further, Commerce declined to perform an inquiry under sub-section 351.225(k)(3) of its regulations; yet it intermixed and relied on a single evidential element from a (k)(3) analyses in its purported (k)(1) analysis.  The resulting analytical structure conforms to no scope review approach set out in the applicable regulations and is arbitrary and contrary to law.

### A.   Commerce's Ruling unlawfully excludes Siffron's magnetic shelf dividers even though the unambiguous text of the *Orders* covers the product.

Commerce described Siffron's plastic shelf dividers as being "composed of an opaque and rigid plastic blade that is bonded with an adhesive to a raw flexible magnet at its base." (P.R. 18; C.R. 11, Ruling at 10.)  Given this composition, Commerce conceded that, "based on the plain language of the scope, Siffron's product appears to fall within the scope of the *Orders*." (*Id.*)  Finding that Siffron's product meets the definition of subject merchandise provided by the *Orders* should have decided the issue.  *Whirlpool*, 890 F.3d at 1308.

6

"{M}erchandise facially covered by an order may not be excluded from the scope of the order unless the order can reasonably be interpreted so as to exclude it." *Mid Continent*, 725 F.3d at 1301. The *Orders* contains a specific exclusion relating to printed magnets. 73 Fed. Reg. 53847; 73 Fed. Reg. 53849. That exclusion is highly detailed, with much attention paid to the boundaries defining what printed magnets are within the exclusion and what magnets, although containing some printing, are nevertheless lie outside it. That exclusion is inapplicable to Siffron's product because it is not printed. Neither Siffron nor Commerce assert otherwise. As Siffron's product meets the literal scope definition of the *Orders*—a flexible magnet bonded to plastic—and is not within the scope of the express exclusion, it is within the scope of the *Orders*. *Mid Continent*, 725 F.3d at 1301.

Commerce, however, adopted a different view. It ignored the logical consequence of its above-quoted finding, instead asserting that its "previous scope rulings and language from the underlying ITC investigation provide further guidance in determining whether the plastic shelf dividers are <u>excluded</u> from the scope of the *Orders*. (P.R. 18; C.R. 11, Ruling at 11.) But Commerce does not have license to disregard the text of the *Orders* or use (k)(1) factors to contradict the unambiguous language of the *Orders*. *OMG, Inc. v. United States*, 972 F.3d 1358, 1363 (Fed. Cir. 2020). Indeed, resort to (k)(1) materials is appropriate only as interpretative guides to <u>ambiguous</u> language. *Mid Continent*, 725 F.3d at 1302.

Commerce identified no ambiguity in the language in the *Orders*. Nor could it. The *Orders* expressly cover raw flexible magnets bonded to plastic and exclude only printed magnets. The *Orders* are unequivocal:

> All products meeting the physical description of the subject merchandise [which Commerce has held Siffron's product is] that are not <u>specifically excluded</u> are within the scope of these *Orders*.

73 Fed. Reg. 53847 (emphasis added); 73 Fed. Reg. 53849 (emphasis added).  This plain

language expressly denies Commerce the authority to infer additional, unspecified exclusions

such as those on which it purports to rely in the Ruling.

Commerce's claim to find extra-textual exclusions in its previous scope rulings and

language from the ITC investigation violates the *Orders'* textual prohibition, which Commerce

cannot supersede.  As the Federal Circuit admonished, the (k)(1) factors "may provide valuable

guidance as to the interpretation of the final order.  But they cannot substitute for language in the

order itself." *Duferco*, 296 F.3d at 1097.

Commerce's Ruling relies on self-generated exclusions for (a) certain flexible magnets

bonded to rigid materials and/or (b) flexible magnets that are within the terms of the scope

language but nevertheless are somehow "substantially different" products.  Neither category of

products is <u>specifically excluded</u> by the scope language of the *Orders*.  In relying on those

impermissibly constructed, extra-scope exclusions whose boundaries are free to expand or

contract at Commerce's whim, the Ruling commits reversible error.

**B.    The *Orders* neither express nor imply the exclusion or omission of flexible magnets bonded to rigid materials.**

Even if the *Orders* gave Commerce license to fashion its own exclusions—which for the

reasons outlined above they do not—the particular exclusions on which Commerce relied are not

supported by or consistent with the (k)(1) factors on which Commerce purports to conduct its

analysis.

The *Orders* unambiguously state that in-scope merchandise includes flexible magnets

that are fully or partially bonded with paper, plastic, or other material, of any composition and/or

color.  73 Fed. Reg. 53847; 73 Fed. Reg. 53849.  The scope language does <u>not</u> state that in-scope

flexible magnets may be bonded only with non-rigid paper, plastic, or other material.  Nor do the

*Orders* contain any requirement that the paper, plastic, or other material bonded to the raw flexible magnet be capable of being manipulated without damaging or affecting the appearance of that material.

Commerce's Ruling, however, impermissibly mischaracterizes language from the ITC report during the investigation and a prior scope ruling to exclude Siffron's product.  Neither source supports Commerce's Ruling, and Commerce's analysis contravenes the language of the *Orders*.

          **i.**       **The ITC report does not support Commerce's Ruling.**

Relying on the ITC report from the original investigations, Commerce engages in the following analysis:

(1)    "In its investigation, the ITC determined that, in general, flexible magnets are permanent magnets that can be twisted, bent, slit, punched, coiled, or otherwise molded into any shape <u>without losing its (sic) magnetic properties</u>." (P.R. 18; C.R. 11, Ruling at 11 (emphasis added)).

(2)    "The ITC's description indicates that when, as with the plastic shelf divider, an item incorporating an otherwise flexible magnet cannot be twisted, bent, or manipulated <u>without that item breaking</u>, the item can no longer be considered to be 'flexible.'" (*Id.* (emphasis added).

(3)    "Similarly, we find that the raw flexible magnets in Siffron's plastic shelf dividers, when affixed to the component plastic blade, are functionally inflexible, as twisting or bending the shelf divider renders the product ineffective for its intended function as a product organizer." (*Id.*)

Commerce cannot use language from the ITC report to change the scope of the *Orders*. As the Federal Circuit admonished, descriptions in the ITC's report may guide interpretation of ambiguous scope language but cannot alter the scope.  *Duferco*, 296 F.3d at 1097.

Equally fatal to Commerce's analysis is that it is logically incoherent.  Statement (2) does not follow from statement (1).  The ITC's statement referenced in (1) refers to loss of magnetic properties.  Commerce's statement in (2) refers to "breaking" the plastic component to which the

flexible magnet is bonded.  Loss of magnetic properties and "breaking" a component bonded to the flexible magnet are not the same.  The one does not imply or indicate the other.

The ITC's statement, moreover, is one explicitly made "in general;" that is, it does not purport to describe all cases.  Commerce alters the ITC's general observation by changing its conclusion, and by making it a rigid, limiting requirement.[1]  Neither change is consistent with the ITC's statement on which Commerce purports to rely.

Statement (3) of Commerce's rationale simply takes the illogical analytical progression an unsupported step further, reducing its alleged exclusion to mere *ipse dixit*.

Returning to the actual statement from the ITC report, there is no evidence whatsoever in the record that manipulating Siffron's magnetic shelf dividers causes the bonded <u>magnet</u> to lose its magnetic properties.  The ITC report language on which Commerce relies does not support Commerce's analysis and is thus another reason its Ruling is unsupported by substantial evidence and unlawful.

> ii      Commerce's *InterDesign* scope ruling is unpersuasive, and, in any event, does not bind the Court.

Commerce claims certain previous scope rulings establish a basis for excluding Siffron's magnetic shelf dividers from the scope of the *Orders*.  Specifically, Commerce cites its *InterDesign* scope ruling as authority for the proposition that "the bonding of a raw flexible

---

[1] In a previous scope ruling, Commerce recognized this difference between an ITC statement of a common characteristic and a limiting requirement.  In *TyTek*, Commerce explained: "While the ITC's description of a domestic-like product states that '{s}heet is the widest form of raw flexible magnet, typically available from U.S. suppliers in widths up to approximately 24 inches,' we find the inclusion of the term 'typically' in the sentence suggests that the width of meter-wide magnet sheet is not a basis for exclusion from the Magnet Orders."  *Ruling on Certain Magnets from Jingzhou Meihou Flexible Magnet Co., Ltd. and TyTek Industries, Inc.* (May 10, 2011) at 9.  In the ruling below, the ITC's inclusion of "in general" in its description of characteristics should have alerted Commerce to the fact no limitation was implied.

magnet to a functionally inflexible component rendered the flexible magnets outside the scope of the *Orders.*"  (P.R. 18; C.R. 11, Ruling at 11.)

That statement fundamentally misconceives what a "flexible magnet" is for purposes of the *Orders*.  Subject merchandise consists of bonded magnets composed of a flexible binder and a magnetic element.  73 Fed. Reg. 53847; 73 Fed. Reg. 53849.  The magnet's composition is the key to the *Orders'* scope.  It is the presence of a flexible binder with a magnetic element that makes the product a "flexible" magnet for purposes of the *Orders*.  Commerce's introduction of a new, not "specifically stated" exclusion—one that is reliant on an unstated, mechanical test of a combination product's "flexibility"—is an unauthorized change to the scope that is reliant on a series of rulings that are themselves without support.

The *InterDesign* ruling request confronted Commerce with a range of products: (a) a small, round ceramic button to which flexible magnets were bonded, (b) a PVC hook secured to heavy PVC backing with a flexible magnet attached, (c) a stainless steel or chrome hook with steel or chrome backing to which a flexible magnet is attached, and (d) a stainless steel or chrome towel holder, with attached flexible magnets.  *Final Ruling on Certain Retail Hook and Paper Towel Magnets* (Jan. 10, 2011) at 3-4.  Claiming to rely on its previous *It's Academic II* scope ruling, Commerce determined that the InterDesign magnet products were outside the scope of the *Orders* because the products "are all attached to materials that are not flexible."  *Id.* at 11.  As precedent for that result, Commerce claimed that it stated in *It's Academic II* "that the products at issue were still flexible despite being attached to PVC, and ruled them within the scope of the order."  *Id.*  Commerce, however, made no such statement and no such finding in *Its's Academic II*.

*It's Academic II* involved small decorative items manufactured by a process of multiple layering of variously colored PVC onto a flexible magnetic material. *Raw Flexible Magnets from the People's Republic of China; Scope Request from It's Academic—Result of Inquiry— Final Scope Determination in Part* (Mar. 4, 2010) at 4-5. It's Academic argued that its process was the equivalent of 3D "printing" with PVC and that its products therefore fell within the scope's express exclusion for flexible magnets to which certain printed material is bonded. *Id.* at 5. The question in *It's Academic II* was whether the specific "printed flexible magnet" exclusion applied, and Commerce characterized its inquiry as having to determine "whether the injection molding of a multiple-layer, multiple-part form of colored plasticized (bendable) PVC is a *printed* image and/or text." *Id.* at 7 (emphasis in original).

In *InterDesign*, Commerce refers to this statement as if it describes the resulting layered product as "bendable," that is, flexible. That is an unambiguous mischaracterization. The above-quoted statement in *It's Academic II* refers to the individual PVC layers used in manufacturing the final layered product, not the final product with PVC bonded to a flexible magnet. The reference to "plasticized (bendable) PVC" simply describes a particular kind of PVC. For example, the Omnexus Comprehensive Guide on Polyvinyl Chloride (PVC) states:

> Plasticized or Flexible PVC (Density 1.1 – 1.35 g/cm3): Flexible PVC is formed by the addition of compatible plasticizers to PVC which lowers the crystallinity. These plasticizers act like lubricants resulting in a much clearer and flexible plastic.

(https://omnexus.specialchem.com/selection-guide/polyvinyl-chloride-pvc-plastic.)[2]

---

[2] *See also*, Whittington's Dictionary of Plastics, 3d ed. 1993 at 396 ("Rigid PVC is strong, difficult to burn, has excellent resistance to strong acids and bases, to most other chemicals, and to many (but not all) organic solvents. Plasticized compounds range from fairly stiff to very flexible and find applications as diverse as garden hose, flooring, women's shoes and purses, shower curtains, automotive upholstery, and thousands more").

In context, therefore, the reference to "bendable" PVC in the *It's Academic II* ruling relates to the kind of PVC that constitutes the individual layers of the It's Academic product. Contrary to Commerce's assertion in *InterDesign*, there was no statement in *It's Academic* that the final combined product was flexible. That was never an issue in *It's Academic II*. *InterDesign* relied on a mischaracterization of the *It's Academic II* ruling.

In *InterDesign* Commerce became unmoored from the scope language. While the InterDesign products were bonded to flexible magnets covered by the *Orders*, Commerce created for the first time an additional flexibility requirement for the entire product. In doing so, Commerce ignored the plain language of the *Orders* that specifically includes within scope magnets composed of a flexible binder and a magnetic element that are bonded to paper, plastic, or other materials without regard to whether the combined product is pliable or is damaged or loses intended functionality if bent or twisted. That aberrational decision in *InterDesign*, in effect, changed and displaced the language of the *Orders*.

Instead of looking to the actual *Orders*, in its Ruling below, Commerce evaluated Siffron's magnetic shelf dividers against the *InterDesign* ruling. Commerce has impermissibly rewritten the *Orders* to exclude covered magnets bonded to certain materials, even though those materials are not printed. And those materials Commerce identified only in piecemeal fashion and without objective criteria as to what constitutes being "inflexible." No degree of necessary flex has been stated by Commerce and none is to be found in the text of the *Orders*. The result is to change the *Orders* in a way that makes their boundaries wholly arbitrary.

In sum, the "flexibility" requirements on which Commerce's Ruling rests are arbitrarily constructed and arbitrarily applied, making clear that *InterDesign* and the rulings that rely on it are of little or no persuasive interpretative value. *See Duferco*, 296 F.3d at 1097 ("[R]eview of

13

the petition and the investigation may provide valuable guidance as to the interpretation of the final order.  But they cannot substitute for language in the order itself.").  The Federal Circuit held in *Eckstrom* that "Commerce cannot 'interpret' an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms." *Eckstrom*, 254 F.3d at 1072.  It follows that a Commerce ruling—like *InterDesign*—that changes the terms of the *Orders*' scope should be accorded no value as an interpretative guide under 19 CFR 351.225(k)(1), which Commerce cited as its decisional basis.  (P.R. 18; C.R. 11, Ruling at 10.).  Commerce's stated reliance on *InterDesign* is essentially illusory and provides no support for the Ruling below.

### C. Commerce's "substantial difference" test of a bonded magnet is yet another unauthorized exclusion from the scope of the *Orders*.

A second "exclusion" on which Commerce relied in the Ruling below purports to be based on Commerce's ruling in *Medical Action Industries* (*"MAI"*).  According to Commerce, "the <u>addition</u> of another material, *i.e.*, a plastic blade, to a raw flexible magnet has created a product that is substantially different from a flexible magnet covered by the scope of the *Orders*" and consequently, "Siffron's plastic shelf dividers are outside of the scope of the *Orders*."  (P.R. 18; C.R. 11, Ruling at 12 (emphasis added).)  Again, there is no basis in the text of the *Orders* for this purported exclusion.  It represents a further unlawful change in the *Orders'* scope.

First, contending that bonding a "plastic blade" to a flexible magnet creates a "substantially different" product excluded from the scope of the *Orders* directly contradicts the explicit language of the *Orders*.  As noted above, the *Orders* expressly cover flexible magnets "fully or partially bonded with paper, plastic, or other material, of any composition and/or color." 73 Fed. Reg. 53847; 73 Fed. Reg. 53849.

Second, in the Ruling below, Commerce mischaracterized its *MAI* ruling to construct this additional unauthorized exclusion.  *MAI* involved surgical drapes consisting of a plastic drape incorporating pockets that contained small flexible magnets.  *Raw Flexible Magnets from the People's Republic of China; Scope Request from Medical Action Industries Inc. – Final Scope Determination* (Jan. 10, 2011) at 4-5.  In finding the surgical drapes outside the scope of the *Orders*, Commerce emphasized that the flexible magnets were not <u>bonded</u> to the drapes:

> [W]e find that the magnets are not "bonded with" the encasing materials, and we have determined that the Surgical Instrument Drape does not consist of flexible magnets bonded or laminated to other materials.

*Id.* at 9.

In its subsequent *Lakeshore* ruling, Commerce confirmed that the absence of bonding between the flexible magnet and the added material was determinative:

> [A]s established in <u>MAI</u>, the scope of the *Orders* precludes advanced products that incorporate raw flexible magnets <u>when the other materials that make up the product are not bonded or laminated to the magnet</u>.

*Raw Flexible Magnets from the People's Republic of China; Scope Request from Lakeshore Learning Materials – Final Scope Determination* (Dec. 15, 2016) at 8 (emphasis added).

Commerce's reliance on *MAI* in its Ruling therefore is misplaced.  The critical factor in *MAI* (and *Lakeshore*) was the lack of bonding between the magnet and the other material.  In contrast, that the magnetic material in Siffron's product subject to the Ruling is bonded to the plastic blade has never been questioned.  (P.R. 18; C.R. 11, Ruling at 10.)

Significant to Commerce's analysis is that "Siffron's plastic shelf divider is designed to be a shelf organizer in a retail setting that separates retail products for display."  (*Id.* at 12.)  <u>In no ruling other than that below</u> has Commerce held that additional functionality—or end use application—provided by <u>bonding</u> some paper, plastic, or another material to a flexible magnet

takes a product out of the scope of the *Orders*.  To the contrary, until now, Commerce has rejected arguments that the end-use application of a product is relevant to the scope analysis.

During the original investigation, for example, a U.S. importer argued that magnetic photo pockets, which are flexible magnets with clear plastic material fused to the magnet to form a pocket into which photographs, and other items may be inserted for display, should be excluded from the scope of the *Orders*.  *Issues and Decision Memo. for Final Determination in the Countervailing Duty Investigation of Raw Flexible Magnets from the People's Republic of China* (Jul. 2, 2008) at 2.  Target argued that instead of being a raw flexible magnet, the magnetic photo pockets "are properly characterized as finished retail products which use magnetic sheeting as an input."  *Id.* at 3.  Commerce rejected the argument, noting that it "does not generally define subject merchandise by end-use application," and further highlighted that the scope language "stated originally that '{s}ubject merchandise may be of any color and may or may not be laminated or bonded with paper, plastic, or other material, which paper, plastic, or other material may be of any composition and/or color.'"  *Id.*

Following issuance of the *Orders*, Commerce continued to emphasize that it "does not generally define subject merchandise by end-use," and consistently rejected arguments that end-use applications removed merchandise from the scope of the *Orders*.  *Ruling on Certain Magnets from Jingzhou Meihou Flexible Magnet Company, Ltd. And TyTek Industries, Inc.* (May 10, 2011) at 9; *Final Ruling on Certain Decorative Retail Magnets* (Dec. 22, 2008) at 10-11.

 Commerce's focus on the end-use application or functionality of Siffron's product as the basis for excluding the product from the scope of the *Orders*—an exclusion that finds no support whatsoever in the text of the *Orders*—therefor changes the scope and is wholly unlawful.

**D.     In its Ruling below, Commerce improperly incorporates a single (k)(3) element in an analysis that purports to be conducted in accordance with the (k)(1) factors.**

The "Commerce Analysis" section of the Ruling below identifies three bases for Commerce's holding that the Siffron magnetic shelf divider falls outside the scope of the flexible magnet Orders. The first is the *InterDesign* "flexibility" analysis discussed and dismissed above. The third is the "functionally different product" analysis allegedly based on *MAI*, but unsupported by that ruling and in conflict numerous Commerce precedents, including Commerce's original investigations. These elements of the "Commerce Analysis" have been addressed and refuted above.

There remains only the third leg of Commerce's stool, which can be disposed of briefly. That is because that leg rests on a single element of a section 351.225(k)(3) analysis—an analytical structure Commerce expressly stated it found "unnecessary to consider." (P.R. 18; C.R. 11, Ruling at 11-12.) Had Commerce not limited its assessment to consideration of the results of removal of the flexible magnet from the plastic elements of the dividers (the single factor addressed in Commerce's Ruling), and instead conducted a full (k)(3) analysis, it would have had to consider the record evidence that shows the other (k)(3) factors support coverage of the magnetic shelf dividers. (P.R. 16; C.R. 5, Petitioner's Post-Initiation Comments at 12-16.) The record shows that: (a) the value of the flexible magnet constitutes roughly 50 percent of the cost of the dividers as a whole; and (b) the ultimate use of magnetic dividers is reliant on the flexible magnets' ability to attach dividers to a metallic shelf, while allowing them to be readily moved to rearrange a display, accommodate additional stock, or set up a different display entirely. (*Id.*)

But, in fact, none of the (k)(3) elements are properly relevant to Commerce's purported (k)(1) analysis. In the circumstances, Commerce's reliance on a single (k)(3) element in its

Ruling—after stating that it "finds it unnecessary to consider the additional factors specified in 19 CFR 351.225(k)(2) and 351.225(k)(3)"—provides no support for the Ruling. It merely evidences analytical confusion.

## V.    CONCLUSION

The *Orders* expressly cover flexible magnets "fully or partially bonded with paper, plastic, or other material, of any composition and/or color." There is no dispute that the Siffron shelf dividers consist of a flexible magnet covered by the *Orders* that is bonded to a piece of plastic. Even Commerce concedes that the Siffron product is within the scope of the *Orders* as set out by their text. It ultimately determined the products to be excluded based on application of self-generated "flexibility" and "substantially different" exclusions that find no support in the *Orders*. The Court should find Commerce's Ruling unlawful.

Date: February 6, 2023

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Jeremy W. Dutra*
Jeremy W. Dutra
jeremy.dutra@squirepb.com
Ritchie T. Thomas
ritchie.thomas@squirepb.com
Christopher D. Clark
christopher.clark@squirepb.com

SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000

*Counsel to Plaintiff*
*Magnum Magnetics Corporation*

</div>

## UNITED STATES COURT OF INTERNATIONAL TRADE

### Before: The Honorable Jennifer Choe-Groves, Judge

| | |
|---|---|
| MAGNUM MAGNETICS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>FASTENERS FOR RETAIL, INC. doing business as SIFFRON,<br><br>Defendant-Intervenor | Case No. 1:22-cv-00254 |

### [PROPOSED] ORDER

Upon consideration of Plaintiff Magnum Magnetics Corporation's Rule 56.2 Motion for Judgment on the Agency Record and other papers and proceedings herein, it is hereby:

ORDERED that Plaintiff's Motion is GRANTED, and further

ORDERED that the matter be remanded to Commerce to find that Siffron's magnetic shelf dividers is within the scope of the antidumping duty and countervailing duty orders on raw flexible magnets from China, *Antidumping Duty Order: Raw Flexible Magnets from the People's Republic of China*, 73 Fed. Reg. 53847 (Sept. 17, 2008) and *Raw Flexible Magnets from the People's Republic of China: Countervailing Duty Order*, 73 Fed. Reg. 53849 (Sept. 17, 2008).

SO ORDERED.

Dated:_____, 2019                    _____
                                                The Hon. Jennifer Choe-Groves, Judge