## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| MAGNUM MAGNETICS CORPORATION, *Plaintiff,* v. UNITED STATES, *Defendant,* and FASTENERS FOR RETAIL, INC. D/B/A SIFFRON, *Defendant-Intervenor.* | Court No. 22-00254 |

## <u>ORDER</u>

Upon consideration of plaintiff's motion for judgment upon the agency record, defendant's and defendant-intervenor's responses, plaintiff's reply, the administrative record, and other pertinent papers, it is hereby

ORDERED that plaintiffs' motion is DENIED; and it is further

ORDERED that the Department of Commerce's final scope determination is sustained; and it is further

ORDERED that judgment is entered in favor of the United States.

_____
The Honorable Jennifer Choe-Groves, Judge

DATED: _____
      New York, NY

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| MAGNUM MAGNETICS CORPORATION, <br><br> *Plaintiff,* <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant,* <br><br> and <br><br> FASTENERS FOR RETAIL, INC. D/B/A SIFFRON, <br><br> *Defendant-Intervenor.* | Court No. 22-00254 <br><br> **NON-CONFIDENTIAL VERSION** <br><br> **Contains Business Proprietary Information Removed from Page 20** |

## RESPONSE BRIEF OF DEFENDANT-INTERVENOR FASTENERS FOR RETAIL, INC. D/B/A SIFFRON,

Kristen Smith
Sarah E. Yuskaitis
**Sandler Travis & Rosenberg, P.A.**
1300 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC 20004
Tel: (202) 730-4965
Fax: (202) 842-2247


*Counsel to Fasteners for Retail, Inc.
d/b/a Siffron*

May 8, 2023

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

ADMINISTRATIVE DECISION UNDER REVIEW ...................................................... 1

STATEMENT OF FACTS ................................................................................................ 2

SUMMARY OF ARGUMENT ........................................................................................ 6

STANDARD OF REVIEW ............................................................................................... 7

ARGUMENT ..................................................................................................................... 8

    I.      Commerce's Determination That Siffron's Plastic Shelf Dividers Are Not Subject To The Scope of the Orders Is Supported By Substantial Evidence and Is In Accordance With Law ................................................................................................ 8

        A.     Legal Framework For Commerce's Scope Determinations.................................. 8

        B.     Siffron's Plastic Shelf Dividers Do Not Fit Within the Plain Language of the Scope of the *Orders* ........................................................................................ 9

        C.     Commerce Reasonably Determined that Siffron's Plastic Shelf Dividers are Not Covered by the *Orders* .................................................................................... 12

    II.     Commerce's Rejection of Petitioner's Arguments Regarding Removing the Magnet from the Plastic Shelf Divider are Supported by the Administrative Record............ 19

    CONCLUSION.................................................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.L. Patterson, Inc. v. United States*, 585 Fed. Appx. 778 (Fed. Cir. 2014) ......................... 13, 14

*Am. Silicon Techs. v. United States,* 261 F.3d 1371 (Fed. Cir. 2001)............................................. 8

*Consol. Edison Co. of New York. v. NLRB*, 305 U.S. 197 (1938) .................................................. 7

*Duferco Steel, Inc. v. United States,* 296 F.3d 1087 (Fed.Cir.2002) ............................................ 12

*Fedmet Resources Corp. v. United States*, 755 F.3d 912 (Fed. Cir. 2014)................................... 11

*Fujitsu Gen. Ltd. v. United States,* 88 F.3d 1034 (Fed. Cir. 1996)................................................. 9

*Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319 (Fed. Cir. 2010)......................... 8

*Global Commodity Group LLC v. United States*, 709 F.3d 1134 (Fed. Cir. 2013) ................. 9, 12

*Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006)...................... 9

*King Supply Co., LLC v. United States*, 674 F.3d 1343 (Fed. Cir. 2012)................................. 9, 17

*Matsushita Elc. Indus. Co. v. United States*, 750 F.2d 927 (Fed. Cir. 1984)................................. 8

*Meridian Prods. v. United States*, 890 F.3d 1272 (Fed. Cir. 2018)............................................. 16

*Mid Continent Nail Corp. v. United States*, 725 F.3d 1295 (Fed. Cir. 2013) ......................... 9, 13

*Nippon Steel Corp. v. United States*, 458 F.3d 1345 (Fed. Cir. 2006).......................................... 8

*NMB Sing. Ltd. v. United States*, 557 F.3d 1316 (Fed. Cir. 2009) ................................................ 8

*Sandvik Steel Co. v. United States*, 164 F.3d 596 (Fed. Cir. 1998) .............................................. 9

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 776 F.3d 1351 (Fed. Cir. 2015)
................................................................................................................................... 10, 16

*Star Pipe Prods. v. United States*, 981 F.3d 1067 (Fed. Cir. 2020)............................................. 11

*Tak Fat Trading Co. v. United States*, 396 F.3d 1378 (Fed.Cir.2005) ........................................ 11

*Trendium Pool Products, Inc. v. United States*, 399 F.Supp.3d 1335 (Ct. Int'l Trade 2019)....... 14

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) ......................................................... 7, 8

*Vandewater Int'l Inc. v. United States*, 589 F. Supp. 3d 1324 (Ct. Int'l Trade 2022)................. 10

*Vietnam Finewood Company Limited v. United States*, 2023 WL 3019662, Slip Op. 23-58 (Ct. Int'l Trade, Apr. 20, 2023) ............................................................ 16, 17

*Walgreen Co. of Deerfield, IL v. United States*, 620 F.3d 1350 (Fed. Cir. 2010) ...................... 10

## Statutes and Regulations

19 C.F.R. § 351.225 ......................................................................................... 10

19 C.F.R. § 351.225(k)(1)......................................................................... passim

19 C.F.R. § 351.225(k)(2).................................................................................. 11

19 C.F.R. § 351.225(k)(3).................................................................................. 23

19 U.S.C. § 1516a(b)(1)(B)(i)............................................................................. 7

19 U.S.C. § 1673 ................................................................................................ 22

## Administrative Decisions

*Antidumping Duty Order: Raw Flexible Magnets from the People's Republic of China*, 73 Fed. Reg. 53,847 (Sept. 17, 2008) ......................................................... 1, 3, 12

*Raw Flexible Magnets from the People's Republic of China, Countervailing Duty Order*, 73 Fed. Reg. 53,849 (Sept. 27, 2008) ......................................................... 2, 3, 12

## INTRODUCTION

On behalf of Defendant-Intervenor Fasteners For Retail, Inc. d/b/a Siffron ("Siffron" or "Defendant-Intervenor"), we respectfully submit the following response in opposition to the Rule 56.2 motion for judgment upon the agency record submitted by Plaintiff, Magnum Magnetics Corporation ("Plaintiff").  *See* Mem. In Supp. Of Pls.' Mot. for J. on the Agency R. (Feb. 6, 2023), ECF No. 23 ("Pls.' Br.").  Plaintiff challenges the United States Department of Commerce's ("Commerce") final scope ruling and determination that Siffron's plastic shelf dividers fall outside the scope of the antidumping and countervailing duty orders on raw flexible magnets from the People's Republic of China.

As demonstrated below, Commerce's determination that Siffron's plastic shelf dividers are not subject to the scope of the *Orders* is supported by substantial evidence and is in accordance with law.  Considering the plain language of the scope of the *Orders*, the International Trade Commission's injury analysis, and Commerce's previous scope determinations, Commerce reasonably determined that Siffron's plastic shelf dividers are outside the scope of the *Orders*. Accordingly, the Court should deny Plaintiff's motion and sustain Commerce's determination.

## ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff challenges Commerce's Final Scope Ruling, which found that Siffron's plastic shelf dividers are outside the scope of the antidumping and countervailing duty orders on raw flexible magnets from the People's Republic of China.  *See Antidumping Duty Order: Raw Flexible Magnets from the People's Republic of China*, 73 Fed. Reg. 53,847 (Sept. 17, 2008) ("*AD Order*"); *Raw Flexible Magnets from the People's Republic of China, Countervailing Duty Order*, 73 Fed. Reg. 53,849 (Sept. 27, 2008) ("*CVD Order*") (collectively, the "*Orders*").  The challenged determination is contained in an unpublished decision memorandum entitled "Memorandum to James Maeder, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations,

from Zachary Shaykin, International Trade Compliance Analyst, Office IV, Antidumping and Countervailing Duty Operations, *Subject: Antidumping Duty and Countervailing Duty Orders on Raw Flexible Magnets from the People's Republic of China: Final Scope Ruling on Siffron Plastic Shelf Dividers*" (Dep't of Commerce, Aug. 9, 2022) ("Final Scope Ruling"). P.R. 18; C.R. 11.

## STATEMENT OF FACTS

On September 17, 2008, Commerce issued antidumping and countervailing duty orders on flexible magnets from the People's Republic of China. The *Orders* define, in relevant part, their scope as follows:

> The products covered by this order are certain **flexible** magnets regardless of shape, color or packaging. Subject **flexible** magnets are bonded magnets composed (not necessarily exclusively) of (i) any one or combination of various flexible binders (such as polymers or co-polymers, or rubber) and (ii) a magnetic element, which may consist of a ferrite permanent main material (commonly, strontium or barium ferrite, or a combination of the two), a metal alloy (such as NdFeB or Alnico), any combination of the foregoing with each other or any other material, or any other material capable of being permanently magnetized.
>
> Subject **flexible** magnets may be in either magnetized or unmagnetized (including demagnetized) condition, and may or may not be fully or partially laminated or fully or partially bonded with paper, plastic, or other material, of any composition and/or color. Subject flexible magnets may be uncoated or may be coated with an adhesive or any other coating or combination of coatings.

*Orders*, 73 Fed. Reg. at 53,847, 53,850 (emphasis added).

On March 11, 2022, Siffron requested that Commerce issue a scope ruling confirming that its plastic shelf dividers fall outside the scope of the *Orders*. *See* Letter from Sandler, Travis & Rosenberg, P.A. to Dep't of Commerce, *Re: Raw Flexible Magnets from the People's Republic of China and Taiwan: Scope Ruling Request for Fasteners for Retail, Inc. dba Siffron* (Mar. 11, 2022) ("Siffron's Scope Request"). P.R. 1; C.R. 1-2. Siffron's products under consideration are:

2

> {P}lastic dividers, designed for use in a retail setting to organize and display merchandise.
>
> The plastic shelf divider consists of a rigid plastic blade with a plastic base.  The dividers are typically T- or L-shaped.  A flexible magnet, which is attached to the divider using adhesive, provides the means of attachment to an existing shelf.  The plastic shelf divider is reusable and may be moved and repositioned to best serve the needs of the retailer to display and organize merchandise.
>
> The plastic shelf divider may be opaque or transparent depending upon the retailer's preference to block vision of the product or enhance vision of packaging or brands.  Some retailers choose to match the plastic shelf divider color with shelf color.
>
> Plastic shelf dividers are manufactured to match the width of standard shelf sizes and are available in stock lengths of 8 to 24 inches in length and 1.5-4.5 inches in height.  Plastic shelf dividers may also be custom made to fit a particular shelf, including customized shapes and dimensions.

Siffron's Scope Request at 3, P.R. 1; C.R. 1; *see also* Final Scope Ruling at 2-3, P.R. 18; C.R. 11.

Siffron's Scope Request highlights the rigidity of the plastic shelf divider, noting that the product is "manufactured using rigid PVC material that is produced using an extrusion process" and the magnet is attached to the plastic divider's rigid plastic base using adhesive.  Siffron's Scope Request at 4-5.  P.R. 1; C.R. 1.  Additionally, Siffron's Scope Request provided references to the *MAI Scope Ruling*,[1] *InterDesign Scope Ruling*,[2] *Smith-Western Scope Ruling*,[3] and *Qwik Picz Scope Ruling*,[4] in which Commerce deemed advanced products not subject to the scope of the *Orders*.  Siffron's Scope Request at 8-10.  Notably, with respect to the *InterDesign Scope Ruling*, Commerce deemed finished goods that incorporated magnets as a component to be outside the scope of the *Orders* where the magnet has been rendered inflexible.  *Id*. at 9; *id*. at Attachment 9.

---

[1] Siffron's Scope Request at Attachment 9.  P.R. 1; C.R. 1.
[2] *Id*. at Attachment 6.
[3] *Id*. at Attachment 7.
[4] *Id*. at Attachment 8.

Magnets rendered inflexible were also deemed outside the scope of the *Orders* in *Smith-Western Scope Ruling* and *Qwik Picz Scope Ruling*.  *Id.* at 10; *id.* at Attachment 7.  The domestic industry did not appeal these final scope rulings.

On April 5, 2022, Commerce issued Siffron a supplemental questionnaire requesting a list of all plastic shelf dividers produced by Siffron that incorporate raw flexible magnets, including a name, picture, product code, and schematic drawing for each type of product.  Letter from Robert Bolling, Program Manager, AD/CVD Operations, Office IV, Enforcement & Compliance, *Re: Raw Flexible Magnets from the People's Republic of China: Scope Ruling Request for Fasteners for Retail, Inc. dba Siffron* (Apr. 5, 2022) ("Supplemental Questionnaire").  P.R. 10.

On April 7, 2022, Siffron timely responded to Commerce's supplemental questionnaire. Letter from Sandler, Travis & Rosenberg, P.A. to Dep't of Commerce, *Re: Raw Flexible Magnets from the People's Republic of China: Siffron's Response to Scope Inquiry Supplemental Questionnaire* (Apr. 7, 2022) ("Supplemental Response").  P.R. 13; C.R. 4.  Siffron provided the requested information for all products broken down by category of plastic shelf dividers.  *Id.*

On April 11, 2022, Commerce accepted Siffron's scope application and initiated the scope inquiry pursuant to 19 C.F.R. §§351.225(d)(1), (m)(2).  Memorandum from Zachary Shaykin, International Trade Compliance Analyst, AD/CVD Operations, Office IV, to The File, *Re: Scope Inquiry of Raw Flexible Magnets from the People's Republic of China, Subject: Initiation of Fasteners for Retail, Inc. dba Siffron (Siffron) Scope Inquiry* (Apr. 11, 2022) ("Scope Initiation"). P.R. 14.

Plaintiff submitted comments and factual information pertaining to Siffron's scope application on May 11, 2022.  *See* Letter from Squire Patton Boggs (US) LLP to Dep't of Commerce, *Re: Raw Flexible Magnets from the People's Republic of China: Comments and*

4

*Factual Information Submitted by Magnum Magnetics Corporation to Rebut Assertions Contained in the Scope Ruling Application from Fasteners for Retail Inc. dba Siffron* (May 11, 2022) ("Petitioner's Comments").  P.R. 16; C.R. 5.

Siffron submitted rebuttal comments and factual information in response to Plaintiff's submission.  Letter from Sandler, Travis & Rosenberg, P.A. to Dep't of Commerce, *Re: Raw Flexible Magnets from the People's Republic of China: Siffron's Comments and Factual Information to Rebut Comments and Factual Information Filed by Magnum Magnetics Corporation* (May 25, 2022) ("Siffron's Rebuttal Factual Information").  P.R. 17; C.R. 5-10.  As part of the response, in part, Siffron provided factual information demonstrating that: (1) Siffron's plastic shelf dividers are a more advanced product than a raw flexible magnet and (2) bending and twisting the product ruins the product, rendering it not usable for its intended use.  *Id*. at 9.  Siffron provided Commerce with videos demonstrating different sizes of its plastic shelf dividers being bent and twisted.  *Id*. at Attachments 5, 6, 7, 12.  P.R. 17; C.R. 7-10.  The videos demonstrate that "the plastic shelf divider no longer goes back to its original form as a shelf divider" after bending and/or twisting.  *Id*. at 9 and Attachments 5, 6, 7, 12.  P.R. 17; C.R. 5, 7-10.  Following bending and/or twisting, the plastic shelf divider cannot be used.  Additionally, "the opaque, see-through nature of the plastic is destroyed, and the plastic shelf divider can no longer be used to organize the products being displayed."  *Id*. at 9.  P.R. 17; C.R. 5.

On August 9, 2022, Commerce issued its Final Scope Ruling confirming that Siffron's plastic shelf dividers were outside the scope of the *Orders*.  Commerce determined that its "previous scope ruling and language from the underlying ITC investigation provide further guidance in determining whether the plastic shelf dividers are excluded."  Final Scope Ruling at 10-11.  P.R. 18; C.R. 11.  Commerce, as it found in the *InterDesign Scope Ruling*, "found that

bonding of a raw flexible magnet to a functionally inflexible component rendered the flexible magnets outside the scope of the *Orders*." *Id*. at 11. Commerce found that Siffron "demonstrated that bonding raw flexible magnets with an adhesive to a plastic blade renders the plastic shelf dividers inflexible to the extent that the plastic shelf divider cannot be manipulated without damaging the product." *Id.* (citing Siffron's Rebuttal Factual Information at 9 and Attachments 5, 6, 7, and 12. P.R. 17; C.R. 5, 7-10).

Commerce also found that Siffron's "plastic shelf dividers are a functionally different product than that of raw flexible magnets subject to the scope of the *Orders*." *Id.* at 12. After considering the plain language of the scope of the *Orders*, the ITC injury investigation, and Commerce's determinations in the *InterDesign Scope Ruling*, the *Smith-Western Scope Ruling*, and *MAI Scope Ruling*, Commerce found that Siffron's plastic shelf dividers are outside of the scope of the *Orders*. *Id*. In this case, because Commerce determined that the 19 C.F.R. § 351.225(k)(1) factors were dispositive, Commerce did not consider the (k)(2) or (k)(3) factors, deeming such consideration unnecessary. *See* Final Scope Ruling at 10. P.R. 18; C.R. 11.

## SUMMARY OF ARGUMENT

Commerce reasonably determined that Siffron's merchandise falls outside the scope of the *Orders*. Commerce's determination follows the scope language, the petition and the International Trade Commission's ("ITC") injury determination. The plain language of the *Orders* sets forth in the first sentence that the *Orders* pertain to <u>flexible</u> magnets. The administrative record demonstrates that the magnet adhered to the inflexible component (*i.e.*, the plastic blade component) renders the magnet outside the scope of the *Orders*. The (k)(1) sources confirm this interpretation of the *Orders* as Commerce has now issued four scope rulings confirming that magnets that are rendered inflexible by attached materials are outside the scope of the *Orders* and that products that are "substantially different" from raw flexible magnets are excluded from the

*Orders*.  In sum, Commerce's Final Scope Ruling is supported by substantial evidence and should be sustained.

## STANDARD OF REVIEW

Commerce is required to base determinations on "substantial evidence," consistent with 19 U.S.C. § 1516a(b)(1)(B)(i), including "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (*quoting Consol. Edison Co. of New York. v. NLRB*, 305 U.S. 197, 229 (1938)). Commerce's determinations must not be arbitrary and must be in accordance with law. *Id*. Substantial evidence review requires consideration of "the record as a whole, including any evidence that fairly detracts from the substantiality of the evidence," *Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319, 1323 (Fed. Cir. 2010) (internal quotation marks and citation omitted), and asks, in light of that evidence, whether Commerce's determination was reasonable. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006).  To support its findings, Commerce must also "explain the standards that it applied and demonstrate a rational connection between the facts on the record and the conclusions drawn." *Matsushita Elc. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984).  Such explanations "must be reasonably discernible to a reviewing court." *NMB Sing. Ltd. v. United States*, 557 F.3d 1316, 1319 (Fed. Cir. 2009).

As the Federal Circuit noted, "{e}ven if it is possible to draw two inconsistent conclusions from evidence in the record, such a possibility does not prevent Commerce's determination from being supported by substantial evidence." *Am. Silicon Techs. v. United States,* 261 F.3d 1371, 1376 (Fed. Cir. 2001) (*citing Fujitsu Gen. Ltd. v. United States,* 88 F.3d 1034, 1044 (Fed. Cir. 1996)).  "{T}he Court may not substitute its judgment for that of the {agency} when the choice is between two fairly conflicting views, even though the court would justifiably have made a different

choice had the matter been before it *de novo*." *Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) (citations and internal quotations omitted).

The Court grants "'significant deference to Commerce's interpretation of a scope order.'" *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300 (Fed. Cir. 2013) (*quoting Global Commodity Group LLC v. United States*, 709 F.3d 1134, 1138 (Fed. Cir. 2013)).  This is because scope rulings involve "a highly fact intensive and case-specific determination," *King Supply Co., LLC v. United States*, 674 F.3d 1343, 1345 (Fed. Cir. 2012), making it "particularly within the expertise of {Commerce}." *Sandvik Steel Co. v. United States*, 164 F.3d 596, 600 (Fed. Cir. 1998).

## ARGUMENT

**I.   Commerce's Determination That Siffron's Plastic Shelf Dividers Are Not Subject To The Scope of the Orders Is Supported By Substantial Evidence and Is In Accordance With Law**

### A.   Legal Framework For Commerce's Scope Determinations

Commerce's determinations concerning a particular product are made in accordance with its regulations.  *See* 19 C.F.R. § 351.225.  By regulation, Commerce's scope determination begins with the *Orders*' plain language.  19 C.F.R. § 351.225(k)(1); *see also Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 776 F.3d 1351, 1356 (Fed. Cir. 2015) ("Scope language is the 'cornerstone' of any scope determination.") (*quoting Walgreen Co. of Deerfield, IL v. United States*, 620 F.3d 1350, 1357 (Fed. Cir. 2010)).  The regulation concerning scope rulings sets forth the sources that Commerce considers when interpreting scope language: descriptions of the merchandise contained in the petition; the description of the merchandise contained in the initial investigation pertaining to the order; prior or concurrent determinations by Commerce pertaining to the order at issue and other orders with the same or similar language; and prior or concurrent determinations by the ITC pertaining to the order at issue.  19 C.F.R. § 351.225(k)(1).  "{I}f the language of the scope, including the descriptions of merchandise expressly excluded from the

scope{} is dispositive," Commerce's inquiry ends there.  *Vandewater Int'l Inc. v. United States*, 589 F. Supp. 3d 1324, 1329-30 (Ct. Int'l Trade 2022) (*quoting* 19 C.F.R. § 351.225(k)(1)); *see also Star Pipe Prods. v. United States*, 981 F.3d 1067, 1073 (Fed. Cir. 2020) (Commerce's inquiry ends if the plain language, as interpreted by (k)(1) sources, is dispositive).  If the plain language is not dispositive, then Commerce considers regulatory factors set forth in 19 C.F.R. § 351.225(k)(2). These (k)(2) factors are: the physical characteristic of the product; the expectations of the ultimate purchasers; the ultimate use of the product; the channels of trade in which the product is sold; and how the product is advertised and displayed.  19 C.F.R. § 351.225(k)(2).

Commerce's scope analysis must be based on the language during the underlying investigation.  "But the reason why the (k)(1) sources are afforded primacy in the scope analysis is because interpretation of the language used in the orders must be based on the meaning given to that language during the underlying investigations."  *Fedmet Resources Corp. v. United States*, 755 F.3d 912, 921 (Fed. Cir. 2014).  "While Commerce enjoys considerable latitude in clarifying its orders, it may not change the original scope of its orders through the interpretative process." *See Id.* at 921-922 (*citing Tak Fat Trading Co. v. United States*, 396 F.3d 1378, 1383 (Fed.Cir.2005); *Duferco Steel, Inc. v. United States,* 296 F.3d 1087, 1095 (Fed.Cir.2002).

### B. Siffron's Plastic Shelf Dividers Do Not Fit Within the Plain Language of the Scope of the *Orders*

Plaintiff submits that Siffron's product meets the literal scope definition of the *Orders* and is not within the scope of the express exclusion.  Pl. Br. at 6-7.  Contrary to Plaintiff's assertions, Siffron's plastic shelf dividers are neither specifically included or reasonably interpreted to be included under the *Orders*.  "{O}rders may be interpreted as including subject merchandise only if they contain language that specifically includes the subject merchandise or may be *reasonably* interpreted to include it."  *Duferco Steel*, 296 F.3d at 1089.  Siffron's plastic shelf dividers are not

raw flexible magnets and, therefore, the inclusion of such a product would be unreasonable.  The

first sentence of the scope of the *Orders* indicates that it pertains to "flexible" magnets.  *Orders*,

73 Fed. Reg. at 53,847, 53,850.  As the record demonstrates through the photographs and videos

placed on the record by Siffron, there is no flexibility in Siffron's plastic shelf dividers.  In other

words, the magnets have been rendered inflexible by the adhesion to Siffron's plastic blade.

Commerce's Final Scope Ruling is reasonable, based upon substantial evidence and otherwise in

accordance with law.

Additionally, Siffron's plastic shelf dividers are substantially different from a raw flexible

magnet and are not of the same class or kind of merchandise that is within the scope the *Orders*.

*See e.g., Global Commodity*, 709 F.3d at 1140 (affirming Commerce's class or kind determination

because it "appropriately accounts for both the physical scope of the product as well as the country

of origin.").

The fact that Siffron's plastic shelf divider has a previously flexible magnet attached to the

plastic blade does not make the plastic shelf divider subject on its face.  Rather, the adhesion of

the magnet to the plastic blade warrants consideration of whether the plastic shelf divider is

"flexible" as required by the scope of the *Orders*.  Siffron submits, as Commerce reasonably

determined, that the inflexibility of Siffron's product deemed the product outside the scope of the

*Orders*.  The Federal Circuit has confirmed that merchandise facially covered by the literal

language of the order may still be outside the scope if "the order can reasonably be interpreted so

as to exclude it."  *A.L. Patterson, Inc. v. United States*, 585 Fed. Appx. 778, 783 (Fed. Cir. 2014)

(*citing Mid Continent*, 725 F.3d at 1301).  In rejecting the Department's scope analysis, the Court

stated that "{t}he scope determination must be supported by substantial evidence, considering the

§ 351.225(k)(1) criteria, in view of the record as a whole – including evidence that coil and rod

was excluded from Commerce's and the Commission's investigations." *Patterson*, 585 Fed. Appx. at 784. The Federal Circuit noted that the "petition neither mentions coil rod nor any of the uses of coil rod. . . . {the petitioner} named no domestic producers of coil rod in its descriptions of the domestic threaded rod industry. . . . {T}here is no evidence that, at the time Vulcan {the petitioner} filed the petition, it made coil rod, intended to make coil rod, or had decided not to make coil rod because of competition from imports." *Id*. Therefore, "the record in this case does not support a finding that coil rod ***was ever considered part of the investigation***. And given the evidence that coil rod is a distinctly different product in a different domestic industry than the steel threated rod that was investigated, Commerce's scope determination was not supported by substantial evidence." *Id*. (emphasis added).

While *Patterson* is an unpublished opinion and thus nonprecedential, this Court in *Trendium Pool Products, Inc. v. United States*, 399 F.Supp.3d 1335, 1342 (Ct. Int'l Trade 2019) found the case instructive and persuasive. In *Trendium*, the Court found that finished pool products are not subject to the orders covering corrosion resistant steel ("CORE") from Italy and the People's Republic of China as the CORE utilized in the finished product could no longer be used as a raw material input. *Trendium*, 399 F.Supp.3d at 1342. "Just as the steel coil rods were outside the scope of the order in *Patterson* because they were a distinct product occupying a different market than the steel threaded rods, so too here are Trendium's products distinct from the CORES subject to the Order." *Id*. at 1343-44. Here, "the addition of another material, *i.e.*, a plastic blade, to a raw flexible magnet has created a product that is substantially different form a flexible magnet covered by the scope of the *Orders*." Final Scope Ruling at 12. P.R. 18; C.R. 11.

Plaintiff submits that Commerce's analysis that "Siffron's plastic shelf divider is designed to be a shelf organizer in a retail setting that separates retail products for display" was an improper

end-use application analysis.  Pl. Br. at 15-16.  Plaintiff misrepresents both Commerce's analysis as well as Siffron's previous arguments.  Final Scope Ruling at 12.  P.R. 18; C.R. 11; Siffron's Scope Request at 7-12.  P.R. 1; C.R. 1; Siffron's Rebuttal Factual Information at 4, 9.  P.R. 17; C.R. 6.  At no point did Siffron argue, nor did Commerce determine, that Siffron's plastic shelf dividers are subject merchandise that are excluded from the scope of the *Orders* based on end-use. Rather, Siffron's plastic shelf dividers are and have always been non-subject merchandise because they are not raw flexible magnets.  Siffron described its plastic shelf divider as an organizational tool, because that is what the product is, an organizational tool.  *See e.g.*, Siffron's Rebuttal Factual Information at 4, Attachment 1.

Siffron's plastic shelf dividers are a distinct product occupying a different market than the flexible raw magnets subject to the *Orders*.  Final Scope Ruling at 12 ("the addition of another material, *i.e.*, a plastic blade, to a raw flexible magnet has created a product that is substantially different from a flexible magnet covered" by the *Orders*.  "Siffron's plastic shelf divider is designed to be a shelf organizer in a retail setting that separates retail products for display.").

### C. Commerce Reasonably Determined that Siffron's Plastic Shelf Dividers are Not Covered by the *Orders*

Commerce reviewed the plain language text of the scope of the *Orders*, the ITC Injury Report, and previous scope rulings under the *Orders*, finding these factors dispositive in determining that Siffron's plastic shelf dividers were non-subject.   Plaintiff argues that Commerce's decision was "based on application of unspecified, non-existent exclusions to the scope of the *Orders*."  Pl. Br. at 2, 6.  Plaintiff asserts that Siffron plastic shelf dividers meet the unambiguous text of the *Orders* and therefore are subject merchandise.  Pl. Br. at 6-8.  Plaintiff's arguments would have Commerce render a scope determination that reads the term "flexible" out of the scope of the *Orders*, which directly contradicts the 19 C.F.R. § 351.225(k)(1) sources and

is inconsistent with Commerce's previous scope rulings concerning these *Orders*.  In the Final

Scope Ruling, Commerce properly conducted analysis of the (k)(1) factors and such analysis is

supported by substantial evidence.  The scope language, when read together with (k)(1) sources,

unambiguously establishes that the *Orders* do not include Siffron's plastic shelf dividers, with the

physical characteristics of a rigid, inflexible product.

Commerce's inquiry of the plain language, as interpreted by the (k)(1) sources, was proper.

The Court has acknowledged that Commerce's review of the scope language is inseparable from

consideration of the (k)(1) sources.  *See, e.g.*, *Meridian Prods. v. United States*, 890 F.3d 1272,

1277 (Fed. Cir. 2018) ("*Meridian 2018*") (stating that "the plain language of an antidumping order

is 'paramount,' " but that "{i}n reviewing the plain language of a duty order, Commerce must

consider {the (k)(1) sources}") (citation omitted); *Shenyang Yuanda*, 776 F.3d at 1354 (describing

"a two-step process" in which "Commerce must {first} consider the scope language contained in

the order itself, the descriptions contained in the petition, and how the scope was defined in the

investigation and in the determinations issued by Commerce and the ITC").

As the Court recently acknowledged, "Commerce's scope analysis (and the court's

corresponding review of that analysis) is 'highly fact-intensive and case-specific.'"  *See Vietnam

Finewood Company Limited v. United States*, 2023 WL 3019662, Slip Op. 23-58, 7 (Ct. Int'l

Trade, Apr. 20, 2023) (*citing King Supply*, 674 F.3d at 1345).  The Court went on to explain:

> Thus, in some cases, an order's scope, by itself, may be sufficiently
> plain in relationship to a particular product that no resort to the (k)(1)
> sources is necessary.  In other cases, however, it may be necessary
> to consider the (k)(1) sources to confirm that the scope language
> plainly speaks to the inclusion or exclusion of a particular product.
> *See, e.g.*, *Meridian 2017*, 851 F.3d at 1383–84 (reviewing the scope
> language and finding that Commerce's interpretation of such
> language was supported by earlier scope rulings) (citation omitted);
> *ArcelorMittal*, 694 F.3d at 89–90 (finding a scope unambiguous

> "when read in light of industry practice" and "Commerce's previous
> {scope} decision").

*Id*. at 7.

Here, the interpretive (k)(1) sources confirm that the scope language plainly speaks to the inclusion or exclusion of Siffron's plastic product.   19 C.F.R. § 351.225(k)(1).   Importantly, Commerce's interpretation of the scope language of the *Orders* is supported by earlier scope rulings.   As discussed below, the (k)(1) sources are dispositive and unequivocally confirm that Siffron's plastic shelf dividers are not within the scope of the *Orders*.

### i.   Commerce's Previous Scope Rulings Confirm Siffron's Plastic Shelf Dividers are Not Subject to the *Orders*

Commerce's previous scope rulings specifically addressed the flexibility requirement set forth in the scope of the *Orders*.   Final Scope Ruling at 10-11.   These scope rulings are persuasive and dictate Commerce's reasonable interpretation of the *Orders* over more than a decade.   While Plaintiff, the underlying petitioner in the investigation, now challenges Commerce's interpretation of the scope, Plaintiff failed to appeal the previous scope determinations focused on the flexibility requirements of flexible magnets.   Plaintiff argues that Commerce has introduced a "new, not 'specifically stated' exclusion."   Pl. Br. at 11.   Plaintiff's arguments are not based on substantial evidence and must be rejected.   Commerce has not created an exclusion, nor has Commerce's rendered an "unlawful change" in the *Orders'* scope.   Rather, Commerce's determination is an *analysis* of the scope language that is founded in the text and the regulatory framework in issuing a scope ruling.

First, in the *MAI Scope Ruling*, Commerce found that the addition of other materials to a raw flexible magnet created a product that is different from a raw flexible magnet.   *Id*. at 10.   *See also Siffron's Scope Request* at Attachment 9 (*Final Scope Ruling on Certain Decorative*

*Refrigerator Magnets* at 7 (Apr. 15, 2011) (Commerce found certain refrigerator magnets outside the scope of the *Orders* noting that "magnets that have been rendered inflexible by attached materials should be outside the scope of the orders.")).  P.R. 1; C.R. 1.  Commerce considered surgical instrument drape, which is a flexible quilt stuffed with flexible magnets designed to hold ferrous surgical instruments magnetically.  Commerce concluded:

> By combining a raw flexible magnet with a sheet of foam and a sheet of plastic film, MAI has created a product that is substantially different from a raw flexible magnet.  In the construction of the Surgical Instrument Drape, MAI has augmented the product to expand the capabilities of the incorporated raw flexible magnet. This advances, rather than merely modifies, the function of the raw flexible magnets.  The functions of the drape are specifically designed to meet the needs of the surgical environment . . . These characteristics render the drape a different product from a raw flexible magnet subject to the orders.

*Id*. at 10.

Additionally, Commerce's determination in its *InterDesign Scope Ruling,* which found that a paper towel chrome skirt mount with a bonded magnet fell outside the scope of the *Orders,* provides important guidance on whether a downstream product that includes a raw flexible magnet is subject merchandise.  Siffron's Scope Request at Attachment 6 ("*InterDesign Scope Ruling*"). P.R. 1; C.R. 1.  Commerce concluded that the housing to which the magnet is bonded was not functionally flexible because it could not be manipulated without damaging the product.  In making its scope determination, Commerce explained:

> The scope's provision that raw flexible magnets can be bonded with "paper, plastic, or other material, of any composition" does not extend to the point that the material renders the flexible magnet to be no longer flexible.  As the first sentence of the scope of the orders indicates that it pertains to flexible magnets, this suggests that magnets that have been rendered inflexible by attached materials should be outside the scope of the orders . . .The scope language itself is dispositive. . ..

15

*Id*. at 10.

Commerce reached a similar conclusion in the *Qwik Picz Scope Ruling* where Commerce found that an acrylic frame fell outside the scope of the *Orders*. Siffron's Scope Request at Attachment 8 ("*Qwik Picz Scope Ruling*"). P.R. 1; C.R. 1. The issue considered in the *Qwik Picz Scope Ruling* was whether the acrylic frame was flexible or not. *Id*. at 9-11. Finding the product outside the scope of the *Orders*, Commerce explained:

> The ITC explained in the investigation that, in general, flexible magnets are permanent magnets that can be twisted, bent, slit, punched, coiled, and otherwise molded into any shape without loss of magnetic properties. Raw flexible magnets consist of sheet (or sheeting), strip, and thermoplastic profile shapes, typically of uniform thickness and surface finish. Magnetic sheet is characterized as "{s}heets of material that are highly flexible and have permanent magnetic properties." The ITC's description suggests that when, as with the Acrylic frame, an item incorporating an otherwise flexible magnet cannot be twisted or bent without the item breaking, it is no longer "flexible."

*Id*. at 9-10.

Commerce further noted that when questioned regarding the issue of flexibility during the investigation, Petitioner explained that the "magnets exhibit a reasonable degree of flexibility. . .." *Id*. at 10. From this, Commerce concluded that Petitioner's explanation "supports the idea that for an item to be within the scope of the *Magnets Orders* there needs to be some degree of flexibility." *Id*. As the acrylic frame could not be bent or twisted without damaging the frame, Commerce concluded that the product was not flexible and accordingly, fell outside the scope of the *Orders*. *Id*. at 10-11.

### ii. Siffron's Products are Similar to the Products That Commerce Deemed Not Subject

The discussion above details Commerce's consideration and analysis of other distinct, downstream products that were deemed not subject to the scope of the *Orders*. In the Final Scope

Ruling, Commerce properly considered these previous scope rulings and noted the similarities in the physical characteristics of the products of the previous scope ruling products to Siffron's plastic shelf dividers.  Final Scope Ruling at 10-12.

For example, similar to the *MAI Scope Ruling*, plastic shelf dividers are a product substantially different from raw flexible magnets covered by the *Orders*.  Siffron's plastic shelf dividers "advance the function of the raw flexible magnet into a divider used by retailers to organize and display merchandise on retail shelving.  Raw flexible magnets are simply a component of a more advanced product that functions as a product substantially different from raw flexible magnets."  *See* Initial Request at 9.

Additionally, like in the *Qwik Picz Scope Ruling*, Siffron's plastic shelf dividers are manufactured using a rigid piece of plastic that renders the magnet inflexible.  *Id*. at 11.  As noted in Siffron's Scope Request, "{i}f the plastic shelf divider is bent or folded, the product would be damaged."  *Id*.  The videos placed on the administrative record demonstrate this fact.  Siffron's Rebuttal Factual Information at Attachments 5, 6, 7, 12.  P.R. 17; C.R. 7-10.  As with the previous scope rulings concerning the *Orders*, the administrative record demonstrates that raw flexible magnets are simply a component of Siffron's more advanced product that functions as a product substantially different from raw flexible magnets subject to the *Orders*.  The physical characteristics of the plastic shelf divider render Siffron's product separate and distinct from subject raw flexible magnets.  As a result, Commerce's analysis of the (k)(1) sources, including these previous scope rulings, was both proper and persuasive.

### iii.    The ITC's Injury Investigation Supports Commerce's Final Scope Ruling

The ITC injury determination indicates that the ITC understood the subject merchandise to be raw flexible magnets, not downstream products.  Plaintiff's argument that Commerce's Final

Scope Analysis used "language from the ITC report to change the scope of the Orders" is unsupported by the administrative record. Commerce properly analyzed the ITC and provided a proper, logical interpretation of the ITC's Final Staff Report.

In the Final Scope Ruling, Commerce reasonably determined that its determination is consistent with the ITC's description of in-scope raw flexible magnets in the underlying investigation. Final Scope Ruling at 11. As noted by the ITC, "{f}lexible magnets are permanent magnets that **can be twisted, bent, slit, punched, coiled, and otherwise molded into any shape** without loss of magnetic properties." Siffron's Rebuttal Factual Information at 5-6, Attachment 2 (*Raw Flexible Magnets from China and Taiwan*, Inv. Nos. 701-TA-452, 731-TA-1129-1130, USITC Pub. No. 4030 (Final) (Aug. 2008)). P.R. 17; C.R. 6. Additionally, per the ITC Report, "{m}agnetic sheet is characterized as '(s)heets of material that are **highly flexible** and have permanent magnetic properties.'" *Id*. at I-8. Unlike subject raw flexible magnets, the administrative record demonstrates that Siffron's plastic shelf dividers, at the time of import, are rigid and not capable of twisting or bending. *See e.g.*, *id*. at Attachments 5, 6, 7, 12. P.R. 17; C.R. 7-10.

Furthermore, in its injury determination, the ITC only considered whether the domestic raw flexible magnet industry was injured by subject imports. *Id*. at 5-6, Attachment 2. P.R. 17; C.R. 6. Moreover, in identifying U.S. producers of raw flexible magnets, the ITC staff report only identifies domestic and foreign producers of raw flexible magnets. *Id*. at I-3. This is consistent with the Petition filed by Mangum that identified only producers of raw material magnets. *Id*. at Attachment 3 at 4 and 5. The Petition does not name any producers of downstream products, including Siffron who is a domestic producer of plastic shelf dividers, demonstrating that plastic shelf dividers were never intended to be part of the domestic industry. *Id*.

In sum, during the original investigation, the ITC only considered whether the domestic raw flexible magnet industry was injured by raw flexible magnets. The ITC did not consider distinct, downstream products under its analysis. The ITC report makes clear that a critical component to subject merchandise is the physical characteristic of flexibility, which Siffron's plastic shelf dividers do not possess. As a result, Commerce's Final Scope Ruling is supported by the administrative record and in accordance with law. *See* 19 U.S.C. § 1673 (requiring an injury determination by the ITC before the imposition of antidumping duties).

## II.   Commerce's Rejection of Petitioner's Arguments Regarding Removing the Magnet from the Plastic Shelf Divider are Supported by the Administrative Record

In the Final Scope Ruling, Commerce properly rejected Plaintiff's argument that "because the magnet component of the plastic divider can be removed from the plastic blade and potentially repackaged and resold as a raw flexible magnet, the entire plastic shelf divider is within the scope of the Orders." Final Scope Ruling at 11. P.R. 18; C.R. 11. Commerce rejected Plaintiff's argument as implausible, finding:

> As demonstrated by record evidence, (*i.e.*, a picture provided by Siffron of magnet components that had been removed from a sample plastic shelf divider), the adhesive which bonds the flexible magnet to the plastic blade of the plastic shelf divider remains on the magnet and, therefore, is not the same as a pre-affixed raw flexible magnet, which does not contain such adhesive. Furthermore, Siffron has indicated that the entire plastic shelf divider is shipped as a whole product, that is, as the plastic blade that has already been affixed to a raw flexible magnet with a bonding adhesive. Therefore, we find it implausible that the raw flexible magnet is meant to be removed from the plastic blade and used as a separate product that is subject to the scope of the Orders.

*Id*. at 11 and 12 (internal citations omitted). Plaintiff alleges that Commerce improperly incorporated (k)(3) factors in its scope analysis despite basing its determination upon (k)(1) factors. Pl. Br. at 17-18. This has no merit and should be rejected.

19

First, as discussed in Section I above, Commerce's scope determination based upon (k)(1) factors is supported by the substantial evidence on the underlying record and is in accordance with law. As part of the (k)(1) analysis, Commerce may properly consider the physical characteristics of the product under consideration compared to the subject merchandise in its (k)(1) analysis. Here, Commerce viewed photographs of Siffron's plastic shelf dividers and, in describing the physical characteristics of the product under consideration, compared Siffron's product to subject merchandise. *See* Siffron's Rebuttal Factual Information at Attachment 10. P.R. 17; C.R. 6.

Even if, *in arguendo*, the information considered by Commerce under review of the product is a 19 C.F.R. § 351.225(k)(3) analysis, the administrative record supports Commerce's finding that Siffron's plastic shelf dividers fall outside the scope of the *Orders*. While Commerce's finding that Siffron's plastic shelf dividers fall outside the scope of the *Orders* under a (k)(1) analysis, the outcome would be the same based upon the (k)(3)(iii) factors. First, the administrative record demonstrates that it would be impracticable to remove the magnet from the blade. *See* Siffron's Rebuttal Factual Information at 14. P.R. 17; C.R. 6. The cost for a raw flexible magnet is significantly less than the cost for a plastic shelf divider. *Id*. Accordingly, it would be nonsensical to import a plastic shelf divider with the intent of separating the magnet and selling it separately. *Id*. Moreover, the magnet would be of limited use as it is sized to a specific shelf size and would have adhesive residue. *Id*. At best, the magnet could be sold to the secondhand market. *Id*.

In addition, the cost of the plastic portion of the plastic shelf dividers accounts for [      ] percent of the cost depending upon the size of the plastic shelf divider. *Id*. at 15 and Attachment 11. The actual cost is actually higher than the cost reported by Siffron which was only for the raw material and did not include labor or profit. *Id*. Thus, the plastic blade represents a significant portion of the value.

Finally, the administrative record demonstrates that the ultimate function and use of plastic shelf dividers and raw plastic magnets significantly differ.  *Id*. at 16.  Customers purchase the plastic shelf divider as an organization tool to display merchandise in a retail setting.  *Id*.  The plastic shelf dividers are designed to keep merchandise in place and make it easier for customers to see individual products.  The plastic shelf dividers are specifically designed to shelf sizes.  *Id*.  While the plastic shelf dividers at issue have raw flexible magnets attached to their bases, plastic shelf dividers use a variety of fasteners or no fastener at all.  *Id*.  By contrast, raw flexible magnets are simply fastening tools and cannot be used on their own to display and organize merchandise. *Id*.

## <u>CONCLUSION</u>

For the reasons set forth above, we respectfully request that the Court deny Plaintiff's motion and sustain Commerce's Final Scope Ruling.

Respectfully Submitted,

By:   <u>/s/ Kristen Smith</u>
Kristen Smith
Sarah E. Yuskaitis

**SANDLER TRAVIS & ROSENBERG, P.A.**
1300 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC 20004
Tel: (202) 730-4965
Fax: (202) 842-2247

*Counsel to Fasteners for Retail,*
*Inc. d/b/a Siffron*

Dated: May 8, 2023

## Certificate of Compliance with Chamber Procedure 2(B)(1)

Pursuant to Standard Chambers Procedure 2(B)(2), the undersigned hereby certifies that the foregoing brief contains 6,617 words, exclusive of the table of contents, table of authorities, and certificates of counsel, and counsel's signature block, and therefore complies word count limitation set forth in the Standard Chamber Procedure 2(b)(1). In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

By:     /s/ Sarah E. Yuskaitis
*Counsel for Fasteners for Retail,*
*Inc. d/b/a Siffron*

Dated: May 8, 2023