IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES

| | |
|---|---|
| MAGNUM MAGNETICS CORPORATION, ) | |
| ) | |
| ) | |
| Plaintiff, ) | Court No. 22-00254 |
| ) | |
| v. ) | |
| ) | |
| THE UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| FASTENER FOR RETAIL, INC. D/B/A ) | |
| SIFFRON, ) | |
| ) | |
| Defendant-Intervenors. ) | |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S
### MOTION FOR JUDGMENT UPON THE AGENCY RECORD

OF COUNSEL:

K. GARRETT KAYS
Attorney
U.S. Department of Commerce
Office of the Chief for Trade
Enforcement and Compliance
1401 Constitution Ave. NW
Washington, D.C. 20230

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

DANIEL F. ROLAND
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 305-0514
Fax: (202) 307-0972

May 8, 2023                                            *Attorneys for Defendant*

# TABLE OF CONTENTS

STATEMENT PURSUANT TO RULE 56.2 ........................................................................ 2

    I.     Administrative Determination Under Review ........................................ 2

    II.    Issues Presented For Review ................................................................. 2

STATEMENT OF FACTS ............................................................................................ 2

    I.     The Antidumping And Countervailing Duty Orders ............................ 2

    II.    Merchandise Subject To The Scope Inquiry......................................... 3

    III.   The Scope Proceeding............................................................................ 4

SUMMARY OF THE ARGUMENT .......................................................................... 6

ARGUMENT .............................................................................................................. 7

    I.     Standard Of Review ............................................................................... 7

    II.    Legal Framework For Scope Rulings .................................................... 7

    III.   Commerce Appropriately Relied On The (k)(1) Factors In Determining That Siffron's Plastic Shelf Dividers Do Not Fall Within The *Orders'* Scope.............. 9

    IV.   The ITC Inquiry Report And Previous Scope Rulings Support Commerce's Determination That Siffron's Products Are Not Covered By The Orders............ 11

        A.    The ITC Inquiry Report Supports Commerce's Analysis Of The *Orders* ................................................................. 11

        B.    Commerce's Ruling Here Is Consistent With Its Prior Scope Determinations........................................................ 13

            1.    Magnum failed to Exhaust its administrative remedies in criticizing Commerce's reliance on certain prior scope determinations........ 14

            2.    Even if the Court considers Magnum's untimely arguments, Commerce's reliance on prior scope determinations was reasonable ................................................................. 17

    V.    Commerce's Scope Determination Did Not Consider (k)(3) Sources.................. 20

CONCLUSION............................................................................................................ 21

# TABLE OF AUTHORITIES

## CASES

*Agro Dutch Indus. v. United States*,
    508 F.3d 1024 (Fed. Cir. 2007) ................................................................ 16

*Allegheny Bradford Corp. v. United States*,
    342 F. Supp. 2d 1172 (Ct. Int'l Trade 2004) .......................................... 18

*Aramide Maatschappij V.o.F. v. United States*,
    901 F. Supp. 353 (Ct. Int'l. Trade 1995) ............................................... 17

*Atl. Sugar, Ltd. v. United States*,
    744 F.2d 1556 (Fed. Cir. 1984) ................................................................ 7

*Boomerang Tube LLC v. United States*,
    856 F.3d 908 (Fed. Cir. 2017) ................................................................ 14

*Clearon Corp. v. United States*,
    800 F. Supp. 2d 1355 (Ct. Int'l Trade 2011) .......................................... 14

*Consol. Edison Co. v. NLRB*,
    305 U.S. 197 (1938)……………………………………………………..……..7

*Corus Staal BV v. United States*,
    502 F.3d 1370 (Fed. Cir. 2007) ........................................................ 14, 16

*Fedmet Res. Corp. v. United States*,
    755 F.3d 912 (Fed. Cir. 2014) ............................................................... 8, 9

*Gerber Food (Yunnan) Co. v. United States*,
    601 F. Supp. 2d 1370 (Ct. Int'l Trade 2009) .......................................... 16

*Meridian Prods., LLC v. United States*,
    851 F.3d 1375 (Fed. Cir. 2017) ............................................................. 7, 9

*Mid Continent Nail Corp. v. United States*,
    725 F.3d 1295 (Fed. Cir. 2013) ................................................................ 9

*Nucor Corp. v. United States*,
    286 F. Supp. 3d 1364 (Ct. Int'l Trade 2018) .......................................... 14

*OMG, Inc. v. United States*,
    321 F. Supp. 3d 1262 (Ct. Int'l Trade 2018) .......................................... 14

*OMG, Inc. v. United States*,
  972 F.3d 1358 (Fed. Cir. 2020) ............................................................... 8

*Prime Time Com. LLC v. United States*,
  495 F. Supp. 3d 1308 (Ct. Int'l Trade 2021) ........................................ 14

*Sango Int'l L.P. v. United States*,
  484 F.3d 1371 (Fed. Cir. 2007) ............................................................... 8

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*,
  776 F.3d 1351 (Fed. Cir. 2015) ............................................................... 8

*Tak Fat Trading Co. v. United States*,
  396 F.3d 1378 (Fed. Cir. 2005) ............................................................... 8

*TMB 440AE, Inc. v. United States*,
  No. 18-00095, 2020 Ct. Intl. Trade LEXIS 177 (Nov. 27, 2020) ........... 20

*United Steel & Fasteners, Inc. v. United States*,
  947 F.3d 794 (Fed. Cir. 2020) ................................................................. 9

## UNITED STATES CODE

19 U.S.C. § 1516a(a)(2)(B)(vi) .................................................................... 6

19 U.S.C. § 1516a(b)(1)(B)(i)) ..................................................................... 7

19 U.S.C. § 1673e(a)(2) ................................................................................ 7

28 U.S.C. § 2637(d) .................................................................................... 14

## RULE

Rule 56.2 ....................................................................................................... 1

## REGULATIONS

19 C.F.R. § 351.225 ...................................................................................... 7

19 C.F.R. § 351.225(c) .................................................................................. 3

19 C.F.R. § 351.225(e) .................................................................................. 8

19 C.F.R. § 351.225(f)(2) ............................................................................ 14

19 C.F.R. § 351.225(k)(1) .................................................................... Passim

19 C.F.R. § 351.225 (k)(1)(i) ..................................................................... 9

19 CFR § 351.225(k)(2) ................................................................. 5, 9, 21

C.F.R. § 351.225(k)(3) ......................................................................... passim

## FEDERAL REGISTER NOTICES

*Raw Flexible Magnets from the People's Republic of China,*
    73 Fed. Reg. 39,667 (July 10, 2008) ..................................................... 19

*Raw Flexible Magnets from the People's Republic of China,*
    73 Fed. Reg. 53,847 (Dep't of Commerce Sept. 17, 2008) ........................ 1, 2, 3, 18

*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws,*
    86 Fed. Reg. 52,300 (Sept. 20, 2021) ............................................... 8, 10

*Antidumping Duty and Countervailing Duty Orders on Raw Flexible Magnets from the People's Republic of China: Final Scope Ruling on Siffron Plastic Shelf Dividers* (August 9, 2022) ......... 2

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES

_____
)
MAGNUM MAGNETICS CORPORATION, )
)
Plaintiff, )
)
v. )  Court No. 22-00254
)
UNITED STATES, )
)
Defendant, )
)
and )
)
FASTENERS FOR RETAIL, INC. D/B/A )
SIFFRON, )
)
Defendant-Intervenor. )
_____ )

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of this Court, defendant, the United States,

respectfully submits this response to the motion for judgment upon the agency record filed by

plaintiff, Magnum Magnetics Corporation (Magnum). Magnum challenges the United States

Department of Commerce's final scope ruling that certain plastic shelf dividers, imported by

Fasteners for Retail, Inc., doing business as Siffron (Siffron), are outside of the scope of the

antidumping duty (AD) and countervailing duty (CVD) orders covering raw flexible magnets

from the People's Republic of China (China). *See Raw Flexible Magnets from the People's*

*Republic of China*, 73 Fed. Reg. 53,847 (Dep't of Commerce Sept. 17, 2008) (AD Order), and

*Raw Flexible Magnets from the People's Republic of China*, 73 Fed. Reg. 53,849 (Dep't of

Commerce Sept. 17, 2008) (CVD Order) (collectively, the *Orders*). Commerce's determination,

however, is supported by substantial evidence and is in accordance with law.  Accordingly, we respectfully request that the Court deny Magnum's motion, sustain Commerce's determination, and enter judgment for the United States.

**STATEMENT PURSUANT TO RULE 56.2**

I.  <u>Administrative Determination Under Review</u>

The administrative determination under review is *Antidumping Duty and Countervailing Duty Orders on Raw Flexible Magnets from the People's Republic of China: Final Scope Ruling on Siffron Plastic Shelf Dividers* (August 9, 2022) (P.R. 18, C.R. 11) (Final Scope Ruling).

II.  <u>Issue Presented for Review</u>

Whether Commerce's Final Scope Ruling, finding that the subject plastic shelf dividers bonded to a raw flexible magnet are excluded from the scope of the *Orders* pursuant to 19 C.F.R. § 351.225(k)(1), is in accordance with law and supported by substantial evidence.

**STATEMENT OF FACTS**

I.  <u>The Antidumping and Countervailing Duty Orders</u>

On September 17, 2008, Commerce published the *Orders* on raw flexible magnets from China.  *See* AD Order, 73 Fed. Reg. 53,847; CVD Order, 73 Fed. Reg. 53,849.  The scope of the *Orders* provides, in relevant part:

> The products covered by this order are certain flexible magnets regardless of shape, color, or packaging. Subject flexible magnets are bonded magnets composed (not necessarily exclusively) of (i) any one or combination of various flexible binders (such as polymers or co-polymers, or rubber) and (ii) a magnetic element, which may consist of a ferrite permanent magnet material (commonly, strontium or barium ferrite, or a combination of the two), a metal alloy (such as NdFeB or Alnico), any combination of the foregoing with each other or any other material, or any other material capable of being permanently magnetized.
>
> Subject flexible magnets may be in either magnetized or unmagnetized (including demagnetized) condition, and may or may not be fully or partially

laminated or fully or partially bonded with paper, plastic, or other material, of any composition and/or color. Subject flexible magnets may be uncoated or may be coated with an adhesive or any other coating or combination of coatings.

Specifically excluded from the scope of this order are printed flexible magnets, defined as flexible magnets (including individual magnets) that are laminated or bonded with paper, plastic, or other material if such paper, plastic, or other material bears printed text and/or images, including but not limited to business cards, calendars, poetry, sports event schedules, business promotions, decorative motifs, and the like. This exclusion does not apply to such printed flexible magnets if the printing concerned consists of only the following: a trade mark or trade name; country of origin; border, stripes, or lines; any printing that is removed in the course of cutting and/or printing magnets for retail sale or other disposition from the flexible magnet; manufacturing or use instructions (e.g., "print this side up," "this side up," "laminate here"); printing on adhesive backing (that is, material to be removed in order to expose adhesive for use such as application of laminate) or on any other covering that is removed from the flexible magnet prior or subsequent to final printing and before use; non-permanent printing (that is, printing in a medium that facilitates easy removal, permitting the flexible magnet to be reprinted); printing on the back (magnetic) side; or any combination of the above.

All products meeting the physical description of subject merchandise that are not specifically excluded are within the scope of {the *Orders*}. The products subject to {the *Orders*} are currently classifiable principally under subheadings 8505.19.10 and 8505.19.20 of the Harmonized Tariff Schedule of the United States (''HTSUS''). The HTSUS subheadings are provided only for convenience and customs purposes; the written description of the scope of {the *Orders*} is dispositive.

AD Order, 73 Fed. Reg. at 53,847; CVD Order, 73 Fed. Reg. at 53,850.

II.    Merchandise Subject To The Scope Inquiry

The product at issue is a plastic shelf divider with a raw flexible magnet affixed to the base.  Final Scope Ruling at 2.  The plastic shelf divider is made of rigid polyvinyl chloride and consists of a plastic blade, generally T- or L-shaped, and a raw flexible magnet that is attached to the base of the plastic blade with an adhesive tape.  *See id.*  The plastic shelf divider is designed to sit on retail shelving to aid in displaying merchandise produced by end users of the plastic

shelf divider.  *See id.*  The raw flexible magnet allows the shelf divider to be repositioned on a shelf without leaving a sticky residue.  *Id.*

III.    The Scope Proceeding

On March 11, 2022, pursuant to 19 C.F.R. § 351.225(c), Siffron filed a scope ruling request regarding the plastic shelf dividers at issue.  Siffron Letter, "Raw Flexible Magnets from the People's Republic of China and Taiwan: Scope Ruling Request for Fasteners for Retail, Inc. dba Siffron" (March 11, 2022) (P.R. 1, C.R. 1-2) (Scope Request).  In its Scope Request, Siffron stated that the plastic shelf dividers are produced and exported from China, "designed for use in a retail setting to organize and display merchandise" and that the "flexible magnet, which is attached to the divider using adhesive, provides the means of attachment to an existing shelf." *Id*. at 3.  Siffron cited prior scope rulings where Commerce determined that certain products were excluded from the scope of the *Orders* because adding a flexible magnet to another material rendered the product inflexible and created a product that was substantially different from a raw flexible magnet.  *See id*. at 7–11.  Siffron described the plastic shelf dividers as "manufactured using a rigid piece of plastic that renders the magnet inflexible," and explained that, "{i}f the plastic shelf divider is bent or folded, the product would be damaged."  *Id*. at 11. According to Siffron, the raw flexible magnet in its plastic shelf dividers is likewise affixed to an inflexible component and, thus, is rendered functionally inflexible and should be considered outside the scope of the *Orders*.  *Id.* at 10.

Commerce initiated its scope inquiry on April 11, 2022, based on Siffron's Scope Request.  *See* Commerce's Letter, "Initiation of Fasteners for Retail, Inc. dba Siffron (Siffron) Scope Inquiry" (April 11, 2022) (P.R. 14) (Initiation Letter).   Magnum, the petitioner in this proceeding, submitted comments in May 2022, opposing Siffron's Scope Request.  Magnum

Letter, "Raw Flexible Magnets from the People's Republic of China: Comments and Factual Information Submitted by Magnum Magnetics Corporation to Rebut Assertions Contained in the Scope Ruling Application from Fasteners for Retail, Inc. dba Siffron" (May 11, 2022) (P.R. 16, C.R. 5) (Magnum Response). In its comments, Magnum raised two main arguments. First, it contended that Siffron's plastic shelf dividers are covered by the plain language of the *Orders* under 19 C.F.R. § 351.225(k)(1). *Id.* at 4–10. And second, Magnum argued that Siffron's plastic shelf dividers would also be covered by the *Orders* under the factors considered in 19 C.F.R. § 351.225(k)(3). *Id.* at 10–16.

On August 9, 2022, Commerce published its Final Scope Ruling and concluded that Siffron's plastic shelf dividers are not within the scope of the *Orders*. *See* Final Scope Ruling at 10–13. Commerce examined the *Orders* and the description of the products contained in Siffron's Scope Request (including pictures and video that Siffron provided) and relied on the primary interpretive sources set forth in 19 C.F.R. § 351.225(k)(1) for its analysis. *See id.* Upon examining the evidence and (k)(1) interpretive sources—primarily, Commerce's previous scope rulings and language from the underlying International Trade Commission (ITC) investigation— Commerce determined that the (k)(1) sources are dispositive in determining that the subject merchandise is excluded from the scope of the *Orders* because bonding the raw flexible magnet to a rigid component made the otherwise flexible magnets "functionally inflexible" and therefore rendered the plastic shelf dividers outside of the *Orders*' scope. *Id.* Because these (k)(1) sources were dispositive in determining that the plastic shelf dividers are not within the scope of the *Orders*, Commerce found it unnecessary to consider the additional factors specified in 19 C.F.R. § 351.225(k)(2) and § 351.225(k)(3). *Id.* at 10.

## SUMMARY OF ARGUMENT

Commerce's regulations provide it with the discretion to use the interpretive sources under 19 C.F.R. § 351.225(k)(1) in its initial analysis of the language of an order's scope. Consistent with the regulations, in its Final Scope Ruling, Commerce lawfully relied on (k)(1) sources (prior scope rulings and the ITC Injury Report) and determined, in light of those sources, that Siffron's imported plastic shelf dividers are not covered by the *Orders*. Although Magnum contends Commerce cannot look to the (k)(1) sources unless it first finds an ambiguity in the order, Magnum's view is based on authority that pre-dates the 2021 changes to Commerce's regulations and is mistaken.

Magnum's challenges to the underlying (k)(1) materials and Commerce's associated analysis also lack merit. As a threshold matter, certain of Magnum's arguments were not raised below and have not been exhausted. But even if the Court considers those arguments, Magnum fails to establish that Commerce's reliance on the (k)(1) sources was unreasonable. The ITC Injury Report supports Commerce's determination that Siffron's plastic shelf dividers are outside the scope of the *Orders* because the raw flexible magnets are "functionally inflexible" when affixed to the plastic blade of the shelf divider. And Commerce's prior scope rulings are consistent with Commerce's conclusion here that affixing the otherwise flexible magnets in Siffron's product to an inflexible plastic blade renders them outside the scope. Although Magnum criticizes Commerce for relying on these prior rulings, it cites nothing indicating that these rulings are invalid or that Commerce cannot rely on them. Its position essentially boils down to a disagreement with Commerce's prior rulings; Magnum does not show that Commerce misapplied those rulings here.

Finally, Magnum argues that Commerce wrongly incorporated a single (k)(3) factor into its (k)(1) analysis, but it cites nothing supporting this argument. And Commerce's statement that it was *not* conducting a (k)(3) analysis directly undercuts Magnum's position.

**ARGUMENT**

## I.     Standard Of Review

The Court may review a determination by Commerce "as to whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order." 19 U.S.C. § 1516a(a)(2)(B)(vi); *Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1379 (Fed. Cir. 2017). This Court must affirm "a Commerce scope ruling that is supported 'by substantial evidence on the record' and otherwise 'in accordance with law.'" *Meridian Prods.*, 851 F.3d at 1381 (citing 19 U.S.C § 1516a(b)(1)(B)(i)). Substantial evidence is "more than a mere scintilla" of relevant and reasonable evidence to support the underlying conclusions. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The requisite proof amounts to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" in light of "the entire record, including whatever fairly detracts from the substantiality of the evidence." *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (internal quotation marks and citation omitted).

## II.     Legal Framework For Scope Rulings

When Commerce publishes an AD or CVD order, it defines the scope and "includes a description of the subject merchandise, in such detail as {Commerce} deems necessary." 19 U.S.C. § 1673e(a)(2). Commerce is often called upon to determine whether a certain product is included within the scope of an AD or CVD order because it must write scope language in general terms. *Meridian Prods.,* 851 F.3d at 1379 (citations omitted). When Commerce confronts such a question, it follows the analytical framework and procedures set forth in its

regulations. 19 C.F.R. § 351.225; *see also Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 776 F.3d 1351, 1354 (Fed. Cir. 2015) ("There is no specific statutory provision governing the interpretation of the scope of {AD} or {CVD} orders.").

Under the regulations, which were modified in 2021,[1] to determine if a product is covered by the scope of an order, Commerce "*may* make its determination" on the basis of the language of the scope alone. 19 C.F.R. § 351.225(k)(1) (emphasis added). However, in making this determination, Commerce has discretion to consider the (k)(1) sources, which include the petition pertaining to the order at issue, previous determinations by Commerce (including prior scope determinations), and ITC reports pertaining to the order at issue. *See* 19 C.F.R. § 351.225(k)(1). If Commerce determines that descriptions of the merchandise contained in the (k)(1) sources are dispositive, Commerce issues a final scope ruling regarding whether the product falls within the order's scope. *See* 19 C.F.R. § 351.225(e); *see also Tak Fat Trading Co. v. United States*, 396 F.3d 1378, 1382 (Fed. Cir. 2005). The (k)(1) sources are "dispositive" when they "definitively answer the scope question." *Sango Int'l L.P. v. United States*, 484 F.3d 1371, 1379 (Fed. Cir. 2007). This Court reviews "Commerce's analysis of the (k)(1) sources

---

[1] Before Commerce modified the regulations in 2021, the Federal Circuit seemingly had different views on "whether the sources under the current § 351.225(k)(1) are used to interpret the 'plain meaning' of the text of the scope, or whether the plain meaning analysis comes first, and only once a determination on the plain meaning is determined, then the current § 351.225(k)(1) sources are considered." *Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws,* 86 Fed. Reg. 52,300, 52,323 (Sept. 20, 2021) (citing cases); *cf. Fedmet Res. Corp. v. United States*, 755 F.3d 912, 918 (Fed. Cir. 2014) (explaining that the plain language is "paramount" and stating that, in "reviewing the plain language of a duty order," Commerce "must consider" the "descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior determinations) and the Commission"), *with OMG, Inc. v. United States*, 972 F.3d 1358, 1363–66 (Fed. Cir. 2020) (indicating that Commerce should look at the (k)(1) factors only after determining that the governing language in the scope order is ambiguous).

against the product in question" as an issue of fact under the substantial evidence standard.

*United Steel & Fasteners, Inc. v. United States*, 947 F.3d 794, 799 (Fed. Cir. 2020); *see also*

*Meridian Prods*., 851 F.3d at 1382 (citing *Fedmet Res. Corp. v. United States*, 755 F.3d 912,

919-22 (Fed. Cir. 2014)).

Only when the (k)(1) sources are not dispositive will Commerce consider the five criteria

set forth in § 351.225(k)(2).  *See* 19 C.F.R. § 351.225(k)(2); *Fedmet Res. Corp. v. United States*,

755 F.3d 912, 918 (Fed. Cir. 2014).  Moreover, "{i}f merchandise contains or consists of two or

more components and the product at issue in the scope inquiry is a component of that

merchandise as a whole," and the (k)(1) sources are not dispositive, Commerce has discretion to

consider additional factors.  *See* 19 C.F.R. § 351.225(k)(3).

III.    Commerce Appropriately Relied On The (k)(1) Factors In Determining That Siffron's
        Plastic Shelf Dividers Do Not Fall Within The *Orders*' Scope

Magnum argues that the plain language alone of the *Orders* governs and that Commerce

erred by relying on (k)(1) materials because, in Magnum's view, they are "appropriate only as

interpretative guides to <u>ambiguous</u> language."  *See* ECF No. 23 ("Magnum Br.") at 7 (citing *Mid

Continent Nail Corp. v. United States*, 725 F.3d 1295, 1302 (Fed. Cir. 2013)).   Magnum is

incorrect, because it fails to account for the recent changes to the regulations.  As noted, the

regulations applicable to this scope ruling—which were not in effect when Magnum's cited

precedent issued—give Commerce the discretion to consider (k)(1) materials in analyzing a

scope order, whether the plain language may appear ambiguous or not.  *See* 19 C.F.R. § 351.225

(k)(1)(i) ("The following primary interpretive sources may be taken into account under

paragraph (k)(1) introductory text of this section, at the discretion of the Secretary.").  Indeed, in

modifying the regulations, Commerce noted the "differing views" in the Federal Circuit as to

when and if (k)(1) sources could be considered and clarified that the (k)(1) sources were always intended to be included in the initial analysis of the scope language:

> {W}e also agree with the commenters who argue that in most scope inquiries the language of the scope is written in more general or broad terms, and, therefore, in the majority of scope inquiries, it is likely that the current (k)(1) sources would be considered by Commerce in determining if a product is covered by the scope of an order in a scope ruling. *It is Commerce's understanding that the sources listed in current § 351.225(k)(1) were always intended to be interpretive tools to understand the plain meaning of the scope*, recognizing that terms that may have been plain at the time they were drafted and adopted upon the issuance of the order could be interpreted differently at some later point.

*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws,* 86 Fed. Reg. 52,300, 52,323 (Sept. 20, 2021) (Final Rule) (emphasis added). Thus, contrary to Magnum's assertion that Commerce had to first find an ambiguity in the language of the *Orders* before looking to (k)(1) sources, Magnum Br. at 7, Commerce acted consistently with its regulations by relying on the (k)(1) materials to determine the *Orders*' scope. In other words, notwithstanding Commerce's statement that "based on the plain language of the scope, Siffron's product appears to fall within the scope of the *Orders*," Final Scope Ruling at 10, Commerce had the discretion to consider the (k)(1) materials to determine if the *Orders* covered the product at issue. Magnum's authority that pre-dates the 2021 regulations does not show otherwise.

For the same reason, Magnum's contention that Commerce relied on "extra-textual exclusions" that "violate{d} the *Orders'* textual prohibition" is based on an outdated view of the regulations and is therefore misplaced. *See* Magnum Br. at 7–8 (citing the *Orders*, "All products meeting the physical description of subject merchandise that are not specifically excluded are within the scope of the *Orders*."). Commerce lawfully looked to the (k)(1) sources (*i.e.*, prior scope rulings and the ITC report) to interpret the language of the *Orders*. *See* Final Scope

Ruling at 10–12. And in doing so, it determined that the plastic shelf dividers do not fall within the *Orders*' scope because, *inter alia*, the "raw flexible magnets in Siffron's plastic shelf dividers, when affixed to the component plastic blade, are functionally inflexible." *See id.* That is, Commerce relied on (k)(1) sources—not "extra-textual exclusions"—to determine the scope of the orders and concluded, based on its interpretation, that Siffron's product do not match the physical description of the products subject to the *Orders*. *See id.* Magnum's mere disagreement with Commerce's interpretation does not render Commerce's reliance on the (k)(1) sources improper.

IV.     The ITC Injury Report and Previous Scope Rulings Support Commerce's
        Determination That Siffron's Products Are Not Covered By The Orders

Magnum attempts to further discredit Commerce's scope ruling by attacking the underlying (k)(1) materials and Commerce's associated analysis. As explained below, Magnum's arguments lack merit and, in some cases, are untimely and should not be considered.

A.     The ITC Injury Report Supports Commerce's Analysis of the *Orders*

Consistent with § 351.225(k)(1), Commerce looked to the ITC Injury Report to determine if Siffron's product was covered by the *Orders*. *See* Final Scope Ruling at 10-13 (citing *Raw Flexible Magnets from China and Taiwan*, USITC Pub. 4030, Investig. Nos. 701-TA-452, 731-TA-1129-1130 (Final) (August 25, 2008) (ITC Injury Report)). As Commerce explained in the Final Scope Ruling, the ITC Injury Report states that, "in general, flexible magnets are permanent magnets that can be twisted, bent, slit, punched, coiled, or otherwise molded into any shape without losing its magnetic properties." Final Scope Ruling at 11 (citing ITC Injury Report at I-8). In view of the ITC's description, Commerce concluded that, to fall within the scope of the *Orders*, an item incorporating an otherwise inflexible magnet "cannot be twisted, bent, or manipulated without that item breaking." *Id.* Applying that logic to the situation here,

Commerce reasonably determined that the raw flexible magnets in Siffron's plastic shelf dividers are "functionally inflexible" when affixed to the plastic blade of the shelf divider—and outside the scope of the *Orders*—because twisting or bending the shelf divider would damage the plastic blade and render the product "ineffective for its intended function as a product organizer." *See id.* at 11.

Notably, Magnum does not dispute Commerce's conclusion that the raw flexible magnets are functionally inflexible or that the plastic shelf divider would be ineffective for its intended use if the plastic blade (with the affixed magnet) were twisted, bent, or manipulated. *See* Magnum Br. at 6–10. Instead, Magnum argues that Commerce's analysis is "logically incoherent" and inconsistent with the ITC Injury Report. *See id.* at 9–10. Specifically, Magnum asserts that Commerce's conclusion that an item cannot be considered flexible if it cannot be twisted or bent "without that item breaking" does not follow from the ITC's statement that a flexible magnet can be twisted or bent "without losing its magnetic properties." *See id.* But Magnum's reading of the ITC's statement is too narrow and is therefore flawed.

Under the ITC's reasoning, if a flexible magnet can be twisted or bent without losing its magnetic properties, then a flexible magnet that loses its magnetic properties when twisted or bent is no longer a flexible magnet under the *Orders*—it has lost its *magnetic* function. In the same way, and based on the ITC's rationale, Commerce determined that a magnet that loses its flexibility (*i.e.*, bending it would damage the plastic blade) also is not a flexible magnet—it has lost its *flexing* function. *See* Final Scope Ruling at 11. There is nothing illogical or incoherent about Commerce's reasoning. In both scenarios, the characteristics of the otherwise flexible magnet are altered, one loses its magnetic properties, the other its functional flexibility. Either way, the result is the same: neither remains a flexible magnet under the *Orders*.

In the same vein, Magnum also asserts that "there is no evidence whatsoever in the record that manipulating Siffron's magnetic shelf dividers causes the bonded <u>magnet</u> to lose its magnetic properties." *See* Magnum Br. at 10. But again, Magnum's hyperfocus on the ITC's statement regarding the "loss of magnetic properties" overlooks that a flexible magnet must be both magnetic *and* flexible. And Magnum identifies nothing undermining Commerce's analysis on the functional *inflexibility* of the magnet once attached to the shelf divider.

B. <u>Commerce's Ruling Here Is Consistent with Its Prior Scope Determinations</u>

In its Scope Request, Siffron cited three prior scope rulings (*InterDesign*, *Smith-Western*, and *Qwik Picz*) where Commerce determined that a finished good incorporating a magnet was outside the scope of the *Orders* because the magnets in the products in question were affixed to an *inflexible* component and were no longer functionally flexible. *See* Scope Request at 9–11 (citing Commerce's Memorandum, "Final Scope Ruling on Certain Retail Hook and Paper Towel Magnets," dated January 10, 2011 (*InterDesign*) at 10; Commerce's Memorandum, "Final Scope Ruling on Certain Decorative Refrigerator Magnets," dated April 15, 2011 (*Smith-Western*) at 7; Commerce's Memorandum, "Final Scope Ruling-Qwik Picz Photo Booth LLC," dated October 13, 2016 (*Qwik Picz*) at 10-11). Siffron also cited another scope determination (*MAI*) in which Commerce found that "the addition of other material to the flexible magnets created a product that is substantially different from a raw flexible magnet," and, thus, was out of scope. *See* Scope Request at 8–9 (citing Commerce's Memorandum, "Raw Flexible Magnets from the People's Republic of China: Scope Request from the People's Republic of China; Scope Request from Medical Actions Industries (MAI) Final Scope Determination," dated January 10, 2011 (*MAI*)).

In its Final Scope Ruling, Commerce agreed with Siffron and concluded that its prior scope determinations, in particular *InterDesign* and *MAI*, were persuasive (k)(1) primary sources

for its determination that Siffron's product is not covered by the *Orders*. *See* Final Scope Ruling at 11–12. Notwithstanding that the consistency of Commerce's scope rulings helps "provide producers and importers with notice as to whether their products fall within the scope of an {AD} or {CVD} order," *OMG, Inc. v. United States*, 321 F. Supp. 3d 1262, 1264 (Ct. Int'l Trade 2018), Magnum contends that these prior rulings are "unpersuasive" and that Commerce's reliance on them is misplaced. *See* Magnum Br. at 10–16. As explained below, however, Magnum's arguments are untimely and unconvincing.

i. Magnum failed to exhaust its administrative remedies in criticizing Commerce's reliance on certain prior scope determinations

Congress has mandated that "the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). The statute "indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017) (citing *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007)); *see also Prime Time Com. LLC v. United States*, 495 F. Supp. 3d 1308, 1313–14 (Ct. Int'l Trade 2021) ("Parties are required to exhaust administrative remedies before the agency by raising all issues in their initial case briefs before Commerce.") (citing cases), *aff'd*, No. 2021-1783, 2022 WL 2313968 (Fed. Cir. June 28, 2022); *See* 19 C.F.R. § 351.225(f)(2). This Court "generally takes a 'strict view' of the requirement that parties exhaust their administrative remedies before the Department of Commerce in trade cases." *Corus Staal*, 502 F.3d at 1379 (citing cases); *accord Clearon Corp. v. United States*, 800 F. Supp. 2d 1355, 1362 (Ct. Int'l Trade 2011); *Nucor Corp. v. United States*, 286 F. Supp. 3d 1364, 1377 (Ct. Int'l Trade 2018), *aff'd*, 927 F.3d 1243 (Fed. Cir. 2019).

Here, Magnum presents two challenges to Commerce's reliance on prior scope rulings that were never raised below. First, Magnum argues that Commerce ignored the plain language of the *Orders* and impermissibly evaluated Siffron's magnetic shelf dividers against the *InterDesign* ruling, which, according to Magnum, "changed and displaced the language of the *Orders*" by mischaracterizing the *It's Academic II* ruling, i.e., another prior scope ruling. *See* Magnum Br. at 10–14 (citing Commerce's Memorandum, "Raw Flexible Magnets from the People's Republic of China: Scope Request from It's Academic – Result of Inquiry – Final Scope Determination in Part" (March 4, 2010) (*It's Academic II*)). In other words, Magnum suggests that, in *InterDesign*, Commerce mischaracterized *It's Academic II* and "created for the first time an additional flexibility requirement for the entire product," and then wrongly used that flexibility requirement in this scope ruling when evaluating Siffron's product. *See* Magnum Br. at 10–14. But Magnum made no such argument in its comments on Siffron's Scope Request. To the contrary, it did not even mention *It's Academic II*. *See generally* Magnum Response. And the lone reference to *InterDesign* was made in the context of a general criticism that Commerce's prior rulings are contrary to the language of the *Orders*. *See id.* at 9 ("In the *InterDesign* and related scope rulings Siffron cites, for example, the Department addressed articles such as plastic towel hooks and a paper towel holder with flexible magnets attached. . . . That the reasoning reflected in the prior scope rulings on which Siffron relies is contrary to the unambiguous language of the Orders vitiates their utility in resolving this application.").

*Second*, despite Siffron expressly arguing that its "plastic shelf dividers are a product substantially different from raw flexible magnets covered by the orders," "{s}imilar to raw flexible magnets considered in the *MAI Scope Ruling*," Scope Request at 8–9, Magnum never discussed *MAI* in its comments on Siffron's Scope Request, much less criticized *MAI* for

improperly creating a "substantial difference" test, *see generally* Magnum Response. Yet Magnum now argues that Commerce "mischaracterized its *MAI* ruling" to construct an "additional unauthorized exclusion" based on an alleged "substantial difference" test. *See* Magnum Br. at 14–16. Magnum even attempts to bolster this argument by relying on another prior scope ruling (*Lakeshore*) that was never mentioned in its comments either. *See id.*; *see generally* Magnum Response. Given the "strict view" this Court takes on the exhaustion requirement, Magnum's failure to present either of these challenges below bars from it from raising them for the first time before this Court.

Moreover, while courts have recognized limited exceptions to the exhaustion requirement—including (1) futility; (2) instances when the plaintiff raised a pure question of law that did not require further agency involvement; (3) instances when the plaintiff did not have timely access to the confidential record; and (4) an intervening judicial interpretation since the remand proceeding changed the agency result, *see Corus Staal*, 502 F.3d at 1378–79; *Gerber Food (Yunnan) Co. v. United States*, 601 F. Supp. 2d 1370, 1377 (Ct. Int'l Trade 2009)—none applies here.

The futility exception is narrow and has primarily been applied in situations where parties "would be required to go through obviously useless motions in order to preserve their rights." *Corus Staal*, 502 F.3d at 1379 (quotation marks and citation omitted). Magnum cannot reasonably suggest that making these arguments would have been futile, and Magnum certainly had the ability to raise these arguments when addressing Commerce's prior scope rulings.

Although this Court has recognized the "pure question of law" exception to the exhaustion requirement in certain cases, *see Agro Dutch Industries v. United States*, 508 F.3d 1024, 1029 (Fed. Cir. 2007), the exception is "a weak one" that "should fail" absent other factors

16

indicating an exception should be made, *Aramide Maatschappij V.o.F. v. United States*, 901 F. Supp. 353, 357 n.4 (Ct. Int'l. Trade 1995). Regardless of the strength of this exception, these issues are not purely legal. Commerce's analysis of the factual scenario here and that of other scope proceedings is highly fact intensive. That much is made clear by Magnum's own arguments, as Magnum repeatedly tries to distinguish Commerce's prior determinations based on the facts in those rulings. *See* Magnum Br. at 12 (explaining that the inquiry in *It's Academic II* was "whether the injection molding of a multiple-layer, multiple-part form of colored plasticized (bendable) PVC is a *printed* image and/or text"); Magnum Br. at 15 (arguing that *MAI* differs because "the flexible magnets were not <u>bonded</u> to the drapes"); Magnum Response at 9 (pointing out that *InterDesign* "addressed articles such as plastic towel hooks and a paper towel holder with flexible magnets attached").

Turning to the remaining factors, no intervening judicial decision excuses Magnum's failure to raise these challenges during the administrative proceeding, and Magnum did not lack access to pertinent confidential record information. Thus, none of the exceptions to the exhaustion requirement apply, and this Court should not consider Magnum's newly raised arguments.

      ii.    Even if the Court considers Magnum's untimely arguments, Commerce's reliance on prior scope determinations was reasonable

Even if the Court decides to consider Magnum's arguments, the Court should hold that Commerce's reliance on prior scope rulings was reasonable under (k)(1). In challenging Commerce's reliance on *InterDesign*, Magnum's argument boils down to a disagreement with the *InterDesign* ruling, what Magnum labels an "aberrational decision." *See* Magnum Br. at 13. But absent from Magnum's argument is any indication that Commerce misapplied *InterDesign* or that the facts here do not parallel those in *InterDesign*. *See id.* at 10–14. And despite

criticizing *InterDesign* for allegedly changing the language of the *Orders*, Magnum cites

nothing—no subsequent Commerce ruling or court decision—indicating that *InterDesign* has

been called into question, held invalid, or otherwise deemed to be not in accordance with law.

*See id.* That *InterDesign* does not help Magnum's case is not a reason to find that Commerce

acted arbitrarily in relying on this prior scope ruling. After all, *InterDesign* is not the ruling at

issue.

Although Magnum also argues that *InterDesign* should be accorded "no value as an

interpretative guide" because it allegedly changed the scope of the *Orders* by adding a so-called

"flexibility requirement," Magnum is incorrect on this point too. *See id.* at 13–14. Commerce

did not read a "flexibility requirement" into the scope of the *Orders*. The first sentence of the

scope makes that much clear, as it requires that the subject merchandise be *flexible*. AD Order,

73 Fed. Reg. at 53,847; CVD Order, 73 Fed. Reg. at 53,850 ("The products covered by this order

are certain flexible magnets . . . ."). Although Magnum essentially suggests Commerce should

review the magnets at issue in a vacuum, Magnum Br. at 11, Commerce is analyzing whether the

merchandise at issue, plastic shelf dividers, are covered by the scope of the *Orders*. And

Commerce has construed the language of the *Orders* in a way that requires subject raw flexible

magnets to *continue* to be functionally flexible when affixed to another component (like

Siffron's plastic blade) to be covered by the *Orders*. *See* Final Scope Ruling at 11–12. That is

neither a change to the scope of the *Orders* nor an interpretation that conflicts with the *Orders*'

language. If anything, Commerce's consistent view of the *Orders* (here and in prior rulings)

refutes Magnum's argument that Commerce's ruling is "arbitrarily constructed and arbitrarily

applied." Magnum Br. at 13. Under these circumstances, the Court should rule that

Commerce's interpretation is reasonable. *See Allegheny Bradford Corp. v. United States*, 342 F.

Supp. 2d 1172, 1183 (Ct. Int'l Trade 2004) (explaining that this Court "gives significant deference to Commerce's interpretation of its own orders").

Magnum's arguments regarding *MAI* suffer from the same deficiency. Magnum disagrees with *MAI* but cites no authority indicating that Commerce cannot or should not rely on this prior ruling. *See* Magnum Br. at 14–16. Although Magnum tries to distinguish *MAI* on the facts, arguing that the "critical factor" in *MAI* was the "lack of bonding" between the magnet and the other component, Magnum ignores the aspect of *MAI* that Commerce relied on. *See id.*; *cf.* Final Scope Ruling at 12. That is, while the lack of bonding was *one* reason the surgical drapes in *MAI* were deemed outside the scope of the *Orders*, Commerce separately determined that the surgical drapes were not covered because they also combined a raw flexible magnet with a sheet of foam and a sheet of plastic film, which "created a product that is substantially different from a raw flexible magnet." Scope Request at 8 (quoting *MAI* at 9). That is the reasoning in *MAI* that Commerce relied on here. *See* Final Scope Ruling at 12 ("In the instant scope inquiry, like MAI's surgical drape, the addition of another material, *i.e.*, a plastic blade, to a raw flexible magnet has created a product that is substantially different from a flexible magnet covered by the scope of the *Orders*."). So while the lack of bonding may have been a factor in Commerce's analysis in *MAI*, it was irrelevant in the ruling at issue.

Magnum's related argument—that Commerce unlawfully "focus{ed} on the end-use application or functionality of Siffron's product as the basis for excluding the product"—also lacks merit. *See* Magnum Br. at 15–16. Although Magnum is correct that Commerce has stated it "does not generally define subject merchandise by end-use application," *see Raw Flexible Magnets from the People's Republic of China*, 73 Fed. Reg. 39,667 (July 10, 2008) (final affirm. CVD determ.), and accompanying IDM at 3; Magnum Br. at 16, Commerce did not rely on end-

use exclusionary language in the *Orders* here. That is, Commerce never stated that the end-use of Siffron's products (effectively displaying retail products on a shelf) is expressly excluded by the *Orders*. Instead, Commerce looked to the ITC Injury Report's general description of the use of raw flexible magnets, determined that Siffron's product does not fit that description, and reasonably concluded that this fact further supports its view that Siffron's product is not covered by the *Orders*. *See* Final Scope Ruling at 12. While Magnum criticizes Commerce for previously rejecting an argument based on an end-use application, the product there was a "photo pocket," *see* Magnum Br. at 16, an example expressly covered by the ITC Injury Report's general description, *see* Final Scope Ruling at 12 ("the ITC explained during its investigation that, in general, raw flexible magnetic sheet and strips are typically used to produce . . . magnetic photo pockets . . . ."). This Court has also ruled that Commerce's interpretation of a scope order may be supported by an ITC report's insight into the end-uses of covered merchandise. *See TMB 440AE, Inc. v. United States*, No. 18-00095, 2020 Ct. Intl. Trade LEXIS 177, at *11–13 (Nov. 27, 2020) (finding Commerce's inference that scope language covers "non-industrial settings" supported by the ITC's discussion that seamless pipe—the product at issue—is used in "general construction," which could reasonably be interpreted to include both industrial and residential settings).

V.    Commerce's Scope Determination Did Not Consider (k)(3) Sources

As a final argument, Magnum asserts that Commerce wrongly incorporated a single (k)(3) factor into its (k)(1) analysis, and that, had Commerce conducted a full (k)(3) analysis, it would have determined that the other (k)(3) factors undercut its determination. *See* Magnum Br. at 17–18. Magnum's argument has two fatal flaws. First, as Magnum even recognizes, *see id.*, Commerce expressly stated that it was not conducting a (k)(3) analysis. *See* Final Scope Ruling

at 10 ("Commerce finds it unnecessary to consider the additional factors specified in 19 C.F.R. 351.225(k)(2) and 351.225(k)(3)."). And second, Magnum identifies nothing indicating that Commerce actually relied on any (k)(3) factor. Magnum's sole basis for this argument is the assertion that Commerce considered "the results of removal of the flexible magnet from the plastic elements of the dividers."[2] Magnum Br. at 17. But Magnum misconstrues Commerce's ruling. Commerce only discussed the removal of the flexible magnet in *rejecting* Magnum's argument that, "because the magnet component of the plastic shelf divider can be removed from the plastic blade and potentially repackaged and resold as a raw flexible magnet, the entire plastic shelf divider is within the scope of the *Orders*." Final Scope Ruling at 11 (citing Magnum Response at 14). Magnum's self-serving statement that this response to its own argument qualifies as reliance on a (k)(3) factor should be rejected, particularly when Commerce expressly stated that it was limiting its analysis to the (k)(1) sources and not considering the (k)(3) factors. *See* Final Scope Ruling at 10.

## CONCLUSION

For these reasons, we respectfully request that the Court deny the plaintiff's motion for judgment upon the administrative record and enter judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

---

[2] Given Magnum argues that the "other (k)(3) factors" support its position, *see* Magnum Br. at 17 (referencing (k)(3)(iii)(B) and (k)(3)(iii)(C)), we presume Magnum is asserting that Commerce relied on factor (k)(3)(iii)(A). *See* 19 C.F.R. § 351.225(k)(3)(iii)(A) ("The practicability of separating the in-scope component for repackaging or resale, considering the relative difficulty and expense of separating the components.").

/s/ Claudia Burke
                                       CLAUDIA BURKE
                                       Deputy Director

OF COUNSEL:                            /s/ Daniel F. Roland
K. GARRETT KAYS                        DANIEL F. ROLAND
Attorney                               Trial Attorney
U.S. Department of Commerce            United States Department of Justice
Office of the Chief Counsel for Trade  Civil Division
   Enforcement and Compliance          Commercial Litigation Branch
1401 Constitution Avenue, NW           P.O. Box 480
Washington, D.C. 20230                 Ben Franklin Station
                                       Washington, D.C. 20044
                                       Tel: (202) 305-0514
                                       Fax: (202) 307-0972
                                       Email: Daniel.F.Roland@usdoj.gov

May 8, 2023                            *Attorneys for Defendant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that this brief complies with the Court's type-volume limitation rules. According to the word count calculated by the Microsoft Word processing system used to prepare this brief, I certify that this brief contains 6,820 words, excluding those exempted portions of this brief.

<u>/s/ Daniel F. Roland</u>

May 8, 2023