**UNITED STATES COURT OF INTERNATIONAL TRADE**

**Before: The Honorable Jennifer Choe-Groves, Judge**

| | |
|---|---|
| MAGNUM MAGNETICS CORPORATION, | |
| Plaintiff, | |
| v. | Case No. 1:22-cv-00254 |
| UNITED STATES, | |
| Defendant, | |
| and | |
| FASTENERS FOR RETAIL, INC. doing business as SIFFRON, | |
| Defendant-Intervenor | |

**PLAINTIFF MAGNUM MAGNETICS CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF ITS
RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Jeremy W. Dutra
jeremy.dutra@squirepb.com
Ritchie T. Thomas
ritchie.thomas@squirepb.com
Christopher D. Clark
christopher.clark@squirepb.com

SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000

*Counsel to Plaintiff
Magnum Magnetics Corporation*

June 5, 2023

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

WORD COUNT CERTIFICATE OF COMPLIANCE .............................................. iii

I.     INTRODUCTION ................................................................................... 1

II.    ARGUMENT ............................................................................................ 1

       A.    Commerce cannot disregard the plain language of the *Orders*, which
             expressly covers the products at issue. ..................................... 1

       B.    Commerce does not have authority to fabricate extra-textual exclusions to
             the scope of the *Orders*. .......................................................... 4

       C.    Magnum exhausted its administrative remedies to the extent required as
             regards the legal issues raised. ................................................... 5

             1.    The precedent on which Commerce relies is inapplicable ......... 5

             2.    Magnum did challenge the validity of the *InterDesign* ruling and
                   the applicability of the *MAI* ruling in its Comments submitted  to
                   Commerce. .......................................................................... 7

             3.    The exception for legal arguments refutes Commerce's exhaustion
                   argument. ........................................................................... 8

       D.    The Orders neither express nor imply the exclusion of flexible magnets
             bonded to rigid materials. .......................................................... 9

             1.    The ITC report does not support the Ruling. ......................... 9

             2.    Commerce fails to demonstrate that *InterDesign* and related rulings
                   are relevant or persuasive (k)(1) considerations. .................. 10

             3.    Commerce fails to justify its reliance on the *MAI ruling*. ......... 12

       E.    The record does not establish the subject articles are inflexible. ......... 16

       F.    Commerce cannot justify reliance on a (k)(3) factor in its (k)(1) analysis. .......... 17

III.   CONCLUSION ....................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Agro Dutch Indus. v. United States*, 508 F.3d 1024 (Fed. Cir. 2007)..............................8

*A.I. Patterson, Inc. v. United States*, 585 Fed. Appx. 778 (Fed. Cir. 2014) ....................5

*Aramide Maatschappu v. United States*, 901 F. Supp. 353 (CIT 1995) ........................6, 8

*Boomerang Tube LLC v. United States*, 856 F.3d 908 (Fed. Cir. 2017)..........................5

*Clearon Corp. v. United States*, 800 F. Supp. 2d 1355 (CIT 2011) ...............................6

*Corus Staal B.V. v. United States*, 502 F.3d 1370 (Fed. Cir. 2007)...............................6

*Duferco Steel, Inc. v. United States*, 296 F.3d 1087 (Fed. Cir. 2002) ............................1

*Eckstrom Indus., Inc., v. United States*, 254 F.3d 1068 (Fed. Cir. 2001) .......................5

*Fedmet Resources Corp. v. United States*, 755 F.3d 912 (Fed. Cir. 2014)...................1, 2

*Nucor Corp. v. United States*, 286 F. Supp. 3d 1364 (CIT 2018).....................................6

*OMG, Inc. v. United States*, 972 F.3d 1358 (Fed. Cir. 2020) .........................................2

*Prime Time Commerce LLC v. United States*, 495 F. Supp. 2d 1308 (Fed. Cir. 2022) .........................................................................................................6

*Qingdao Taifa Group Co. v. United States*, 637 F. Supp. 2d 1231 (CIT 2009) ..............7

*Vietnam Finewood Co. Ltd. v. United States*, No. 22-00049, 2023 WL 3019662 (CIT Apr. 20, 2023) ...................................................................................................2

**Administrative Materials**

*Antidumping Duty Order: Raw Flexible Magnets from the People's Republic of China*, 73 Fed. Reg. 53847 (Sept. 17, 2008) .........................................................2, 3, 4, 11

*Issues & Decision Memo. for Final Determination in the Countervailing Duty Investigation of Raw Flexible Magnets from the People's Republic of China* (Jul. 2, 2008) .....................................................................................................................15

*Raw Flexible Magnets from the People's Republic of China; Scope Request from It's Academic—Result of Inquiry—Final Scope Determination in Part* (Mar. 4, 2010)................12

*Raw Flexible Magnets from the People's Republic of China; Scope Request from Lakeshore Learning Materials – Final Scope Determination* (Dec. 15, 2016) ................13, 14

*Raw Flexible Magnets from the People's Republic of China; Scope Request from Medical Action Industries Inc. – Final Scope Determination* (Jan. 10, 2011) .......................12

*Raw Flexible Magnets from the People's Republic of China: Countervailing Duty Order*, 73 Fed. Reg. 53849 (Sept. 17, 2008)................................................2, 3, 4, 11

**WORD COUNT CERTIFICATE OF COMPLIANCE**

This brief has been prepared utilizing Microsoft Word with 12-point Times New Roman font. In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth in the Chambers Procedures.  Specifically, excluding those exempted portions of the brief, as set forth in 2B(1) of the Chambers Procedures, undersigned certifies that this brief contains 5,708 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

Date: June 5, 2023

Respectfully submitted,

*/s/ Jeremy W. Dutra*
Jeremy W. Dutra

*Counsel to Plaintiff*
*Magnum Magnetics Corporation*

## I.     INTRODUCTION

Magnum challenges the Ruling as unlawful and argues that the *Orders* read directly on Siffron's products with reference to the (k)(1) factors.  Magnum specifically relied on: <u>all</u> relevant scope text (including the single word of the text on which Commerce and Siffron rely); the wording of the ITC report's text (in contrast to Commerce' gloss that erases critical elements of that text); and prior Commerce scope determinations, including not only the scope determination made by Commerce contemporaneous with issuance of the *Orders* but also Commerce's *It's Academic II*, *Lakeshore*, *MAI*, *Decorative Retail Magnets*, and *TyTec* rulings, taking account of all relevant text and the products at issue in those rulings.

Throughout its Response, Commerce relies on isolated bits of rulings and a single word of the scope text, ignoring the context of its selections and the characteristics of the specific products to which its rulings related.  This approach denies interested parties necessary certainty and critical knowledge as to how Commerce may interpret its antidumping and countervailing duty orders and the circumstances in which it will apply prior rulings.  Magnum addresses these points, as well as Siffron's arguments, below.

## II.    ARGUMENT

### A.     Commerce cannot disregard the plain language of the *Orders*, which expressly covers the products at issue.

In *Duferco*, the Federal Circuit emphasized the primacy of the text of the Orders, noting that the other (k)(1) factors "may provide valuable guidance as the interpretation of the final order.  But they cannot substitute for language in the order itself."  *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002).  Indeed, "{w}hile Commerce enjoys considerable latitude in clarifying its orders, it may not change the original scope of its orders through the interpretive process."  *Fedmet Resources Corp. v. United States*, 755 F.3d 912, 921 (Fed. Cir.

2014).  Commerce's Ruling, as Magnum argued in its brief, violates this fundamental tenet. Magnum Br. at 7-9.

Attempting to avoid the result mandated by the scope language, Commerce contends that the 2021 modifications of its procedural regulations mean the holding in *OMG, Inc. v. United States*, 972 F.3d 1358, 1363-66 (Fed. Cir. 2020)—*i.e.*, that (k)(1) considerations to be invoked only after a determination that the governing language in the scope order is ambiguous—no longer is controlling precedent.   This is incorrect as a recent decision explicitly relied on the holding in *OMG*.  *Vietnam Finewood Co. Ltd. v. United States*, No. 22-00049, 2023 WL 3019662, at *3 (CIT Apr. 20, 2023).

Regardless, Commerce's Response cites with apparent favor the Federal Circuit's holding in *Fedmet Res. Corp. v. United States*, "explaining that the plain language of the scope is 'paramount.'"  755 F.3d at 918.  Even if a finding that the scope language is ambiguous—which Commerce makes no claim to have made—were not a necessary prequel to consideration of the (k)(1) factors, the Ruling does not treat the scope language as a "paramount" consideration.

In neither the Ruling nor its Response does Commerce state any ground for disregarding the scope's express provisions: (a) subject "flexible magnets" <u>are</u> products composed of a flexible binder and a magnetic element; (b) the *Orders* apply to flexible magnets bonded to <u>any</u> other materials (*e.g.*, flexible or nonflexible); and (c) "all products meeting the physical description of subject merchandise that are not specifically excluded are within the scope of this order."  *Antidumping Duty Order: Raw Flexible Magnets from the People's Republic of China*, 73 Fed. Reg. 53847 (Sept. 17, 2008); *Raw Flexible Magnets from the People's Republic of China: Countervailing Duty Order*, 73 Fed. Reg. 53849 (Sept. 17, 2008).

Nowhere does the Ruling find that Siffron's L- and T-shaped dividers are not composed of plastic; that they are not bonded to flexible magnets; or that the resulting products are "specifically excluded" from the scope of the Orders.  To the contrary, the undisputed record confirms that Siffron's magnetic shelf dividers consist of flexible magnetic strip to which is bonded L- or T-shaped pieces of plastic of various lengths.  (P.R. 18; C.R. 11, Ruling at 10.) The scope provisions expressly state the *Orders* cover flexible magnets (defined as bonded magnets composed of a flexible binder and a magnet element) "bonded with paper, plastic, or other material, of any composition or color," which precisely describes the products at issue.  73 Fed. Reg. 53847; 73 Fed. Reg. 53849.  And even Commerce conceded that the unambiguous text of the *Orders'* scope provision squarely applies to Siffron's Chinese-origin products: "based on the plain language of the scope, Siffron's {magnetic shelf divider} product appears to fall within the scope of the *Orders*."  (P.R. 18; C.R. 11, Ruling at 10.)

The *Orders* unequivocally state that "All products meeting the physical description of the subject merchandise that are the <u>specifically excluded</u> are within the scope of these *Orders*."  73 Fed. Reg. 53847; 73 Fed. Reg. 53849.  Commerce makes no effort to square its determination that the magnetic shelf dividers are "excluded from the scope or the Orders" because they are allegedly inflexible and exhibit new functionality with the *Orders'* express prohibition on non-textual exclusions.  And yet the Ruling seemingly renders that provision void.  Commerce failed to accord the scope language "paramount" importance.  To the contrary, Commerce concedes that it "primarily" relied on "Commerce's previous scope rulings and language from the underlying International Trade Commission (ITC) investigation."  Commerce Resp. at 5.  This was improper.

**B.**     **Commerce does not have authority to fabricate extra-textual exclusions to the scope of the *Orders*.**

Commerce now claims the Ruling did not involve the application of "exclusions." Commerce Resp. at 7-8.  To the contrary, the Ruling expressly asserts that Commerce's "previous scope rulings and language from the underlying ITC investigation provide further guidance in determining whether the plastic shelf dividers are *excluded* from the scope of the *Orders*."  (P.R. 18; C.R. 11, Ruling at 11.)  The Ruling's reliance on such extra-textual exclusions violates the express terms of the *Orders*.[1]  Commerce cites no authority permitting it to contravene an express prohibition of this kind.  Nor does Siffron.

This is no mere labeling dispute.  Two grounds on which Commerce's Ruling relies—the alleged inflexibility of the product and its new functionality—operate precisely as the Ruling characterizes them, as exclusions to the scope of the *Orders*.  Commerce recognizes this in describing its decision process: first finding the Siffron product is within the plain language of the scope; then "determining whether the plastic shelf dividers are excluded."  Commerce's decisional process, which (as the Ruling reflects) relies on the application of non-textual exclusions, defies the scope requirement that "All products meeting the physical description of the subject merchandise {a fact conceded by the Ruling} that are not <u>specifically excluded</u> are within the scope of the order."  73 Fed. Reg. 53847 (emphasis added); 73 Fed. Reg. 53849 (emphasis added).

Commerce cites no provision under which Siffron's magnetic shelf dividers are "specifically excluded" from the scope of the *Orders*.  It simply asserts that Magnum's insistence that this provision in the *Orders* be recognized "is based on an outdated view of the regulations

---

[1] Siffron claims Magnum's argument on this point is "not based on substantial evidence." Siffron Resp. at 14.  It is difficult to make sense of that claim.  As Magnum argued, the evidence on which Magnum relies is the text of the Order itself, which uses that very term.

and therefore misplaced." Commerce Resp. at 10. Commerce is unable to offer any example of judicial endorsement of such a sweeping claim, which manifestly overstates Commerce's authority. As the Federal Circuit admonished, "Commerce cannot 'interpret' an antidumping order so as to change the scope of th[e] order, nor can Commerce interpret an order in a manner contrary to its terms." *Eckstrom Indus. v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001).

Siffron's Response fails to meaningfully address the scope's prohibition on unspecified exclusions. Siffron instead claims that the Federal Circuit in *A.I. Patterson, Inc. v. United States*, 585 Fed. Appx. 778, 783 (Fed. Cir. 2014) states that merchandise facially covered by the literal language of the order may still be outside the scope if "the order can reasonably be interpreted so as to exclude it." Siffron Resp. at 10. *Patterson*, however, did not involve a scope provision expressly prohibiting non-textual exclusions. It is inapplicable here.

### C. Magnum exhausted its administrative remedies to the extent required as regards the legal issues raised.

Commerce seeks to preclude the Court from considering Commerce's flawed reliance on *InterDesign* and *MAI*, claiming Magnum failed to exhaust its administrative remedies with respect to those issues. Commerce Resp. at 14-17. Commerce is incorrect.[2]

#### 1. The precedent on which Commerce relies is inapplicable.

Commerce relies primarily on *Boomerang Tube LLC v. United States*, 856 F.3d 908 (Fed. Cir. 2017). *See* Commerce Resp. at 14. The procedural differences in that decision renders it inapposite. *Boomerang* involved an annual review in which Commerce issued a preliminary determination holding, *inter alia*, that the Saudi Arabian steel producer Duferco and its affiliates should be treated as a single entity but considering an affiliated Columbian distributor a separate entity. *Boomerang*, 856 F.3d at 910. In its responding case brief, Boomerang did not argue the

---

[2] Siffron advances no argument on administrative exhaustion.

Columbian distributor was a member of the Duferco entity—it made that claim for the first time on appeal. *Id.* at 911. Against that background, the Federal Circuit held that the party passed up its opportunity to challenge that point by not raising it in its case brief responding to the preliminary determination. *Id.* at 193.

Other decisions Commerce cites similarly involve proceedings in which Commerce issued preliminary determinations and a party failed to raise an issue in its case or rebuttal briefs on which it subsequently relies on appeal. *Corus Staal B.V. v. United States*, 502 F.3d 1370, 1378 (Fed. Cir. 2007) (party failed to raise an issue in a case brief responding to Commerce's preliminary results in administrative review); *Prime Time Commerce LLC v. United States*, 495 F. Supp. 2d 1308, 1313-14 (Fed. Cir. 2022) (party failed to provide comments in response to the preliminary results of redetermination); *Nucor Corp. v. United States*, 286 F. Supp. 3d 1364, 1367, 1377 (CIT 2018) (failure to raise argument in case brief party could have raised in response to Commerce's preliminary determination); *Clearon Corp. v. United States*, 800 F. Supp. 2d 1355, 1361-62 (CIT 2011) (failure to raise issue in case brief responding to Commerce's preliminary determination); *Aramide Maatschappu v. United States*, 901 F. Supp. 353, 357 (CIT 1995) (failure to challenge in case brief certain sales excluded in preliminary determination).

Unlike in the cases Commerce cites, here, Commerce did not make a preliminary determination, and it did not give Magnum notice and an opportunity to comment on the bases on which the Ruling rests. The administrative exhaustion doctrine does not apply to bar judicial review of an issue "if Commerce did not address the issue until its final decision, because in such a circumstance the party would not have had a full and fair opportunity to raise the issue at the

administrative level." *Qingdao Taifa Group Co. v. United States*, 637 F. Supp. 2d 1231, 1236 (CIT 2009).

> **2.    Magnum did challenge the validity of the *InterDesign* ruling and the applicability of the *MAI* ruling in its Comments submitted  to Commerce.**

In its Comments before Commerce, Magnum challenged the holdings in "InterDesign and related rulings Siffron cites" as unauthorized by the scope and "improper."  (P.R. 15; C.R. 5, Magnum's Post-Initiation Comments at 9-10.)  As the Ruling notes in its procedural section, Magnum argued that Commerce's determinations in the "InterDesign Scope Ruling, Smith-Western Scope Ruling, and Quick Picz Scope Ruling that the term 'flexible magnets' suggests that raw flexible magnets that have been attached to other materials and rendered inflexible by such attachments is (sic) improper."  (P.R. 18; C.R. 11, Ruling at 7.)  Commerce cannot plausibly claim that Magnum did not challenge the validity of those rulings or that Commerce was denied an opportunity to reexamine the bases on which they purport to stand prior to issuing the Ruling.

With respect to *MAI*, administrative exhaustion cannot apply because the Ruling is the first occasion on which Commerce applied the *MAI* ruling to products in which flexible magnet is <u>bonded</u> to another article.  *Qingdao Taifa*, 637 F. Supp. 2d at 1236.  Regardless, with respect to such bonded products, the Ruling notes that in response to Siffron's arguments, Magnum stated that "Siffron ignores the scope language in its argument that the adhesion of a plastic component (*i.e.*, an L- or T-shaped plastic sheet) to a raw flexible magnet renders the product outside the scope of the Orders, because a flexible magnet to which a plastic material has been <u>bonded</u> is expressly covered by the scope language."  (P.R. 18; C.R. 11, Ruling at 7 (emphasis added).)

Magnum could not have been clearer about the significance of the bonding of a particular material to a flexible magnet.  Magnum's Comments expressly stated that, in the case of

materials bonded to flexible magnets, alleged additional functionality was irrelevant to application of the *Orders*.  Contrary to Commerce's claims, therefore, that issue was raised in the proceedings below.

### 3.    The exception for legal arguments refutes Commerce's exhaustion argument.

Magnum's arguments challenging Commerce's reliance on *InterDesign* (and its progeny) and *MAI* as relevant (k)(1) factors in the Ruling are squarely within the "pure question of law" exception to the exclusion doctrine.  *See Agro Dutch Indus. v. United States*, 508 F.3d 1024, 1029 (Fed. Cir. 2007).  Magnum's demonstration that *InterDesign* and its progeny are unpersuasive as based a flawed reading of the scope and a misreading the *It's Academic II* ruling is a legal argument.  Similarly, Magnum's showing that the Ruling misapplies *MAI* is a legal argument.  Consistent with these being legal arguments, Commerce makes no claim in its Response that additional development of the factual record is necessary to consider their merits.

That contrasts sharply with the facts in the *Aramide* decision on which Commerce relies in discussing the legal issue exception.  In that case, the CIT held the "purely legal" exception did not apply where "Commerce likely would consider, on remand, other evidence in the record and perform recalculations."  *Aramide*, 901 F. Supp. at 357-58.

Even if the prior rulings were "highly fact-intensive," the facts recited by those rulings, together with their rationale, are what Magnum relies on to distinguish them as authority for the Ruling.  Magnum's arguments relate to the prior rulings' text.  They do not seek to interpose, or ask the court to consider, new facts or facts not apparent in the text of those prior rulings.

The record is undisputed that the T- and L-shaped plastic elements in Siffron's products are bonded to the flexible magnet.  *MAI* and its related rulings, in contrast, expressly relate to products <u>not bonded</u> to flexible magnet.  *InterDesign* purports to rely on *It's Academic II*, but,

contrary to the assertion in the later ruling, nowhere is it stated in *It's Academic II* that the products at issue were rigid and the ruling does not turn on the flexibility or inflexibility of the products there at issue.  Magnum Br. at 11-13.

Commerce's prior rulings and the reasoning on which they are based stand for themselves.  Consideration of them requires no further development of the record—and Commerce does not suggest otherwise.  Magnum's arguments that the Ruling below errors in applying those prior rulings in the current context raise purely legal issues.

**D.    The Orders neither express nor imply the exclusion of flexible magnets bonded to rigid materials.**

**1.    The ITC report does not support the Ruling.**

The Ruling's asserted scope exception for flexible magnets to which an inflexible object is bonded relies heavily on a misreading of the following sentence in the ITC staff report:

> In general, flexible magnets are permanent magnets that can be twisted, bent, slit, punched, coiled, or otherwise molded into any shape without losing its (sic) magnetic properties.

(P.R. 18; C.R. 11, Ruling at 11.)  In applying this sentence to Siffron's products, the Ruling changes (a) a statement couched as a generality into a rigid requirement and (b) loss of magnetic properties into loss of any kind of function.  In its brief, Magnum noted that in *TyTec*, a (k)(1) consideration Commerce did not cite, Commerce recognized the difference between a statement of generality and an all-inclusive statement:

> While the ITC's description of a domestic like product states that '{s}heet is the widest form of raw flexible magnet, typically available from U.S. suppliers in widths up to approximately 24 inches,' we find the inclusion of the term 'typically' in the sentence suggests that the width of meter-wide magnet sheet is not a basis for exclusion from the Magnet orders.

Magnum Br. at 10 n.1.

Commerce's Response offers no defense of its conversion of an acknowledgement of a common characteristic of flexible magnets into a rigid defining criterion in this or the previous rulings on which it relies.  Siffron highlights the disregard with which it and Commerce treat this quotation from the ITC's staff report by omitting "in general" and highlighting everything but "without loss of magnetic properties" in its Response.  Siffron Resp. at 18.

Commerce further claims it can rely on the ITC staff report's reference to loss of magnetic properties to comprehend all kinds of loss of functionality: "In the same way, <u>and based on the ITC's rationale {regarding loss of magnetic properties}</u>, Commerce determined that a magnet that loses its flexibility (*i.e.*, bending would damage the plastic blade) also is not a flexible magnet."  Commerce Resp. at 12.  The ITC staff report statement does not lend itself to such expansion.  It addresses a specific characteristic of a magnet—that it is magnetic.  The ITC staff report does not speak of functionality in general.  Commerce's conversion of the report's statement to a substantially different, materially broader rule makes clear the Ruling does not rest on the report at all.

### 2. Commerce fails to demonstrate that *InterDesign* and related rulings are relevant or persuasive (k)(1) considerations.

Like the current Ruling, *InterDesign* and related rulings rely heavily on the ITC staff report language discussed above, and thus are similarly founded on flawed rationale.  Those prior rulings further rely on a reading of the scope provisions that does not withstand examination.  Commerce's Response asserts that the Orders "require that the subject merchandise be *flexible*," because "{t}he products covered by this order are certain flexible magnets . . . ."  Commerce Resp. at 18.  Commerce ignores the scope sentence that immediately follows, defining a "flexible magnet":

> Subject flexible magnets are bonded magnets composed (not necessarily exclusively) of (i) any one or combination of various flexible binders

(such as polymers or co-polymers, or rubber) and (ii) a magnetic element, which may consist of . . . or any other material capable of being permanently magnetized.

73 Fed. Reg. 53847; 73 Fed. Reg. 53849.

Thus, as used in the scope provision, "flexible magnets" is a term of art. "Flexible magnets" are bonded magnets composed of a flexible binder and a material capable of being permanently magnetized. The flexible binder constituent in its composition makes a magnet a "flexible magnet." Whether a material to which the "flexible magnet" is bonded is flexible or not is irrelevant. Siffron argues that this "reads the term 'flexible' out of the scope of the Orders . . . ." Siffron Resp. at 12. It does not. It recognizes the *Orders'* express terms. It is Siffron—and Commerce—who read provisions out of the scope, *i.e.*, both the definition of "flexible magnet" and the prohibition on non-textual exclusions.

Commerce persists in ignoring the definition in the *Orders*. In neither Commerce's Response nor any of the rulings on which it claims to rely does Commerce offer any basis for ignoring this clear defining statement. Commerce's "interpretation" cannot be found to be reasonable, as Commerce's Response urges.[3] The flexibility requirement imposed by Commerce below and in its cited rulings is wholly fictitious and atextual.

Moreover, as explained in Magnum's Brief, the *InterDesign* and related rulings on which the Ruling below relies are based on a key misreading of the facts in Commerce's *It's Academic II* ruling, which *InterDesign* invokes as (k)(1) authority. Magnum Br. at 11-13. Contrary to Commerce's subsequent distortions, in *It's Academic II*, Commerce found articles composed of a

---

[3] This also applies to Siffron's reliance on *Interdesign,* opining that "the first sentence of the scope of the orders indicates that it pertains to flexible magnets" and that "this suggests that magnets that have been rendered inflexible by attached materials should be outside the scope of the orders." Siffron Resp. at 15. As previously discussed, this line or argument ignores the definition of "flexible magnet" provided by the scope.

flexible magnet bonded to <u>inflexible</u> plastic articles to be within the scope of the *Orders*. *Raw Flexible Magnets from the People's Republic of China: Scope Request from It's Academic— Result of Inquiry—Final Scope Determination in Part* (Mar. 4, 2010) at 4-5, 7. In its Response, Commerce does not claim otherwise. Commerce instead seeks to dodge this issue, as so many others, by simply ignoring it. It asserts that "Magnum's argument simply boils down to disagreement with the *InterDesign* ruling." Commerce Resp. at 17. To the contrary, Magnum's point is that *InterDesign* does not hold what Commerce claims in subsequent rulings, which consequently are entitled to little (k)(1) weight, particularly as they are opposed by the plain language of the scope.

Having incorrectly stated in *InterDesign* that *It's Academic II* held something it did not, and having compounded that error by repeating the same false statement in subsequent rulings, Commerce nevertheless appears to suggest that it is entitled to rely on those flawed rulings and the misstatements they incorporate. Commerce Resp. at 17-18. That is incorrect. Having invoked the rulings as (k)(1) precedent in the Ruling at issue, Commerce cannot reasonably claim the Court is unable to consider the sand on which they are based.

### 3.    Commerce fails to justify its reliance on the *MAI ruling*.

The *MAI* ruling related to a surgical drape in which flexible magnets were incorporated but not bonded. As Magnum observed in its brief, Commerce emphasized the absence of bonding in its ruling:

> [W]e find that the magnets are not "bonded with" the encasing materials, and we have determined that the Surgical Instrument Drape does not consist of flexible magnets bonded or laminated to other materials.

Magnum Br. at 15 (citing *Raw Flexible Magnets from the People's Republic of China: Scope Request from Medical Action Industries, Inc.—Final Scope Determination* (Jan. 10, 2011) at

9).  In its subsequent *Lakeshore* ruling Commerce confirmed that the absence of bonding was

determinative:

> [A]s established in MAI, the scope of the Orders precludes advanced
> products that incorporate raw flexible magnets <u>when the other materials</u>
> <u>that make up the product are not bonded or laminated to the magnet.</u>

*Raw Flexible Magnets from the People's Repubic of China: Scope Request from Lakeshore*

*Learning Materials—Final Scope Determination* (Dec. 15, 2016) at 8 (emphasis added).

Commerce's response to Magnum's criticism is to rewrite *MAI*, claiming that "the lack of

bonding was one reason the surgical drapes in *MAI* were deemed outside the scope of the

Orders," but "Commerce separately determined that the surgical drapes were not covered

because they also combined a raw flexible magnet with a sheet of foam and a sheet of plastic

film, which created a product that is substantially different from a raw flexible magnet."

Commerce Resp. at 19.  That is not what *MAI* and its progeny hold.

To underscore the absurdity of Commerce's claim, it seems appropriate to quote from the

*MAI* ruling, which proceeds in three steps.  First, it holds that the magnets and the drapes are not

"bonded."

> {W}e find that the magnets are not "bonded with" the encased materials,
> and we have determined that the Surgical Instrument Drape does not
> consist of flexible magnets bonded or laminated to other materials.

*MAI* at 9.

Second, it holds that the scope of the orders does not include products that contain

flexible magnets not bonded with or laminated to other constituent material.

> The second issue is whether the scope of the orders includes products that
> contain otherwise raw flexible magnets when those magnets are encased in
> but not bonded or laminated to the other materials making up the
> product.  The scope indicates only two circumstances in which flexible
> magnets joined with other material are within the scope of the orders,
> namely bonding and lamination. . . . .  An alternative reading that includes

13

> all products in which other material is permanently affixed to, or joined to, or held in a static relationship with a flexible magnet would be so expansive as to render the works "bonded" and "laminated" moot.

*Id.* Finally, it determines that:

> The final issue is whether the scope of the orders includes advanced products that incorporate raw flexible magnets.

*Id.* The *MAI* ruling holds they do not. *Id.*[4]

In context, therefore, "incorporate" in the final *MAI* quotation above—on which Commerce relies—means an attachment <u>other than bonding or lamination</u>. The mere fact a combination product is "advanced" from a flexible magnet alone was never claimed by Commerce to be an independent ground for excluding products consisting of a material bonded to a flexible magnet—until the Ruling below.

Siffron in turn claims that the Ruling is based on "similarities in physical characteristics of the products of the previous scope rulings and products of the previous scope ruling products (sic) to Siffron's plastic shelf dividers."  Siffron Resp. at 17.  But the Ruling ignored a critical difference from the facts in *MAI* and thereby erred.

Commerce asserts that Magnum did not criticize *MAI* for improperly creating a "substantial difference" test.  Commerce Resp. at 16.  Magnum advanced no such criticism in its Brief because it was unnecessary.  Neither *MAI* nor related rulings are relevant (k)(1) authority in instances, such as the current one, where a flexible magnet is <u>bonded</u> to another material.  They therefore are not authority for the instant Ruling and did not need to be challenged.

Commerce has never—until now—held that the mere creation of a "new product" by the <u>bonding</u> of a flexible magnet to some other material is ground for excluding the product from the

---

[4] While Magnum may not agree with this proposition as a general matter, that is not relevant to the specific issues raised by the Ruling.

*Orders*. To the contrary, in the first scope ruling Commerce issued, it held that just such a new product—magnetic photo pockets—was within the scope of the investigations and the *Orders*. *Issues and Decision Memo. for Final Determination in the Countervailing Duty Investigation of Raw Flexible Magnets from the People's Republic of China* (Jul. 2, 2008) at 2-3.

Commerce's new test, if applied to products <u>bonded to</u> flexible magnets would effectively reverse that holding.[5]  Commerce seeks to deal with this conflict by suggesting the plastic photo pocket holding is an aberration compelled by language in the ITC's report. Commerce Resp. at 20.[6]  That argument gets things exactly backward.[7]  During the investigation, Commerce squarely faced a product with "new functionality" in the photo pocket example, and held it was covered by the scope of the *Orders*.  The ITC staff report effectively recognized that holding.

That such products were intended to be included in the scope is demonstrated by the fact the scope contains a specific exclusion for one such product—flexible magnets to which certain printed material has been bonded.  That exclusion would have been unnecessary if the *Orders* were not intended to and did not apply to other combination products in which flexible magnet is a bonded element.  Neither Commerce nor Siffron address this contradiction.

---

[5] Commerce inexplicitly claims that "Magnum criticizes Commerce for previously rejecting an argument based on an end-use application, the product there was a "photo pocket."  Commerce Resp. at 20 (citing Magnum Br. at 16).  To the contrary, in the cited passage, Magnum clearly approves the photo pocket ruling and argues it should have been applied as authority in the current Ruling.

[6] The plastic photo pocket holding is "an example expressly covered by the ITC Injury Report's general description.  (P.R. 18; C.R. 11, Ruling at 12 ("the ITC explained during its investigation that, in general, raw flexible magnetic sheet and strip are typically used to produce . . . magnetic photo pockets . . . .").)

[7] What Commerce inaccurately calls the ITC Injury Report—in fact, a staff-generated report adopted by the Commission at the time of its vote and attached to the Commission's injury determination when published—was adopted <u>after</u> Commerce held the magnetic photo pockets were within the scope of the *Orders*.  Commerce was not following the ITC's lead.

**E.    The record does not establish the subject articles are inflexible.**

Commerce asserts that "Magnum does not dispute Commerce's conclusion that the raw flexible magnets are functionally inflexible or that the plastic shelf divider would be ineffective for its intended use of the plastic blade (with affixed magnet) were twisted, bent, or manipulated."  Commerce Resp. at 12.  That is incorrect.  Magnum expressly stated in its Brief that "the 'flexibility' requirements on which Commerce's Ruling rests are arbitrarily constructed and arbitrarily applied . . . ."  Magnum Br. at 13 (emphasis added).

In the proceedings below, Magnum introduced evidence to show that Siffron's magnetic dividers could be flexed and indeed bent back on themselves.  (P.R. 15; C.R. 5, Magnum's Post-Initiation Comments at 5-8.  In a rebuttal filing, to which applicable procedural regulations did not permit Magnum to respond, Siffron, for the first time, introduced evidence claiming to show that bending the magnetic dividers substantially damaged the dividers (but did not show it resulted in the magnet losing its magnetic properties).

Contrary to Commerce's claim, *see* Commerce Resp. at 12, Magnum disputes Commerce's conclusion that the magnetic shelf dividers are "functionally inflexible," itself another undefined term.  Magnum Br. at 10-11.  Neither Magnum's nor Siffron's demonstration was conducted against the background of a prescribed "inflexibility" standard.  While Magnum does not agree that the *Orders* contemplate a "flexibility" requirement, if one is to be imposed, it seems reasonable it should be whether the products concerned are flexible to any degree, however modest.  There is no evidence on that point on the record, contrary to Siffron's claims,[8] specifically none in Siffron's videos.

---

[8] Siffron contends that "{t}he record demonstrates through the photographs and videos placed on the record by Siffron {to which Magnum was not permitted by the regulations to respond}, there is no flexibility in Siffron's plastic shelf dividers."  Siffron Resp. at 10.  The videos fail to show there is no flexibility whatsoever.  They show no more than the effects of the degree of flexing

**F.     Commerce cannot justify reliance on a (k)(3) factor in its (k)(1) analysis.**

Magnum asserted in its Comments before Commerce that the text of the scope expressly covers the products at issue.  It added, however, that if Commerce determined that a (k)(1) analysis does not fully resolve the issues posed by Siffron's application, a (k)(3) analysis should be undertaken.  (P.R. 15; C.R. 5, Magnum's Post-Initiation Comments at 11-12.)  Subject to this express precondition, Magnum addressed the three (k)(3)(iii) factors—the practicability of separating the in-scope component for repackaging or resale; the measurable value of the in-scope component as compared to the measurable value of the merchandise as a whole; and the ultimate use or function of the in-scope component relative to the ultimate use or function of the merchandise as a whole—arguing that "{c}onsideration of the (k)(3) factors confirms that the Siffron products are covered by the Orders."  (*Id.* at 12-16.)

Although Commerce maintained it was conducting a (k)(1) analysis, it chose to advance a critique of Magnum's analysis of the first (k)(3) factor as an element of its rationale.  Magnum's brief merely observed that Commerce's views on that point have no part in a finding purporting to be made under (k)(1).  Magnum Br. at 17-18.  Commerce's Response is unavailing:

> Magnum's self-serving statement that this response to its own argument qualifies as reliance on a (k)(3) factor should be rejected, particularly when Commerce expressly stated that it was limiting its analysis to the (k)(1) sources and not considering the (k)(3) factors.

Commerce Resp. at 21.  By Commerce's logic, any factor Commerce considers when purporting to perform a (k)(1) analysis becomes a (k)(1) factor.  That argument—which even Siffron seems unwilling to advance—makes nonsense of the structure of the governing regulation and refutes itself.  Surely, if it were appropriate to consider (k)(3) elements in Commerce's analysis, they all should be considered.  Commerce has neither done so nor explained the basis for its

_____

(clearly more than minimal) to which Siffron subjected the magnetic shelf dividers it selected.

consideration of this single (k)(3) factor in a (k)(1) analysis.  There is none.  Analysis of a (k)(3) element has no place in a (k)(1) analysis and neither Commerce nor Siffron can show otherwise.

Siffron argues that, if Commerce were to consider (k)(3) issues it would  necessarily find the subject merchandise within the scope of the *Orders*.  Siffron Resp. at 20.  Magnum does not consider a (k)(3) analysis to be before the Court, because the Ruling purports to have been decided on another basis, *i.e.*, (k)(1).  Were Commerce to decide Siffron's application by reference to (k)(3) factors, however, Magnum would argue—as it did in its Comments—that the factors not considered by Commerce—*i.e.,* "the measurable value of the in-scope component as compared to the measurable value of the merchandise as a whole" ((k)(3)(iii)(B)) and "the ultimate use or function of the in-scope component relative to the ultimate use or function of the merchandise as a whole" ((k)(3)(iii)(C)) both heavily favor a finding that the magnetic scope dividers are within the scope of the *Orders*.

## III.    CONCLUSION

The *Orders* expressly cover flexible magnets "fully or partially bonded with paper, plastic, or other material, of any composition and/or color."  There is no dispute that the Siffron shelf dividers consist of a flexible magnet covered by the *Orders* that is bonded to a piece of plastic.  Even Commerce concedes that the Siffron product is within the scope of the *Orders* as set out by their text.  For the reasons outlined in this reply and in Magnum's memorandum in support of its motion for judgment, the Court should find Commerce's Ruling unlawful.

Date: June 5, 2023

Respectfully submitted,

*/s/ Jeremy W. Dutra*
Jeremy W. Dutra
jeremy.dutra@squirepb.com
Ritchie T. Thomas
ritchie.thomas@squirepb.com

Christopher D. Clark
christopher.clark@squirepb.com

SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000

*Counsel to Plaintiff*
*Magnum Magnetics Corporation*