Slip Op. 23-140

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MAGNUM MAGNETICS CORPORATION, | |
| Plaintiff, | |
| v. | |
| UNITED STATES, | Before: Jennifer Choe-Groves, Judge |
| Defendant, | Court No. 22-00254 |
| and | |
| FASTENERS FOR RETAIL, INC. d/b/a SIFFRON, | |
| Defendant-Intervenor. | |

## OPINION AND ORDER

[Sustaining the U.S. Department of Commerce's final scope ruling that certain plastic shelf dividers are excluded from the antidumping and countervailing duty orders on raw flexible magnets from the People's Republic of China.]

Dated: September 26, 2023

Jeremy W. Dutra, Richie T. Thomas, and Christopher D. Clark, of Squire Patton Boggs (USA), LLP, Washington, D.C., for Plaintiff Magnum Magnetics Corporation.

Claudia Burke, Deputy Director, and Daniel F. Roland, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C. for Defendant United States. With them on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, and Patricia M.

McCarthy, Director.  Of counsel on the brief was K. Garrett Kays, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

Kristen Smith and Sarah E. Yuskaitis, of Sandler, Travis & Rosenberg, P.A., Washington, D.C., for Defendant-Intervenor Fasteners for Retail Inc. d/b/a Siffron.

      Choe-Groves, Judge:  Plaintiff Magnum Magnetics Corporation ("Plaintiff" or "Magnum Magnetics") challenges the U.S. Department of Commerce's ("Commerce") final scope ruling that the plastic shelf dividers of Defendant-Intervenor Fasteners for Retail, Inc. d/b/a Siffron ("Defendant-Intervenor" or "Siffron") are excluded from the antidumping and countervailing duty orders on raw flexible magnets from the People's Republic of China ("China"). Antidumping Duty and Countervailing Duty Orders on Raw Flexible Magnets from the People's Republic of China: Final Ruling on Siffron Plastic Shelf Dividers (A-570-922; C-570-923) (Aug. 9, 2022) ("Final Scope Ruling"), PR 18, CR 11[1]; see Raw Flexible Magnets from the People's Republic of China, 73 Fed. Reg. 53,847 (Sept. 17, 2008) (antidumping duty order); Raw Flexible Magnets from the People's Republic of China, 73 Fed. Reg. 53,849 (Sept. 17, 2008) (countervailing duty order) (collectively, "Orders").

      Before the Court is Plaintiff's Rule 56.2 Motion for Judgment Upon the

---

[1] Citations to the administrative record reflect the public record ("PR") and confidential record ("CR") document numbers filed in this case.  ECF Nos. 28, 29.

Agency Record ("Plaintiff's Motion").  Pl.'s R. 56.2 Mot. J. Agency R. ("Pl.'s

Mot."), ECF No. 23; Pl.'s Mem. Points Authorities Supp. Pl.'s Mot. J. Agency R.

("Pl.'s Br."), ECF No. 23.  Defendant United States ("the Government" or

"Defendant") and Defendant-Intervenor oppose Plaintiff's Motion.  Resp. Br. Def.-

Interv. ("Def.-Interv.'s Resp."), ECF Nos. 24, 25; Def.'s Resp. Pl.'s Mot. J.

Agency R. ("Def.'s Resp."), ECF No. 26.  Plaintiff filed its reply.  Pl.'s Reply Br.

Further Supp. Rule 56.2 Mot. J. Agency R. ("Pl.'s Reply"), ECF No. 27.

        For the reasons discussed below, the Court sustains Commerce's Final

Scope Ruling as supported by substantial evidence and in accordance with law.

## BACKGROUND

        On September 17, 2008, Commerce issued antidumping and countervailing

duty orders for raw flexible magnets from the People's Republic of China.  See

Raw Flexible Magnets from the People's Republic of China, 73 Fed. Reg. at

53,847; Raw Flexible Magnets from the People's Republic of China, 73 Fed. Reg.

at 53,849.

        On March 11, 2022, Siffron filed a scope ruling request to determine

whether certain plastic shelf dividers, which consist of a raw flexible magnet that is

bonded with an adhesive to the base of a plastic sheet that is generally T- or L-

shaped, are covered by the scope of the Orders.  Letter from Sandler, Travis, &

Rosenberg, P.A. to Commerce, re: Raw Flexible Magnets from the People's

Republic of China and Taiwan: Scope Ruling Request for Fasteners for Retail, Inc.

[d/b/a] Siffron (Mar. 11, 2022) ("Siffron's Scope Ruling Request"), PR 1, CR 1–2.

On April 5, 2022, Magnum Magnetics filed comments on Siffron's Scope

Ruling Request and Commerce issued a supplemental questionnaire to Siffron.

Letter from Squire Patton Boggs (US) LLP to Commerce, re: Raw Flexible

Magnets from the People's Republic from China and Taiwan: Comments by

Magnum Magnetics Corporation on Scope Ruling Application from Fasteners for

Retail, Inc. [d/b/a] Siffron (Apr. 5, 2022), PR 11; Letter from Commerce, re: Raw

Flexible Magnets from the People's Republic of China: Scope Ruling Request

Fasteners for Retail, Inc. [d/b/a] Siffron (Apr. 5, 2022), PR 10; see also Letter from

Sandler, Travis & Rosenberg, P.A. to Commerce, re: Raw Flexible Magnets from

the People's Republic of China: Siffron's Response to Scope Inquiry Supplemental

Questionnaire (Apr. 7, 2022), PR 13, CR 4.

On April 11, 2022, Commerce initiated the scope inquiry.  Mem. re:

Initiation of Fasteners for Retail, Inc. [d/b/a] Siffron (Siffron) Scope Inquiry (Apr.

11. 2022), PR 14.  The Parties filed their respective comments.  Letter from Squire

Patton Boggs (US) LLP to Commerce, re: Raw Flexible Magnets from the

People's Republic of China: Comments and Factual Information Submitted by

Magnum Magnetics Corporation to Rebut Assertions Contained in the Scope

Ruling Application from Fasteners for Retail, Inc. [d/b/a] Siffron (May 11, 2022)

("Magnum Magnetics' Rebuttal Comments"), PR 16, CR 5; Letter from Sandler,

Travis & Rosenberg, P.A. to Commerce, re: Raw Flexible Magnets from the

People's Republic of China: Siffron's Comments and Factual Information to Rebut

Comments and Factual Information Filed By Magnum Magnetics Corporation

(May 25, 2022) ("Siffron's Rebuttal Comments"), PR 17, CR 6–10.  Commerce

issued the Final Scope Ruling on August 9, 2022, determining that Siffron's plastic

shelf dividers bonded to raw flexible magnets are excluded from the scope of the

Orders.  See Final Scope Ruling.  Plaintiff filed this timely action.  See Am.

Summons, ECF No. 8; Compl., ECF No. 9.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to Section 516A(a)(2)(B)(vi) of the

Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(vi), and 28 U.S.C.

§ 1581(c).  The Court will hold unlawful any determination found to be

unsupported by substantial evidence on the record or otherwise not in accordance

with law.  19 U.S.C. § 1516a(b)(1)(B)(i).

"[W]hether the unambiguous terms of a scope control the inquiry, or

whether some ambiguity exists, is a question of law that [the Court reviews] de

novo."  Meridian Prods., LLC v. United States ("Meridian Products"), 851 F.3d

1375, 1382 (Fed. Cir. 2017).  "[W]hether a product meets the unambiguous scope

terms presents a question of fact reviewed for substantial evidence."  Id.

# DISCUSSION

## I.        Commerce's Scope Determination

The scope language of the <u>Orders</u> states in relevant part:

The products covered by this order are certain flexible magnets regardless of shape, color, or packaging.   Subject flexible magnets are bonded magnets composed (not necessarily exclusively) of (i) any one or combination of various flexible binders (such as polymers or co-polymers, or rubber) and (ii) a magnetic element, which may consist of a ferrite permanent magnet material (commonly, strontium or barium ferrite, or a combination of the two), a metal alloy (such as NdFeB or Alnico), any combination of the foregoing with each other or any other material, or any other material capable of being permanently magnetized.

Subject flexible magnets may be in either magnetized or unmagnetized (including demagnetized) condition, and may or may not be fully or partially laminated or fully or partially bonded with paper, plastic, or other material, of any composition and/or color.   Subject flexible magnets may be uncoated or may be coated with an adhesive or any other coating or combination of coatings.

Specifically excluded from the scope of this order are printed flexible magnets, defined as flexible magnets (including individual magnets) that are laminated or bonded with paper, plastic, or other material if such paper, plastic, or other material bears printed text and/or images, including but not limited to business cards, calendars, poetry, sports event schedules, business promotions, decorative motifs, and the like. This exclusion does not apply to such printed flexible magnets if the printing concerned consists of only the following: a trade mark or trade name; country of origin; border, stripes, or lines; any printing that is removed in the course of cutting and/or printing magnets for retail sale or other disposition from the flexible magnet; manufacturing or use instructions (*e.g.*, "print this side up," "this side up," "laminate here"); printing on adhesive backing (that is, material to be removed in order to expose adhesive for use such as application of laminate) or on any other covering that is removed from the flexible magnet prior or

subsequent to final printing and before use; non-permanent printing (that is, printing in a medium that facilitates easy removal, permitting the flexible magnet to be re-printed); printing on the back (magnetic) side; or any combination of the above.

All products meeting the physical description of subject merchandise that are not specifically excluded are within the scope of this order.

See Raw Flexible Magnets from the People's Republic of China, 73 Fed. Reg. at 53,847; Raw Flexible Magnets from the People's Republic of China, 73 Fed. Reg. 53,850.

Commerce determined initially that, "[a]ccordingly, based on the plain language of the scope, Siffron's product appears to fall within the scope of the Orders." Final Scope Ruling at 10. Commerce then looked to previous scope rulings, record evidence, and language from the underlying International Trade Commission ("ITC") investigation to provide further context, ultimately determining that Siffron's products are excluded from the scope of the Orders. See Final Scope Ruling at 10–12; see also Siffron's Scope Ruling Request at Att. 6, Mem. from A. Elouaradia to C. Marsh, re: Final Scope Ruling on Certain Retail Hook and Paper Towel Magnets (Jan. 10, 2011) ("InterDesign Scope Ruling"); Siffron's Scope Ruling Request at Att. 9, Mem. from L. Parkhill to C. Marsh, re: Raw Flexible Magnets from the People's Republic of China; Scope Request from Medical Action Industries–Final Scope Ruling on Raw Flexible Magnets from the

People's Republic of China (Jan. 10, 2011) ("MAI Scope Ruling"); <u>Raw Flexible</u>

<u>Magnets from China and Taiwan</u>, USITC Pub. 4030, Inv. Nos. 701-TA-452, 731-

TA-1129–1130 (Aug. 25, 2008) ("ITC Report").  Commerce reviewed the scope

language and distinguished between flexible and inflexible magnets, determining

that flexible magnets fall within the scope and inflexible magnets are outside the

scope.  Final Scope Ruling at 11.  Commerce explained that a flexible magnet can

be bent, twisted, or manipulated, but if affixed to a hard surface and changed such

that the magnet can no longer be bent, twisted, or manipulated, the magnet would

be rendered functionally inflexible and therefore would fall outside the scope of

the <u>Orders</u>.  <u>Id.</u>

Specifically, Commerce examined the InterDesign Scope Ruling, the ITC's

description of in-scope raw flexible magnets in this investigation, the MAI Scope

Ruling, and evidence on the record.  <u>Id.</u> at 10–12.  Commerce explained that in the

InterDesign Scope Ruling, Commerce previously determined that the bonding of a

raw flexible magnet to a functionally inflexible component rendered the flexible

magnet outside the scope of the <u>Orders</u>.  <u>Id.</u> at 11.  Commerce explained that the

ITC had determined similarly in its investigation that flexible magnets can be

twisted, bent, slit, punched, coiled, or otherwise molded into any shape, and when

an item incorporating an otherwise flexible magnet cannot be twisted, bent, or

manipulated without that item breaking, the item can no longer be considered

flexible.  Id.  Commerce determined that when Siffron's flexible magnets were affixed to the component plastic blade of the shelf divider, the product became "functionally inflexible" because the twisting or bending of the shelf divider rendered the product ineffective for its intended function as a product organizer. Id.  Based on a review of the MAI Scope Ruling, Commerce determined that Siffron created a product that was "substantially different" than the raw flexible magnet subject to the Orders when Siffron added another material, i.e., the plastic blade, to the raw flexible magnet.  Id. at 12.

Commerce determined that Siffron's product is outside the scope of the Orders based on consideration of the plain scope language, the ITC Report, Commerce's prior scope rulings, and record evidence.  Id.  Commerce did not make a determination about the ambiguity of the scope language.  Id.

### A.    Parties' Contentions

Plaintiff challenges Commerce's scope determination on the following grounds: (1) Commerce unlawfully excluded Siffron's product even though the unambiguous text of the Orders covers the product; (2) the Orders do not expressly or impliedly exclude flexible magnets bonded to rigid materials; (3) Commerce's "substantial difference" test of a bonded magnet is an unauthorized exclusion from the scope of the Orders; and (4) Commerce improperly incorporated a (k)(3) element in a (k)(1) analysis.  Pl.'s Br. at 6–18.

The Government urges the Court to sustain Commerce's determination and enter judgment for the Government.  Def.'s Resp. at 21.  Defendant-Intervenor Siffron contends that Commerce's determination is supported by substantial evidence and in accordance with law, and asks the Court to sustain Commerce's determination that Siffron's product is outside the scope of the Orders.  Def.-Interv.'s Resp. at 1.

### B.   Language of the Orders and (k)(1) Sources

The Court reviews de novo the question of whether the unambiguous terms of a scope control the inquiry.  Plaintiff argues that Commerce did not identify ambiguity in the language in the Orders.  Pl.'s Br. at 7.  Plaintiff contends that the plain language of the Orders expressly denies Commerce the authority to "infer additional, unspecified exclusions."  Id. at 8.  Defendant asserts that Commerce has discretion to consider the (k)(1) sources in its initial evaluation of the scope language, without first making a determination of the existence of ambiguity in the scope language as "a condition precedent," based on the 2021 amendment to 19 C.F.R. § 351.225(k)(1).  Def.'s Resp. at 8; see Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws, 86 Fed. Reg. 52,300 (Dep't of Commerce Sept. 20, 2021).

Courts have acknowledged that Commerce's review of the scope language is inseparable from consideration of the (k)(1) sources.  See Meridian Prods. v.

United States, 890 F.3d 1272, 1277 (Fed. Cir. 2018) (stating that "the plain

language of an antidumping order is 'paramount,'" but that "[i]n reviewing the

plain language of a duty order, Commerce must consider" the (k)(1) sources);

Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States ("Shenyang

Yuanda"), 776 F.3d 1351, 1354 (Fed. Cir. 2015) ("First, Commerce must consider

the scope language contained in the order itself, the descriptions contained in the

petition, and how the scope was defined in the investigation and in the

determinations issued by Commerce and the ITC.").

     The Court of Appeals for the Federal Circuit ("CAFC") created a three-step

inquiry for evaluation of scope language in Meridian Products: "First, Commerce

must look to the text of an order's scope [pursuant to 19 C.F.R. § 351.225(k)(1)];

second, Commerce will consult descriptions of the merchandise in other sources;

and third, if still necessary, Commerce may consider additional factors comparing

the merchandise in question to merchandise subject to the order [pursuant to 19

C.F.R. § 351.225(k)(1)]." Meridian Products, 851 F.3d at 1381.  If the scope

language is found to be unambiguous, then it will govern.  Id. at 1381; see id. at

1381 n.7 ("The relevant scope terms are 'unambiguous' if they have 'a single

clearly defined or stated meaning.'") (citation omitted)).

     The current version of 19 C.F.R. § 351.225(k)(1) states:

> In determining whether a product is covered by the scope of the order
> at issue, the Secretary will consider the language of the scope and *may*
> make its determination on this basis alone if the language of the scope,
> including the descriptions of merchandise expressly excluded from the
> scope, is dispositive.

19 C.F.R. § 351.225(k)(1) (emphasis added).

Since the amendment of 19 C.F.R. § 351.225(k)(1), the U.S. Court of

International Trade has interpreted Commerce's revised regulation to reflect the

approach in Meridian Products.  See SMA Surfaces, Inc. v. United States, 47 CIT

__, __, 617 F. Supp. 3d 1263, 1273 (2023); id. at 1272 n.2 ("In September 2021,

Commerce promulgated a final rule that amended the text of 19 C.F.R.

§ 351.225(k)(1) to reflect the three-step inquiry [in Meridian Products] that had

been fashioned by the Federal Circuit's combining of case law and the prior code

provision.").

The Court concludes that Commerce had the discretion to consider the

(k)(1) sources when determining whether the scope language plainly spoke to the

inclusion or exclusion of Siffron's product, without first characterizing the

existence of ambiguity as a condition precedent.

The Court now turns to whether Commerce properly interpreted the scope

language with the (k)(1) factors.

## II.   19 C.F.R. § 351.225(k)(1) Factors

Commerce may consider the following interpretive sources under section

(k)(1) to determine whether merchandise is covered by the scope of an order:

(A) The descriptions of the merchandise contained in the petition pertaining to the order at issue;

(B) The descriptions of the merchandise contained in the initial investigation pertaining to the order at issue;

(C) Previous or concurrent determinations of the Secretary, including prior scope rulings, memoranda, or clarifications pertaining to both the order at issue, as well as other orders with same or similar language as that of the order at issue; and

(D) Determinations of the Commission pertaining to the order at issue, including reports issued pursuant to the Commission's initial investigation.

19 C.F.R. § 351.255(k)(1).  Secondary interpretive sources include any other

determinations of the Secretary or the Commission not identified above, Customs

rulings or determinations, industry usage, dictionaries, and any other relevant

record evidence.  Id.  If there is a conflict between these secondary interpretive

sources and the primary interpretive sources of this section, the primary

interpretive sources will normally govern in determining whether a product is

covered by the scope of the order at issue.  Id.

Commerce described the merchandise at issue as a plastic shelf divider with

a raw flexible magnet affixed to the base.  Final Scope Ruling at 2.  The plastic

shelf divider consists of a plastic blade, generally T- or L-shaped, and a raw

flexible magnet attached to the base of the plastic blade with adhesive tape.  Id.

Commerce determined that the plastic shelf divider is designed to display retail

merchandise produced by end users of the plastic shelf dividers, and the shelf

divider can be repositioned on a shelf with the raw flexible magnet without leaving

a sticky residue.  Id.

Commerce explained that it first determined whether Siffron's plastic shelf

dividers are excluded from the scope of the Orders based on the plain language.

Id. at 10.  Commerce stated that:

> The relevant language of the scope of the Orders includes flexible
> magnets "regardless of shape, color, or packaging."  Flexible magnets
> subject to the Orders may be fully or partially bonded to paper, plastic,
> or other materials or various flexible binders (e.g., polymers, co-
> polymers, rubber, etc.) of any composition or color.  Siffron's plastic
> shelf dividers are composed of an opaque and rigid plastic blade that is
> bonded with an adhesive to a raw flexible magnet at its base.
> Accordingly, based on the plain language of the scope, Siffron's
> product appears to fall within the scope of the Orders.

Id.

Plaintiff argues that Commerce's inquiry should stop there, with a

determination that Siffron's product falls squarely within the plain language of the

scope of the Orders.  See Pl.'s Br. at 6–8.  As the Court noted above, however,

Commerce has the discretion to consider the (k)(1) factors in its scope analysis

under the revised regulations, and the Court reviews Commerce's determination in

light of the (k)(1) sources that were considered by Commerce in addition to the plain scope language.

Commerce considered the underlying ITC Report, the InterDesign Scope Ruling, the MAI Scope Ruling, and record evidence in its interpretation of whether Siffron's product fell outside the scope of the <u>Orders</u>.  <u>See</u> Final Scope Ruling at 10–12.

## A.    ITC Report

Plaintiff argues that Commerce's analysis is "logically incoherent" and inconsistent with the ITC Report because Commerce's determination that an item cannot be flexible if it cannot be twisted or bent without breaking does not logically follow ITC's statement that a flexible magnet can be twisted or bent without losing its magnetic properties.  <u>See</u> Pl.'s Br. at 9–10.  Defendant contends that Plaintiff's reading of the ITC Report is too narrow, and that Commerce was reasonable in its reading of the ITC Report because in both the ITC Report and the instant case, the characteristics of an otherwise flexible magnet were altered and resulted in a product with an inflexible magnet outside the scope of the <u>Orders</u>. Def.'s Resp. at 12.  Defendant adds that Plaintiff does not undermine Commerce's analysis on the functional inflexibility of the magnet once attached to the shelf divider, but rather only focuses on the "loss of magnetic properties," even though a flexible magnet must be both magnetic and flexible.  <u>Id.</u> at 13.  The Government

notes that Plaintiff does not dispute Commerce's conclusion that Siffron's raw flexible magnets are functionally inflexible or that the plastic shelf divider would be ineffective for its intended use if the plastic blade with the affixed magnet were twisted, bent, or manipulated.  Id. at 12.

Because the ITC Report aided Commerce in interpreting whether the plastic shelf dividers were excluded from the scope of the Orders when the magnets were rendered functionally inflexible after affixation to Siffron's product, the Court concludes that Commerce's consideration of the ITC Report as a (k)(1) source was reasonable and in accordance with law.

### B.    Prior Scope Rulings

Plaintiff argues that Commerce's reliance on the InterDesign Scope Ruling was flawed because the ruling misinterpreted another scope ruling that equated "bendable" with "flexible" and created a flexibility requirement for the first time. See Pl.'s Br. at 10–14; see also Mem. from L. Parkhill to J. Anderson, re: Final Scope Ruling on Raw Flexible Magnets from People's Republic of China; Scope [Ruling] Request from It's Academic (Mar. 4, 2010) ("It's Academic II Scope Ruling").

Plaintiff challenges Commerce's reliance on the MAI Scope Ruling because (1) the exclusion determined in the MAI Scope Ruling was based on the lack of bonding between a magnet and the other material of the surgical instrument drapes

in question, but Plaintiff argues that the record is undisputed that the T- and L-shaped plastic elements in Siffron's plastic shelf dividers are not bonded to a flexible magnet; and (2) Commerce did not determine that additional functionality, or end-use application, due to the bonding of some paper, plastic, or another material to a flexible magnet, would render a product excluded in any other scope ruling.  See Pl.'s Br. at 14–16; Pl.'s Reply at 8–9.

Defendant argues that Plaintiff waived its arguments regarding the InterDesign Scope Ruling and the MAI Scope Ruling because Plaintiff did not discuss these scope rulings or issues in the administrative proceeding.  Def.'s Resp. at 15.  The Court observes that the Final Scope Ruling includes a reference to arguments raised by Magnum Magnetics during the administrative proceeding under the heading "Petitioner's Comments" as follows: "Commerce's determinations in the MAI Scope Ruling, InterDesign Scope Ruling, Smith-Western Scope Ruling, and Qwick Picz Scope Ruling that the term 'flexible magnets' suggest that raw flexible magnets that have been attached to other materials and rendered inflexible by such attachment, is improper because it is set against the unambiguous language of the scope of the Orders."  Final Scope Ruling at 7; see also id. at 12 ("Accordingly, after consideration of the plain language of the scope of the Orders, the [ITC Report], and Commerce's determinations in the InterDesign Scope Ruling, the Smith-Western Scope Ruling, and MAI Scope

Ruling, we find that Siffron's plastic shelf dividers are outside of the scope of the

Orders.").  Because the Final Scope Ruling mentions Plaintiff's arguments raised

regarding the InterDesign Scope Ruling and the MAI Scope Ruling, the Court

concludes that the scope rulings were challenged sufficiently during the

administrative proceedings and Plaintiff's arguments regarding these rulings are

not waived.

Defendant argues in the alternative that if the Court finds that Plaintiff's

arguments are not waived, the Court should reject these arguments because

Commerce's reliance on the prior scope rulings was reasonable under subsection

(k)(1).  Def's Resp. at 17–20.  Defendant-Intervenor asserts that Commerce's

reliance on the prior scope rulings was reasonable and aided Commerce in

interpreting the scope language in the Orders.  See Def.-Interv.'s Resp. at 14–16.

The scope language in the Orders includes "flexible magnets regardless of

shape, color, or packaging, that may or may not be fully or partially bonded with

paper, plastic, or other material," and the InterDesign Scope Ruling provided

Commerce with further guidance.  Specifically, Commerce stated that it relied on

the following analysis in the InterDesign Scope Ruling:

> [T]he scope's provision that raw flexible magnets can be bonded with
> "paper, plastic, or other material, of any composition" does not extend
> to the point that the material renders the flexible magnet to be no longer
> flexible.  As the first sentence of the scope of the [Orders] indicates that
> it pertains to flexible magnets, this suggests that magnets that have been

> rendered inflexible by attached materials should be outside the scope of
> the [Orders]. Thus, the scope of the [Orders] itself indicates that all five
> categories of InterDesign's magnet products are outside of the scope.

Final Scope Ruling at 11.

The Court observes that Commerce placed significant emphasis on the flexible nature of the magnets, as specified in the first sentence of the scope provision. In the InterDesign Scope Ruling, Commerce determined that certain retail hook and paper towel magnets were outside the scope of the Orders because the magnets were attached to materials that were not flexible. InterDesign Scope Ruling at 11. Commerce relied in this case on the InterDesign Scope Ruling to determine that Siffron's product is not "flexible" because the plastic shelf dividers could not be physically manipulated without damaging the product due to the bonding of the raw flexible magnets with a plastic blade. Final Scope Ruling at 11. Commerce determined that Siffron's product would lose its required opacity and not return to its shape to function as a shelf organizer if subject to physical manipulation and the product became "functionally inflexible." Id.

The Court does not agree with Plaintiff that Commerce added a new flexibility requirement because the first sentence of the scope of the Orders specifies that subject merchandise must be flexible. Commerce's reliance on the InterDesign Scope Ruling was reasonable as a (k)(1) source because the prior scope ruling is a permissible source and provided guidance to Commerce's

interpretation of the scope language.  The Court concludes that Commerce's interpretation is reasonable that a product rendered "functionally inflexible" is no longer flexible and is therefore outside the scope of the <u>Orders</u>.

Plaintiff challenges Commerce's reliance on the MAI Scope Ruling, arguing that the exclusion of the merchandise in the MAI Scope Ruling was based on the lack of bonding between a magnet and another material, unlike Siffron's product that bonded a magnet and another material.  Pl.'s Reply at 13–15.  Defendant contends that the facts in the MAI Scope Ruling differed and hinged on whether a magnet was "bonded" with another material.  Def.'s Resp. at 19.

Commerce considered the MAI Scope Ruling and agreed with Siffron that the plastic shelf dividers were a functionally different product than raw flexible magnets subject to the scope of the <u>Orders</u>.  Final Scope Ruling at 12.  Commerce noted that in the MAI Scope Ruling, Commerce determined that in the construction of surgical instrument drapes, MAI created a product that was "substantially different" than a raw flexible magnet because the attachment of a sheet of foam and a sheet of plastic film to a raw flexible magnet produced an item that expanded the capabilities of the incorporated raw magnet.  <u>Id.</u>  Commerce determined that Siffron added the plastic blade, similar to MAI's surgical drape, to a raw flexible magnet to create a product that was substantially different from a flexible magnet subject to the scope of the <u>Orders</u>.  <u>Id.</u>  Commerce reasoned that the combination

of the plastic blade, which is rigid to effectively display retail products on a shelf, and the raw magnet, which permits the plastic shelf divider to move on a metal surface without leaving residue, allows Siffron's product to be a shelf organizer in a retail setting that separates retail products for display.  See id.

While the Orders do not include language about whether covered merchandise must be able to carry out its intended function (other than simply being a raw flexible magnet) when the raw magnet is bonded to paper, plastic, or other material, the Court concludes that Commerce's reliance on the MAI Scope Ruling was reasonable as a permissible (k)(1) source that assisted Commerce with its scope analysis.  The Court concludes that Commerce's interpretation is reasonable that the addition of another material to a raw flexible magnet can render the product "substantially different" from a raw flexible magnet and thus outside the scope of the Orders.  Therefore, Commerce's consideration of the prior scope rulings as a (k)(1) source was reasonable and in accordance with law.

The Court concludes that the scope language, when read together with the (k)(1) sources, unambiguously establishes that the Orders exclude products that have been altered and resulted in a product with a "functionally inflexible" magnet, and products to which a flexible magnet was attached and rendered into a "substantially different" product from a raw flexible magnet.

### C.    Substantial Evidence Analysis

Whether a product meets the unambiguous scope terms presents a question

of fact reviewed for substantial evidence.  Meridian Products, 851 F.3d at 1382.

Commerce considered the descriptions of the merchandise contained in

Siffron's Scope Ruling Request to identify the product subject to the scope inquiry

in its (k)(1) analysis.  Final Scope Ruling at 2–3.  Notably, Plaintiff does not

challenge Commerce's review of record evidence or lack thereof, contending only

in general terms that "[t]he [Final Scope] Ruling interprets and applies the Orders

in a manner that changes their scope contrary to their plain language and is

therefore unsupported by substantial evidence."  Pl.'s Br. at 6.

Commerce described the subject merchandise as follows:

> The product at issue is a plastic shelf divider with a raw flexible magnet
> affixed to the base.  The plastic shelf divider consists of a plastic blade,
> generally T- or L-shaped, and a raw flexible magnet that is attached to
> the base of the plastic blade with an adhesive tape.  The plastic shelf
> divider can be clear or opaque in color, or manufactured in a color
> specific to meet the end users' needs.  The magnet is a raw flexible
> magnet that is designed to be flexible, so it is easy to cut and shape.
>
> The plastic shelf divider is designed to sit on retail shelving to aid in
> displaying merchandise produced by end users of the plastic shelf
> divider.  The raw flexible magnet affixed to the base of the plastic blade
> of the plastic shelf divider allows for the shelf divider to be repositioned
> on a shelf without leaving a sticky residue on the shelf. . . .
>
> The plastic shelf dividers are classified under the Harmonized Tariff
> Schedule of the United States (HTSUS) subheading 8505.19.2000,
> which provides for, "Electromagnets; permanent magnets and articles

> intended to become permanent magnets after magnetization; electromagnetic or permanent magnet chucks, clamps and similar holding devices; electromagnetic couplings, clutches and brakes; electromagnetic lifting heads; parts thereof: Permanent magnets and articles intended to become permanent magnets after magnetization: Other: Composite good containing flexible magnets."

Final Scope Ruling at 1–2 (citing Siffron's Scope Ruling Request at 3, 5, 6, 11, 13, and 14).  The Court observes that in addition to considering Siffron's descriptions of the merchandise, Commerce cited evidence in Siffron's Scope Ruling Request. See Siffron's Scope Ruling Request at Att. 1 (schematics of plastic shelf dividers), Att. 2 (photograph of plastic shelf dividers), Att. 3a (photograph of different types of shelf dividers), and Att. 3b (schematics of different types of shelf dividers).  The Court observes that Commerce examined additional record evidence to support its determinations that: (1) Siffron's product is functionally inflexible because the bonding of the raw flexible magnets with an adhesive to the plastic blade renders it inflexible to the extent that it cannot be manipulated without damaging the product, Final Scope Ruling at 11 (citing Siffron's Rebuttal Comments at Atts. 5, 6, 7, and 12) (including videos demonstrating different sizes of plastic shelf dividers being bent and twisted); and (2) the addition of a plastic blade renders Siffron's product "substantially different" from raw flexible magnets subject to the scope of the Orders, id. at 12 (citing Siffron's Scope Ruling Request at 7–13 (including Att. 2 (photograph of plastic shelf dividers), Att. 4 (photograph labeled "Marketing of

Plastic Shelf Dividers), and Att. 5 (photographs of flexible magnets)) and Siffron's

Rebuttal Comments at 4, 9 (including Att. 1 (photograph of plastic shelf dividers as

organizational tool) and Atts. 5, 6, 7, and 12 (videos demonstrating different sizes

of plastic shelf dividers being bent and twisted)).  The Court observes that

Commerce also cited a photograph provided by Siffron of magnet components that

had been removed from a sample plastic shelf divider.  Final Scope Ruling at 11–

12 (citing Siffron's Rebuttal Comments at Att. 10).

Because Commerce supported its determination that Siffron's product is

outside the scope of the <u>Orders</u> with citations to record evidence and product

descriptions provided by Siffron, the Court concludes that Commerce's

determination is supported by substantial evidence.

Accordingly, Commerce's determination that Siffron's product is outside the

scope of the <u>Orders</u> is in accordance with law and supported by substantial

evidence.

### III.   19 C.F.R. § 351.225(k)(3) Factors

Plaintiff argues that Commerce improperly intermixed and relied on a single

element from a (k)(3) analysis in its purported (k)(1) analysis, resulting in a scope

determination that is arbitrary and contrary to law.  Pl.'s Br. at 17–18; Pl.'s Reply

at 17–18.

Defendant asserts that Commerce did not conduct a (k)(3) analysis and

counters that Commerce's discussion of the (k)(3) factor was to reject Plaintiff's

argument that Siffron's plastic shelf dividers are within the scope of the <u>Orders</u>

because the raw magnet can be removed separately to be potentially repackaged

and resold as a raw flexible magnet.  Def.'s Resp. at 20–21.

Under a (k)(3) analysis, Commerce can consider three factors:

(A) The practicability of separating the in-scope component for repackaging or resale, considering the relative difficulty and expense of separating the components;

(B) The measurable value of the in-scope component as compared to the measurable value of the merchandise as a whole; and

(C) The ultimate use or function of the in-scope component relative to the ultimate use or function of the merchandise as a whole.

19 C.F.R. § 351.225(k)(3).

In Magnum Magnetics' Rebuttal Comments, Plaintiff argued that a (k)(3)

analysis of Siffron's plastic shelf dividers would demonstrate that the products are

within the scope of the <u>Orders</u> because (1) separating the plastic component from

the flexible magnet requires little effort; (2) the flexible magnet can be readily

reused, repackaged, or resold after separating the flexible magnet from the plastic

shelf divider; (3) the "measurable value" of the flexible magnet component of the

plastic shelf divider is substantial compared to the measurable value of the plastic

shelf divider as a whole; and (4) the flexible magnet is a central feature of the shelf

dividers.  See Magnum Magnetics' Rebuttal Comments at 12–15; Final Scope

Ruling at 8.

Commerce determined that it was unnecessary to consider (k)(2) and (k)(3)

factors in its analysis.  Final Scope Ruling at 10.  Commerce explained in the Final

Scope Ruling that it disagreed with Plaintiff's argument that the flexible magnet

can be readily reused, repackaged, or resold after separating the flexible magnet

from the plastic shelf divider.  Id. at 11.  Commerce reasoned that rejecting

Plaintiff's (k)(3) argument was appropriate because the record evidence showed

that the adhesive that bonds the flexible magnet to the plastic blade remains on the

magnet, Siffron's product is not the same as a pre-affixed raw flexible magnet,

which does not contain such adhesive, and Siffron's product is shipped as a whole

product so the raw flexible magnet cannot be removed to be used as a separate

product.  Id. at 11–12.

The Court agrees with the Government that Commerce did not actually

conduct a (k)(3) analysis, but in the Final Scope Ruling merely responded to, and

ultimately rejected, Plaintiff's proposal that Commerce should conduct a (k)(3)

analysis.  The Court concludes that Commerce's determination that Siffron's

product is excluded from the language of the Orders is based solely on the scope

language read together with the (k)(1) sources, and without any (k)(3) factors in its

analysis.

## CONCLUSION

In summary, the Court concludes that the scope language, when read together with the (k)(1) sources, unambiguously establishes that the <u>Orders</u> do not include Siffron's plastic shelf dividers.  The Court sustains Commerce's determination that Siffron's plastic shelf dividers are excluded from the scope of the <u>Orders</u> as in accordance with law and supported by substantial evidence.

Accordingly, it is

**ORDERED** that Plaintiff's Rule 56.2 Motion for Judgment Upon the Agency Record, ECF No. 23, is denied; and it is further

**ORDERED** that Commerce's Final Scope Ruling is sustained. Judgment will issue accordingly.

  /s/ Jennifer Choe-Groves
Jennifer Choe-Groves, Judge

Dated:   September 26, 2023
              New York, New York