# United States Court of Appeals for the Federal Circuit

---

**MAGNUM MAGNETICS CORP.,**
*Plaintiff-Appellant*

v.

**UNITED STATES, FASTENERS FOR RETAIL, INC., DBA SIFFRON,**
*Defendants-Appellees*

---

2024-1164

---

Appeal from the United States Court of International Trade in No. 1:22-cv-00254-JCG, Judge Jennifer Choe-Groves.

---

Decided: February 17, 2026

---

JEREMY WILLIAM DUTRA, Squire Patton Boggs (US) LLP, Washington, DC, argued for plaintiff-appellant.

CHRISTOPHER BERRIDGE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, PATRICIA M. MCCARTHY; KENNETH GARRETT KAYS, Office of the Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce.

WILLIAM FRANCIS MARSHALL, Sandler, Travis & Rosenberg, P.A., New York, NY, argued for defendant-appellee Fasteners for Retail, Inc.

---

Before PROST, LINN, and REYNA, *Circuit Judges*.

REYNA, *Circuit Judge*.

Magnum Magnetics Corporation appeals a judgment of the United States Court of International Trade. The Trade Court affirmed a final scope ruling determination by the United States Department of Commerce that certain plastic shelf dividers containing magnets are not covered by antidumping and countervailing duty orders on U.S. imports of raw flexible magnets from the People's Republic of China. For the reasons stated below, we affirm.

## BACKGROUND

This appeal involves U.S. imports of certain plastic shelf dividers that contain magnets. The question addressed is whether the shelf dividers are covered by the scope of antidumping and countervailing duty orders on raw flexible magnets from the People's Republic of China. *See Antidumping Duty Order: Raw Flexible Magnets from the People's Republic of China*, 73 Fed. Reg. 53847–48 (Sep. 17, 2008) ("ADD Order"), at J.A. 33–34; *Raw Flexible Magnets from the People's Republic of China: Countervailing Duty Order*, 73 Fed. Reg. 53849–50 (Sep. 17, 2008) ("CVD Order"), at J.A. 35–36 (collectively, the "Duty Orders").[1]

---

[1] The ADD Order and the CVD Order contain identical scope language, and the U.S. Department of Commerce issued a single scope ruling for both. *Compare* ADD Order, J.A. 33–34, *with* CVD Order, J.A. 35–36. As a result, we reference to both orders as "Duty Orders."

Generally, when an interested party believes merchandise that is like the merchandise it produces is sold in the United States at less than fair value (i.e., dumped or dumping) or benefits from countervailable subsidies, it may petition the U.S. Department of Commerce ("Commerce") to initiate an antidumping or countervailing duty investigation, or both.  19 U.S.C. §§ 1671, 1673; *see also id.* §§ 1671a(b), 1673a(b).  If Commerce initiates an investigation, it determines whether the imported merchandise is sold in the U.S. market at less than fair value or is improperly subsidized.  *Id.* §§ 1671b(b), 1671d(a), 1673b(b), 1673d(a).

The U.S. International Trade Commission ("Commission") conducts a parallel investigation to determine whether a U.S. domestic industry that produces a product like the imported product subject to the investigations is materially injured or threatened with material injury by the subject imports.  *Id.* §§ 1671b(a), 1671d(b), 1673b(a), 1673d(b).  If both Commerce and the Commission reach affirmative determinations, Commerce issues duty orders imposing antidumping or countervailing duties on the imported merchandise.  *Id.* §§ 1671e, 1673e.  Such duty orders include a description of the merchandise that is subject to the order.  *Id.* §§ 1671e(a)(2), 1673e(a)(2).  The description is written in general terms because it pertains to an overall class or kind of goods.  19 C.F.R. § 351.225(a).

Questions often arise in the marketplace as to whether a particular product is covered by the scope of an existing order.  In such instances, an interested party may request that Commerce issue a ruling on whether the product is covered by the scope of a duty order.  *Id.*  This appeal involves such a scope ruling.

I.     The Duty Investigations

On September 21, 2007, Plaintiff-Appellant Magnum Magnetics Corporation ("Magnum"), a U.S. producer of flexible magnets, filed a petition with Commerce

requesting the initiation of an antidumping duty investigation on imports of raw flexible magnets from the People's Republic of China. *See Notice of Initiation of Antidumping Duty Investigations: Raw Flexible Magnets from the People's Republic of China and Taiwan*, 72 Fed. Reg. 59071 (Oct. 18, 2007).[2] Commerce initiated an investigation on October 11, 2007, and notified the Commission. *Id.* at 59076. The investigation generally covered "certain flexible magnet sheeting, strips, and profile shapes." *Id.* at 59072.

The Commission initiated investigations on September 28, 2007. *Raw Flexible Magnets from China and Taiwan*, Investigation Nos. 701-TA-452, 731-TA-1129, 731-TA-1130, 72 Fed. Reg. 55248 (Sept. 28, 2007). On November 5, 2007, the Commission issued an affirmative preliminary determination of material injury or threat of material injury. *Raw Flexible Magnets from China and Taiwan*, Investigation Nos. 701-TA-452, 731-TA-1129, 731-TA-1130, 72 Fed. Reg. 63629 (Nov. 9, 2007) (Preliminary). On April 25, 2008, Commerce issued an affirmative preliminary determination of sales at less than fair value. *Preliminary Determination of Sales at Less Than Fair Value: Raw Flexible Magnets from the People's Republic of China*, 73 Fed. Reg. 22327, 22328 (Apr. 25, 2008).

On July 2, 2008, Commerce issued an affirmative final determination of sales at less than fair value. *Final Determination of Sales at Less Than Fair Value: Raw Flexible Magnets from the People's Republic of China*, 73 Fed. Reg. 39669 (July 10, 2008). In August 2008, the Commission issued an affirmative final injury determination finding that an industry in the United States was materially injured or threatened with material injury by reason of the subject imports. *Raw Flexible Magnets from China and*

---

[2] This opinion addresses only the investigations involving China.

*Taiwan*, Inv. Nos. 701-TA-452, 731-TA-1129-1130, USITC Pub. 4030 (August 2008) (Final) ("Commission Injury Report").

## II.   Duty Orders

On September 17, 2008, Commerce issued Duty Orders on raw flexible magnets from China. ADD Order, J.A. 33–34; CVD Order, J.A. 35–36. According to the scope language of the Duty Orders:

> The products covered by [the Duty Orders] are certain flexible magnets regardless of shape, color, or packaging. Subject flexible magnets are bonded magnets composed (not necessarily exclusively) of (i) any one or combination of various flexible binders (such as polymers or co-polymers, or rubber) and (ii) a magnetic element, which may consist of a ferrite permanent magnet material (commonly, strontium or barium ferrite, or a combination of the two), a metal alloy (such as NdFeB or Alnico), any combination of the foregoing with each other or any other material, or any other material capable of being permanently magnetized.
>
> Subject flexible magnets may be in either magnetized or unmagnetized (including demagnetized) condition, and may or may not be fully or partially laminated or fully or partially bonded with paper, plastic, or other material, of any composition and/or color.

ADD Order, J.A. 33; CVD Order, J.A. 36 (same).

## III.   Scope Ruling

Defendant-Appellee Fasteners for Retail, Inc., d/b/a Siffron ("Siffron"), is a U.S. retailer that imports shelf dividers composed of flexible magnets bonded to a plastic base. On March 11, 2022, Siffron submitted to Commerce a scope ruling request seeking a determination that its

imports of shelf dividers were not covered by the Duty Orders and thereby not subject to antidumping or countervailing duties.  Siffron argued that its shelf divider magnets were substantially different from the subject flexible magnets because they were bonded to a rigid plastic component, which made the magnet inflexible and unable to bend or twist without damage.

On August 9, 2022, Commerce issued a final scope ruling concluding that Siffron's shelf dividers were not covered by the scope of the Duty Orders.  *See Antidumping Duty and Countervailing Duty Orders on Raw Flexible Magnets from the People's Republic of China: Final Scope Ruling on Siffron Plastic Shelf Dividers* (Aug. 9, 2022) ("Final Scope Ruling"), at J.A. 569–81.  Commerce based its determination on both the plain language of the Duty Orders and on other interpretative sources provided for in 19 C.F.R. § 351.225(k)(1)(i), which the parties refer to as the "(k)(1) sources."  These (k)(1) sources included the Commission's Injury Report issued in the underlying investigation, and prior scope rulings issued by Commerce in other investigations.  *See* Final Scope Ruling, J.A. 578–80.

In its scope analysis, Commerce asserted that "based on the plain language of the scope, Siffron's product appears to fall within the scope" of the Duty Orders.  Final Scope Ruling, J.A. 578.  But Commerce further reasoned that "previous scope rulings and language from the underlying [Commission] investigation provide further guidance."  *Id.*  Accordingly, in addition to the plain language of the Duty Order, Commerce considered the (k)(1) sources.  Final Scope Ruling, J.A. 579–80.  Commerce then determined that Siffron's shelf dividers were not covered by the scope of the Duty Orders.  *Id.*

Magnum appealed Commerce's scope ruling before the U.S. Court of International Trade ("Trade Court"), which upheld Commerce's final scope ruling.  *Magnum Magnetics*

*Corp. v. United States*, 657 F. Supp. 3d 1387, 1401 (Ct. Int'l Trade 2023).

Magnum timely appeals to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

### STANDARD OF REVIEW

We review decisions of the Trade Court de novo and apply the same standard of review that the Trade Court applies in its review of Commerce's final antidumping and countervailing duty determinations. *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1308 (Fed. Cir. 2020). We will uphold Commerce's scope determinations unless they are unsupported by substantial evidence or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938). Finally, we recognize that "scope determinations are highly fact-intensive and case-specific." *Meridian Prods. v. United States*, 890 F.3d 1272, 1277 (Fed. Cir. 2018) (citation modified).

### DISCUSSION

On appeal, Magnum raises two issues. First, Magnum argues that Commerce's reliance on the (k)(1) factors in its analysis of the language of the Duty Orders was contrary to law. Second, Magnum argues that, even assuming Commerce properly consulted the (k)(1) factors, Commerce's scope determination was erroneous. We address each issue in turn.

### I.

The first issue on appeal turns on the interpretation of 19 C.F.R. §§ 351.225(k)(1) and 351.225(k)(1)(i), which govern Commerce's scope inquiries. Specifically, the parties dispute under what circumstances these provisions allow Commerce to consider (k)(1) sources when analyzing scope

language. According to Magnum, these provisions prohibit Commerce from consulting the (k)(1) sources when the scope language is plainly unambiguous. Appellant Br. 12. In contrast, appellees the United States and Siffron argue that under these provisions, Commerce has the discretion to consider (k)(1) sources "*regardless* of whether the plain language may appear ambiguous." Appellee United States Br. 13–14 (citing 19 C.F.R. § 351.225(k)(1)(i)); *see also* Appellee Siffron Br. 14 ("Commerce's discretion to consider (k)(1) materials in analyzing a scope order exists whether the plain language may appear ambiguous or not."). For the following reasons, we agree with appellees that the regulatory provisions give Commerce the discretion to consider (k)(1) sources when analyzing the scope of an order, regardless of whether the plain language appears to be ambiguous or not.

As an initial matter, we address Magnum's argument that Commerce "concede[d] at the outset of the scope ruling analysis that the unambiguous text of the Orders' scope provision squarely applies to Siffron's Chinese-origin shelf dividers." Appellant Br. 12 (citing Final Scope Ruling, J.A. 578). Whether Commerce made such an alleged concession stems from Commerce's statement in its Final Scope Ruling that "based on the plain language of the scope, Siffron's product *appears to fall* within the scope of the *Orders*." Final Scope Ruling, J.A. 578 (first emphasis added). But we need not decide whether Commerce made such a concession because, as explained below, the regulatory provisions give Commerce broad discretion to consider the (k)(1) factors regardless of whether the scope language is clear on its face.

We now turn to the regulatory provisions at issue, as amended in 2021.³ Section 351.225(k)(1) provides that:

> [i]n determining whether a product is covered by the scope of the order at issue, the Secretary will consider the language of the scope and *may* make its determination on this basis alone if the language of the scope . . . is dispositive.

19 C.F.R. § 351.225(k)(1) (2021) (emphasis added). To determine whether the language is dispositive, Commerce may rely on certain interpretive tools. Specifically:

> [t]he following primary interpretive sources [i.e., (k)(1) sources] may be taken into account under paragraph (k)(1) introductory text of this section, at the discretion of the Secretary:
>
> (A) The descriptions of the merchandise contained in the petition pertaining to the order at issue;
>
> (B) The descriptions of the merchandise contained in the initial investigation pertaining to the order at issue;
>
> (C) Previous or concurrent determinations of the Secretary, including prior scope rulings, memoranda, or clarifications pertaining to both the order

---

³ The 2021 version of 19 C.F.R. § 351.225 governs this appeal. *Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,322 (Sep. 20, 2021) ("Final Rule") ("Amendments to § 351.225 . . . apply to scope inquiries for which a scope ruling application is filed . . . on or after November 4, 2021."). Siffron filed its application for a scope ruling on March 3, 2022, and Commerce issued its ruling on August 9, 2022.

at issue, as well as other orders with same or similar language as that of the order at issue; and

(D) Determinations of the Commission pertaining to the order at issue, including reports issued pursuant to the Commission's initial investigation.

19 C.F.R. § 351.225(k)(l)(i). Relevant here, there is no requirement in this provision for Commerce to first determine whether the scope language is clear on its face before turning to the (k)(1) factors. Rather, the regulation broadly provides that Commerce "may" take the (k)(1) factors "into account . . . *at the discretion of the Secretary.*" *Id.* (emphasis added). As such, even if Commerce indicates that the scope language appears clear on its face, Commerce may still turn to the (k)(1) factors as additional guidance for interpreting the disputed language at issue.

The history and purpose of these two provisions confirm that Commerce is imbued with such discretion. In 2021, Commerce amended 19 C.F.R. § 351.225(k), resulting in the current language of § 351.225(k)(1) and in the creation of § 351.225(k)(1)(i). These amendments were precipitated by confusion as to whether Commerce could use the (k)(1) factors to interpret the plain meaning of the scope language or "whether the plain meaning analysis comes first, and only once a determination on the plain meaning is [made], then the [(k)(1)] sources [could be] considered." Final Rule at 53,323. By amending 19 C.F.R. § 351.225(k), Commerce clarified its belief that the (k)(1) sources:

were never intended by Commerce to be separate from the initial analysis of the scope language, but were instead to be interpretive tools that could be considered by Commerce, at its discretion and under consideration of the arguments on the administrative record, to determine the meaning of the scope of the order.

*Id.* As such, the 2021 amendments clarify that Commerce is not subject to a rigid and mechanical process for determining the meaning of the scope order. Rather, Commerce has the discretion to use the (k)(1) factors as part of its analysis of the scope language. *Id.*

Magnum, however, argues that Commerce's discretion to consider the (k)(1) factors is limited to only those scenarios in which Commerce first determined the scope language is not dispositive. Appellant Br. 11. Specifically, Magnum relies on Commerce's comments to the 2021 amendments that:

> if Commerce determines that the language of the scope is not itself dispositive (i.e., it is not dispositive using no interpretive tools whatsoever), Commerce may take into account the identified primary interpretive sources, which are the traditional (k)(1) sources, in determining if the language is dispositive and the scope covers the product at issue.

Final Rule at 52,323. But the above quoted material stands for the limited proposition that if the scope language is unclear on its face, Commerce "may take into account" the (k)(1) sources. The above quoted material does not stand for the separate proposition that if the scope language appears to be clear on its face, Commerce is prohibited from considering the (k)(1) sources as additional guidance. Indeed, Commerce recognized that a term's plain meaning may shift with time. As such, although once plain, scope language may need to be analyzed through the lens of the (k)(1) sources. Specifically, Commerce noted that:

> Commerce's understanding [is] that the [(k)(1) sources . . . were always intended to be interpretive tools to understand the plain meaning of the scope, *recognizing that terms that may have been plain at the time they were drafted and adopted upon the issuance of the*

> *order could be interpreted differently at some later point.*

*Id.* (emphasis added).

Magnum further argues that this court has, in prior cases, explained that Commerce must first find the plain language ambiguous before it can consult (k)(1) sources. Appellant Br. 10–12.  But these cases interpreted and applied an earlier version of § 351.225(k) that pre-dated the 2021 amendment.[4]  Consequently, these cases do not control Commerce's consideration of the (k)(1) factors in this case.

To be clear, Commerce cannot exercise its discretion to consider the (k)(1) sources under 19 C.F.R. §§ 351.225(k)(1) and 351.225(k)(1)(i) to *change* the scope of a duty order; it may consider the (k)(1) sources only to *interpret* the scope of the duty order.  *See Saha Thai Steel Pipe*, 101 F.4th at 1325 ("The (k)(1) material cannot control or alter the scope language of the order."); *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1095 (Fed. Cir. 2002) ("Commerce

---

[4] *See, e.g.*, *ArcelorMittal Stainless Belg. N.V. v. United States*, 694 F.3d 82, 87 (Fed. Cir. 2012) (reviewing scope ruling from 2010); *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1299 (Fed. Cir. 2013) (reviewing scope ruling from 2010); *Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1381 (Fed. Cir. 2017) (reviewing scope ruling from 2012); *Whirlpool Corp. v. United States*, 890 F.3d 1302, 1306 (Fed. Cir. 2018) (reviewing scope ruling from 2013); *Vandewater Int'l Inc. v. United States*, 130 F.4th 981, 984 n.1, 988 (Fed. Cir. 2025) (reviewing scope ruling from 2018); *Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*, 101 F.4th 1310, 1319 (Fed. Cir. 2024) (reviewing scope ruling from 2020), cert. denied sub nom. *Saha Thai Steel Pipe Pub. Co. Ltd. v. Wheatland Tube Co.*, 145 S. Ct. 1309 (2025)).

cannot interpret an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms." (citation modified)).[5] We need not here decide whether there are limits to Commerce's discretion to use the (k)(1) factors as tools to interpret the language of a duty order. It is enough to note that these are "interpretive" sources, § 351.225(k)(1), and may not be used to rewrite a duty order. Here, rather than changing the scope of the Duty Orders to exclude the very products it seeks to cover, i.e., "flexible magnets," Commerce permissively used the (k)(1) factors to ascertain the meaning of the term "flexible magnets" in the Duty Orders, specifically, the term "flexible," and whether Siffron's products meet such a description. *See* Final Scope Ruling, J.A. 587–88.

In sum, based on the plain language and purpose of 19 C.F.R. §§ 351.225(k)(1) and 351.225(k)(1)(i), we hold that Commerce has the discretion to consider (k)(1) factors in assessing the meaning of the scope language, regardless of whether the language appears to be ambiguous or not. We next examine whether in light of the (k)(1) sources, Commerce erred in its determination that Siffron's shelf dividers are not covered by the scope of the Duty Orders.

II.

Magnum argues that even assuming Commerce properly relied on (k)(1) sources, Commerce's scope

---

[5] The (k)(1) factors include the petitions and other sources that relate to Commerce's and the Commission's definitions of the products that were subject to the underlying investigations. The scope of a duty order directly relates to and is framed by those definitions. As such, when the scope of a duty order is disputed, it makes practical sense for Commerce to seek to understand the scope of that duty order in the context of the underlying investigations.

determination is erroneous. We disagree with Magnum. As explained below, Commerce's scope determination is supported by substantial evidence and in accordance with the law.

Here, Commerce determined that its prior scope ruling in *InterDesign* "support[s] a determination that Siffron's plastic shelf dividers are excluded from the scope of the *Orders*." Final Scope Ruling, J.A. 579 (discussing *Final Scope Ruling on Certain Retail Hook and Paper Towel Magnets* (Jan. 10, 2011) ("*InterDesign* Scope Ruling")). Commerce explained that in *InterDesign*, it had previously determined that the scope language, "flexible magnets," excludes "magnets that have been rendered inflexible by attached materials." *Id.* (quoting *InterDesign* Scope Ruling). In light of this understanding, Commerce concluded that Siffron's shelf dividers are not "flexible magnets" under the Duty Orders. *Id.* Specifically, Commerce found that "Siffron has demonstrated that bonding raw flexible magnets with an adhesive to a plastic blade renders the plastic shelf dividers inflexible to the extent that the plastic shelf divider cannot be manipulated without damaging the product." *Id.*

We see no legal error with Commerce's reliance on *InterDesign*'s interpretation of "flexible magnets." Contrary to Magnum's position, *see* Appellant Br. 15–17, *InterDesign* did not improperly change the scope of the Duty Orders to exclude functionally inflexible magnets but rather provided a reasonable interpretation of the term "flexible magnets." It stands to reason that a magnet cannot be a "*flexible* magnet" if rendered functionally inflexible when attached to some other material.

We also determine that Commerce's finding—that Siffron's shelf dividers are functionally inflexible because they cannot be manipulated without damaging the product—is supported by substantial evidence. Here, Siffron provided video evidence supporting its claim that once bent, the

shelf dividers lose their shape and cannot function as shelf dividers. J.A. 361, 565–68, 579. This is substantial evidence supporting Commerce's functional inflexibility finding. Magnum's argument that Siffron's shelf dividers are flexible, *see* Appellant Br. 17, is an invitation to reweigh the evidence, which we do not do. *Full Member Subgroup of Am. Inst. of Steel Constr., LLC v. United States*, 81 F.4th 1242, 1257–58 (Fed. Cir. 2023).

In sum, we affirm Commerce's determination that Siffron's products are not "flexible magnets" under the Duty Orders. Commerce did not err in relying on *InterDesign,* a (k)(1) source. Additionally, Commerce's finding that Siffron's shelf dividers are functionally inflexible is supported by substantial evidence.[6]

## CONCLUSION

We have considered Magnum's remaining arguments and find them unpersuasive. For the reasons provided, we affirm the Trade Court's judgment sustaining Commerce's scope ruling that Siffron's shelf dividers are not covered by the Duty Orders.

**AFFIRMED**

COSTS

Costs against Magnum.

---

[6] We need not reach Magnum's challenges to Commerce's reliance on additional (k)(1) sources given that Commerce's scope determination is sufficiently supported by *InterDesign* and Commerce's finding that Siffron's products are functionally inflexible.